Page 2

RECEIVED

2007 JUL 30 A 9: 5?

~~BRA P. HACKETT, CL~~
~~U.S. DISTRICT COURT~~
MIDDLE DISTRICT ALA

# MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District **MIDDLE OF ALABAMA** |
|---|---|
| Name (under which you were convicted): **NEAL ROMAN ARMSTRONG** | Docket or Case No.: |
| Place of Confinement: FEDERAL BUREAU OF PRISONS FCC-LOW, YAZOO CITY, MS  39194-5000 | Prisoner No.:  07406-094 |
| UNITED STATES OF AMERICA | Movant (include name under which you were convicted) |
| v. | NEAL ROMAN ARMSTRONG |

**MOTION**

2:07CV689-WHA

1. (a) Name and location of court that entered the judgment of conviction you are challenging: _____
United States District Court for the Middle District of Alabama
Northern Division, P.O. Box 711, Montgomery, Alabama  36101-0711

   (b) Criminal docket or case number (if you know): 2:04-Cr-084-WHA

2. (a) Date of the judgment of conviction (if you know): February 25, 2005 (Doc. 126)

   (b) Date of sentencing: February 23, 2005 (Doc. 124)

3. Length of sentence: 109 months imprisonment; 3 years sup. rel.

4. Nature of crime (all counts): Count 4, conspiracy to conduct financial transactions affecting interstate commerce, with the intent to promote the carrying on of a specified unlawful activity (21 U.S.C. §§ 846 and 841, acquitted conducts of Counts 1 and 2), in violation of 18 U.S.C. 1956(h).

5. (a) What was your plea? (Check one)

   (1) Not guilty ☒     (2) Guilty ☐     (3) Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to? _____

   N/A

6. If you went to trial, what kind of trial did you have? (Check one)     Jury ☒     Judge only ☐

Page 3

7.  Did you testify at a pretrial hearing, trial, or post-trial hearing?    Yes ☐    No ☒

8.  Did you appeal from the judgment of conviction?    Yes ☒    No ☐

9.  If you did appeal, answer the following:

(a) Name of court: U.S. Court of Appeals for the Eleventh Circuit

(b) Docket or case number (if you know): 05-12959

(c) Result: Conviction and sentence were affirmed

(d) Date of result (if you know): January 31, 2006 (Doc. 132)

(e) Citation to the case (if you know): 165 Fed.Appx. 768; 2006 LEXIS 2471

(f) Grounds raised: Whether (1) the evidence was sufficient to convict Armstrong on Count 4, where he neither concealed nor disguised the nature or source of the money orders he cashed; (2) because he was acquitted of Counts 1 and 2, conspiracy to launder money derive from same counts must be reversed; and (3) his constitutional rights were violated when his sentence was enhanced based on facts not found by the jury.

(g) Did you file a petition for certiorari in the United States Supreme Court?    Yes ☒    No ☐

If "Yes," answer the following:

(1) Docket or case number (if you know): 05-1548

(2) Result: Petition for writ of certiorari was denied

(3) Date of result (if you know): October 2, 2006

(4) Citation to the case (if you know): 2006 U.S. LEXIS 5815

(5) Grounds raised: Whether (1) the Sixth Amendment right to jury trial is violated by the use of acquitted conduct when determining sentencing enhancement; (2) in a case which the advisory guidelines were used, sentence enhancements imposed by trial court may exceed the sentence authorized by the jury's verdict; and (3) the Court of Appeals erred in affirming the conviction when the government's proof was both insufficient and a violation of the Sixth Amendment's Double Jeopardy Clause.

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

Yes ☐    No ☒

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

Page 4

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your motion, petition, or

application?    Yes ❏  No ❏

(7) Result: _____

(8) Date of result (if you know): _____

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your motion, petition, or

application?    Yes ❏   No ❏

(7) Result: _____

(8) Date of result (if you know): _____

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your

motion, petition, or application?

(1) First petition:       Yes ❏   No ❏

(2) Second petition:   Yes ❏   No ❏

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not: _____

_____

_____

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

GROUND ONE: <u>A TRANSACTION THAT PAYS FOR ILLEGAL DRUGS DOES NOT CONSTITUTE MONEY LAUNDERING UNDER 18 U.S.C. § 1956(a)(1)(A)(i)</u>

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The government supplied evidence to show that Armstrong received $5,000 by United States Postal Money Orders. It then alleged that the money orders were payment for cocaine Armstrong shipped to Wallace Pickett in Alabama (Doc. 132 at 2-4). At trial, Pickett testified that he "paid Armstrong for the cocaine by sending United States Postal Money Orders," (id. at 2, 3), and "sometimes directed Roderick Perkins to purchase the money orders sent to Armstrong" (id.) Perkins testified that, when he purchased and mailed the money orders, he "was aware that they were being sent to Armstrong as payment for cocaine, which Armstrong was sending from the Virgin Islands." (Id. at 3).

(b) Direct Appeal of Ground One:

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☒

(2) If you did not raise this issue in your direct appeal, explain why: Armstrong's trial counsel, who also conducted the appeal, never objected on this ground at trial and failed to raise this issue on direct appeal.

(c) Post-Conviction Proceedings:

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☒

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(3) Did you receive a hearing on your motion, petition, or application?

   Yes ❑   No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

   Yes ❑   No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

   Yes ❑   No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

_____

_____

_____

_____

GROUND TWO:   **THE EVIDENCE OF OBSTRUCTION OF JUSTICE CONSIDERED BY THE COURT WAS UNRELIABLE, THE RESULTING AGGRAVATED SENTENCE UNREASONABLE, AND THE PROCEDURE APPLIED UNCONSTITUTIONAL.**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

At sentencing, Irvin Johnson, a cell-mate of Armstrong seeking sentence reduction, testified that Armstrong offered him $500.00 to kill Pickett and his brother.  Armstrong knew the Picketts were locked up in other jails and Johnson had no access to them. Another cell-mate, Timothy Sewell, also seeking sentence reduction, testified that Armstrong was being extorted by Johnson and only "said, yeah, I'll give you [Johnson] $500 . . . just to get him [Johnson] out of his [Armstrong's] face." **Sent.Tr.** at 41.  Sewell states that Armstrong "was a very nice

guy [who gave] money to a lot of people" (id. at 38) in
increments of "$20" to "$50" (id. at 39).  Agent James Tynan
testified that Johnson received a $35 money order from the
Virgin Islands.  According to Sewell, that was "no big deal."

**(b) Direct Appeal of Ground Two:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑    No ☒

    (2) If you did not raise this issue in your direct appeal, explain why: Appellate counsel
did not raise this issue in his brief nor send a copy of the
brief to Armstrong so that he could demand its inclusion.

**(c) Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❑    No ☒

    (2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ❑    No ❑

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ❑    No ❑

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ❑    No ❑

    (6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

_____

_____

_____

_____

GROUND THREE: <u>COUNSEL WAS INEFFECTIVE FOR NOT PROPERLY ATTACKING THE MONEY LAUNDERING CHARGE AND CROSS-EXAMINING TIMOTHY SEWELL.</u>

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

On several occasions, counsel argued, only to be rebuffed by the District Court, that because the government presented no evidence that Armstrong concealed or disguised the nature or source of the money orders, Count 4 must be dismissed and he be acquitted. However, concealment was not an element.

After counsel cross-examined Irvin Johnson, the court found his testimony to be incredible, except where it was corroborated by Sewell, who was never cross-examined by counsel. The court found Sewell's testimony to be entirely credible because it went uncontested. It thereby became the basis for the enhancement.

(b) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐  No ☒

(2) If you did not raise this issue in your direct appeal, explain why: Counsel failed to raise the issue; and ineffective assistance of counsel is best raised in trial court to develop a record for the appeals court.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐  No ☒

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ❑   No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❑   No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑   No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or
raise this issue: _____

_____

_____

_____

_____

**GROUND FOUR:** COUNSEL WAS INEFFECTIVE FOR NOT RAISING THE PROPER
MONEY LAUNDERING ISSUES AND THE OBSTRUCTION OF JUSTICE ENHANCE-
MENT ISSUE ON DIRECT APPEAL, AS ANY COMPETENT ATTORNEY WOULD.
(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Counsel attacked the money laundering conviction under the
concealment element of 18 U.S.C. § 1956(a)(1)(B)(i), "Armstrong
was convicted of conspiracy to violate 18 U.S.C. § 1956(a)(1)(**A**)
(i). Concealment is not an element of 18 U.S.C. § 1956(a)(1)(A)
(i)." (Doc. 132 at 7 n. 2). Counsel failed to raise either
of the issues Armstrong now bring up in Grounds 1 and 2, ante.
Counsel thwarted every attempt that Armstrong made to obtain
a draft of his brief so that he could demand that these issues
be added if they were not included in the draft. Counsel never
sent Armstrong a copy of his brief; never informed him of the

issues on appeal nor the status of his case; never replied to
the government's brief nor informed Armstrong about it; and
never communicated with him during the appeal (Memorandum attach)

(b) **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑ No ☒

(2) If you did not raise this issue in your direct appeal, explain why: The ineffectiveness
of Armstrong's appellate counsel could not have been questioned
on direct appeal because counsel withheld Armstrong's case file.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ❑ No ☒

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ❑   No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ❑   No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ❑·  No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

_____

_____

_____

_____

13. Is there any ground in this motion that you have not previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: None of the grounds in this motion was presented to the courts.   Grounds 1 and 2 were not presented because counsel either did not preserve them by objections in the trial court or raise them on appeal.   Grounds 3 and 4 are based on facts that were not fully developed in the district court and, according to this circuit's rule, claims of ineffective assistance of counsel are only entertained on direct review when the record is fully developed in the district court.

14. Do you have any motion, petition, or appeal now pending (filed and not decided yet) in any court for the judgment you are challenging?    Yes ☐  No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. _____

_____

_____

_____

_____

_____

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: _____ Richard K. Keith, Esquire _____

_____ 22 Scott Street, Montgomery, AL  36104

(b) At arraignment and plea: _____ (same) _____

(c) At trial: _____ Joseph R. Willie, II _____

_____ 4151 Southwest Freeway, Suite 490, Houston, TX  77027

(d) At sentencing: _____ (same) _____

Page 12

(e) On appeal: _____ Joseph R. Willie, II _____

_____ 4151 Southwest Freeway, Suite 490, Houston, TX 77027

(f) In any post-conviction proceeding: _____

_____ n/a _____

(g) On appeal from any ruling against you in a post-conviction proceeding: _____ _____

_____ . _____ n/a _____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?     Yes ❑ No ☒

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?     Yes ❑ No ☒

(a)  If so, give name and location of court that imposed the other sentence you will serve in the future: _____

_____

(b) Give the date the other sentence was imposed: _____

(c) Give the length of the other sentence: _____

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?   Yes ❑   No ❑

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*_____

_____As stated ante, Armstrong conviction became final

on October 2, 2006. He filed this motion on ~~January~~ July 26 2007.

That is well within the "one-year period of limitation" placed

on section 2255 motions by 28 U.S.C. § 2255(6)(1).

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of —

(1) the date on which the judgment of conviction became final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Page 14

Therefore, movant asks that the Court grant the following relief: An evidentiary hearing, the vacatur of his conviction and sentence; the dismissal of the indictment; or, alternatively, a retrial or resentencing.

or any other relief to which movant may be entitled.

_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on __~~January~~ July 2̶6̶ 2007__ (month, date, year).

Executed (signed) on __~~January~~ July 2̶6̶ 2007__ (date).

_____

Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion. _____

_____

_____

IN FORMA PAUPERIS DECLARATION

_____

[Insert appropriate court]

* * * * *

Neal Armstrong
#07406-094 (3BU)
FCC Yazoo City Low
P. O. Box 5000
Yazoo City, MS 39194-5000



Clerk, U.S. District Court
Middle District of Alaban
P. O. Box 711
Montgomery, AL 36101-

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
MONTGOMERY DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                         Case No. 2:04-Cr-00084-WHA/CSC

NEAL ROMAN ARMSTRONG,           2:07CV689- Wha

      Defendant.
————————————————/

### AFFIDAVIT OF NEAL ROMAN ARMSTRONG

I, Neal Roman Armstrong, being duly sworn under penalty of perjury, deposes and states as follows:

I. I was the defendant in United States v. Armstrong, Case No. 2:04-Cr-084-WHA (M.D.Ala. 2004); the appellant in Armstrong, 165 Fed.Appx. 768 (11th Cir. 2006); the petitioner in Armstrong, 166 L.Ed.2d 32, 2006 U.S. LEXIS 5815; and here, I am the movant in the above-captioned civil action. I am fully familiar with the facts and circumstances in connection with the above.

2. I was indicted on May 5, 2004, by a federal grand jury in the Middle District of Alabama with a four-count indictment, charging Roderick Perkins and me with conspiracy to distribute and possession with intent to distribute cocaine (Count 1), distribution of cocaine (Count 2), mailing injurious materials (Count 3), and conspiracy to launder monetary instruments (Count 4). The indictment was based upon information obtained from Wallace Pickett, who was arrested on May 12, 2003, and convicted of the offenses charged in Counts 1 and 3 of my indictment.

3.  I was arrested on May 12, 2004, by federal authorities, at my home in St. Croix, United States Virgin Islands.  I was brought to the city jail in Montgomery, Alabama, for detention pending the outcome of the case.  I did not commit the offenses charged in the indictment; therefore, I pleaded not guilty to the charges and spent six months in the jail awaiting jury trial.  During this period Perkins pleaded guilty to the offense charged in Count 4 of the indictment.

4.  At the jail, in May 2004, I met Timothy Sewell, Bryant Thomas, Roderick LNU, and a few others--whose names I do not remember at this time.  Irvin Johnson came in the jail after I got there.  In a short time, I became aware of the pauperization of my fellow cell-mates by their constant begging for my basic hygienic and food items which I purchased from the commissary. I was inclined to give these items to those who had nothing to their credit at the jail.

5.  My charitable giving would soon cause me to exceed my spending limit of $65.00 per week.  Thus, for those cell-mates who needed help but was not comfortable with begging me for it item by item, I would sometimes have credits sent straight to their jail accounts.  That was mutually convenient because it allowed me to use my entire spending limited to purchase things for myself and allowed them to buy the items for themselves. However, I never sent Johnson any money in the beginning since he was already comfortably using up my commissary items as if they were his.  I never required anything in return from Johnson nor any of the other pauper-stricken cell-mates that I have helped.  I just could not ignore their destitution.

2

6.   From the date that Johnson first arrived at the jail to his departure in August 2004, Johnson aggressively begged me for just about everything I got.  He blatantly and selfishly tried to scheme more from me than I thought he needed.  Johnson's selfishness escalated to the point where he would get angry whenever he saw me gave unto other cell-mates.  I was careful not to offend him since Sewell had warned me that Johnson was dangerous and probably would harm me for my commissary.  I was therefore happy when he was released on bond that August.

7.   I had learned, shortly after detention and arraignment, from both of my attorneys and the documents filed in my case, that Pickett was either in jail or prison.  I never told any of my cell-mates anything substantial about my case because I was following both of my counsels' advise not to do so.  All I had told them were that I am not the drug dealer that the government is alleging I am and, were it not for Pickett, I would not have been in jail.  Nevertheless, I told them that I was confident that my lawyer will let the jury see the truth and acquit me at trial.

8.   From about mid-August to the end of September 2004, during the time that Johnson was out on bond, I had some peace of mind in the jail.  But that was disrupted in the beginning week of October; that is, as soon Johnson came back to the jail more destitute than before.  Johnson started begging for my commissary again immediately upon his return to the cell.  It was very inconvenient for me; thus, I told Johnson that I would just send some money to his account and thereafter he should

3

stop bothering me.  I told Sewell that I would give Johnson the
credit so as to get him off our my backs, since Johnson was also
bothering Sewell for money and commissary.  Because my trial was
set for November 1, 2004, Sewell suggested, and I agreed, that I
would give Johnson $35.00 jail credit to last for at least five
weeks.

9.  My trial commenced on November 1, and continued through
November   3,   2004.   At   trial,   the   Government   voluntarily
dismissed Count 3 of the indictment, and the jury was unable to
reach   a   unanimous   verdict   as   to   Counts   1   and   2.   But,
unfortunately,   the   jury   found   me   guilty   on   Count   4.   My
sentencing was set for February 23, 2005; therefore, I was
returned to the jail.  In about the third week of November 2004,
Johnson, again, started begging me for everything I got.  This
time, I told him no and kept my commissary away from him because
I did not want to be feeding him until February 23, 2005.
Sewell, too, had expressed his disdain for Johnson because of a
recent disagreement between them.

10.  A presentence investigation (PSI) report was made on
January 24, 2005; it was given to me and there was no allegation
of obstruction of justice in it then.  At that time, both
Johnson and Sewell remained in the cell with me.  But, on
February 14, 2005, I was moved, without explanation, to another
cell and given a revised PSI.  The revised PSI recommended a
two-level enhancement of my sentence for obstruction of justice.
It alleged that "sometime prior to August 2004," and prior to
Johnson's release on bond, I propositioned Johnson to kill

4

Pickett. Then after Johnson's **"bond was revoked . . . [I]
approached him again about killing Wallace Pickett"** and,
eventually, paid $35.00 to Johnson to kill Pickett before trial.
PSI at 15, 22.

11. I was utterly shocked by the allegation which was
entirely false and fictitiously based. I told that to counsel
and he objected to the PSI on those grounds, too. The probation
officer responded stating that the government intended to call
witnesses at sentencing to substantiate the allegation. I told
counsel that such witness as mentioned by the PSI would likely
be a former cell-mate. I then gave him the names of my former
cell-mates, including those that I have had credits sent to
their accounts at the jail.

12. I was merely a victim of charity. Johnson and Sewell
simply concocted their story about me based on my kindness to
fellow cell-mates, ironically, including Johnson and Sewell. I
told counsel that I could testify to that effect at sentencing
and that counsel should call the other cell-mates, to whom I had
arranged money to be sent and given commissary, to testify on my
behalf at sentencing.

13. At sentencing, Johnson testified that he was supposed
to kill "Wallace Pickett and Tim Pickett," Wallace's brother,
for "$500 and ten keys." Sentencing Tr. at 19, 20. Johnson
stated that I solicited him "back in June or July 2004" to
murder the two brothers. Id. at 21, 22, 28.

14. However, in June or July of 2004, I had known that
Pickett was locked up in Elmore County Jail. Therefore,

Johnson, who was in Montgomery City Jail with me, had no access to Pickett. In fact, Johnson admitted that I told him Pickett was locked up "when he [Johnson] first came there," id. at 25; and that he **"didn't even know Mr. Pickett."** Id. at 28.

15. First, I did not know Wallace Pickett personally until he came to trial and testified against me; but I had seen his name on documents in my case. Second, I did not know nor know of a "Tim Pickett". Third, even if Wallace Pickett had a brother, Pickett's brother was never mentioned until Johnson did so at sentencing; and, for that matter, the government has neither established nor alleged any connection between "Tim Pickett" and this case.

16. Sewell testified that I asked Johnson if he knew Wallace and Tim Pickett and what he think about them. Sewell stated that Johnson said that he knew them and **that he didn't like them,** "and that for the right price," he would kill them. Id. at 35. Sewell's testimony also indicated that I had sent Johnson the $35.00 money order prior to his release on bond. His general testimony was in stark contrast with Agent J.D. Tynan's allegations in the PSI and Johnson's testimony.

17. Therefore, I was surprised when the Court called upon my defense counsel to cross-examine Sewell and Attorney Willie declined, stating: "No questions, Judge." Id. at 42.

18. Finally, the government called Tynan to the stand for the fourth time. He had taken the stand three times before, but was now testifying to the obstruction of justice allegation for

6

the first time at sentencing. <u>Id.</u> at 43. Tynan testified that he "obtained a receipt for a $35 money order" that was sent to Johnson "from the Virgin Islands," and **"deposited into his account on October the . . . 13th of 2004."** <u>Id.</u> at 43-44.

19. After the government rested, counsel did not call Armstrong to the stand nor "present any evidence," <u>id.</u> at 46, but he renewed the objections he had made to the PSI. <u>Id.</u> at 48-49.

I DECLARE under penalty of perjury that the foregoing is true and correct and this Affidavit, the Section 2255 Motion, and the supporting Memorandum of Law was placed in the prison mailing system on July 26, 2007.


Neal Roman Armstrong
#07406-094  (3BU)
FCC Yazoo City Low
P.O. Box 5000
Yazoo City, MS 39194-5000

7

ATTACHMENT
No. _____

====================================================================

IN THE

SUPREME COURT OF THE UNITED STATES

2:07CV689-wha

NEAL ROMAN ARMSTRONG,

Petitioner,

versus

UNITED STATES OF AMERICA,

Respondent.

On Petition For A Writ Of Certiorari
To The United States Court Of Appeals
For The Eleventh Circuit

PETITION FOR WRIT OF CERTIORARI

Neal Roman Armstrong
#07406-094   Unit-3BU

Petitioner, pro se
FCC Yazoo City-Low
P.O. Box 5000
Yazoo City, MS 39194-5000

====================================================================

## QUESTIONS PRESENTED

I.    Did Eleventh Circuit, in direct conflict with published opinion of the Fifth Circuit, and in contravention of Jackson v. Virginia, 443 U.S. 307, 61 L.Ed.2d 560 (1970), and its progeny, err in holding evidence of receiving $5,000 in alleged payment for the shipment of 499.5 grams of cocaine legally and factually sufficient for a finding of guilty beyond reasonable doubt of conspiracy to launder monetary instruments under 18 U.S.C. § 1956(a)(1)(A)(i), (h)?

II.   Even if evidence of receiving payment for an alleged cocaine sale were sufficient to convict Petitioner for laundering money, could district court reasonably use dismissed underlying offenses, on which government sought but failed to obtain a valid jury verdict, and find extra-verdict facts to increase a defendant's sentence more than ten times the maximum sentence a judge could impose solely on the basis of facts reflected in the jury verdict, without violating the Sixth Amendment's jury-trial right under United States v. Booker, 543 U.S. 220, 160 L.Ed.2d 621 (2005), and its progeny?

III.  Was dismissal with prejudice of two counts of a three-count indictment after the jury could not reach a verdict on them at Petitioner's trial an acquittal, such that district court was estopped from sentencing the defendant on those counts by the Fifth Amendment's Double Jeopardy Clause, as depicted in United States v. Martin Linen Supply Co., 430 U.S. 564, 51 L.Ed.2d 642 (1977), and its progeny?

i

## LIST OF PARTIES

All parties appear in the caption of the case on the cover page.

# TABLE OF CONTENTS

QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . .   i

LIST OF PARTIES . . . . . . . . . . . . . . . . . . . . . .   ii

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . .   iii

TABLE OF AUTHORITIES CITED . . . . . . . . . . . . . . . .   v

OPINIONS BELOW . . . . . . . . . . . . . . . . . . . . . .   1

JURISDICTION . . . . . . . . . . . . . . . . . . . . . . .   1

CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED . . . . . .   2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . .   3

    1.  Procedural History . . . . . . . . . . . . . . . .   3

    2.  Factual Background . . . . . . . . . . . . . . . .   4

REASONS FOR GRANTING THE WRIT . . . . . . . . . . . . . . .   12

I

The Question Of Whether A Financial Transaction That
Allegedly Paid For Cocaine Provides Sufficient
Evidence Pursuant To Jackson v. Virginia, For A
Money Laundering Conviction Under 18 U.S.C. § 1956
Is An Important Matter That Has Split The Federal
Circuits And Is Yet To Be Answered By The Supreme
Court. This Court Is Hereby Called Upon To Exercise
Its Supervisory Power To Unite The Circuits
Concerning This Issue. . . . . . . . . . . . . . . . . .   12

II

The Question Of Whether A District Court Could
Reasonably Use A Dismissed Offense, On Which The
Government Had Sought But Failed To Obtain A Valid
Jury Verdict, And Find Additional Extra-Verdict
Facts To Increase A Defendant's Sentence By Over Ten
Times The Maximum Sentence A Judge Could Impose
Solely On The Basis Of Facts Reflected In The Jury
Verdict, Without Violating The Sixth Amendment's
Jury-Trial Right, Is An Important Issue That Affects
Defendants Nationally. The Circumstances Which
Effectuated This Court's Ruling In United States v.
Booker Have Resurfaced In This Case And, Likewise
Booker, Call For An Exercise Of This Court's
Supervisory Power. . . . . . . . . . . . . . . . . . . .   16

# III

The Question Of Whether An Offense That Was
Dismissed With Prejudice After Jury Could Not Reach
An Unanimous Verdict At A Defendant's Trial Is An
Acquittal, Such That It Would Estop The District
Court From Sentencing The Defendant On That Offense
Under The Fifth Amendment's Double Jeopardy Clause,
Is Also A Very Important Question That Has National
Effect. The Eleventh Circuit's Opinion In This Case
Departs From United States v. Martin Linen Co., In
That It Tacitly Sanctioned Such A Departure By The
District Court, And Thereby Require The Granting Of
This Petition To Enable The Supreme Court To
Ascertain Compliance With Its Ruling In The Lower
Courts. . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## INDEX TO APPENDICES

APPENDIX A:  Opinion of the Court of Appeals . . . . . . . . . 1a

APPENDIX B:  Judgment of the District Court . . . . . . . . . 9a

APPENDIX C:  Sentencing Transcript (Excerpt) . . . . . . . . 15a

APPENDIX D:  Presentence Investigation Report,

             Including Addendum and Objections . . . . . . . 25a

APPENDIX E:  Jury Verdict (Trial Tr., Vol. III) . . . . . . . 47a

APPENDIX F:  Indictment (Redacted of Count 3) . . . . . . . . 55a

APPENDIX G:  18 U.S.C. § 1956(a)(1)(A)(i) & (h) . . . . . . . 58a

APPENDIX H:  U.S.S.G. §§ 1B1.3(a)(1), 2S1.1(a) & (b) . . . . 60a

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGES**

Apprendi v. New Jersey,

    530 U.S. 466 (2000) . . . . . . . . . . . . . . . . . . . . 17

Ashe v. Swenson,

    397 U.S. 436 (1970) . . . . . . . . . . . . . . . . . . . . 22

Blakely v. Washington,

    542 U.S. 296 (2004) . . . . . . . . . . . . . . . . . . . . 17

In re Winship,

    397 U.S. 358 (1970) . . . . . . . . . . . . . . . . . . . . 13

Jackson v. Virginia,

    443 U.S. 307 (1979) . . . . . . . . . . . . i, iii, 12, 13, 14

Kinder v. United States,

    504 U.S. 946 (1992) . . . . . . . . . . . . . . . . . . . . 27

McMillan v. Pennsylvania,

    477 U.S. 79 (1986) . . . . . . . . . . . . . . . . . . 26, 28

Ring v. Arizona,

    536 U.S. 584 (2002) . . . . . . . . . . . . . . . . . . . . 17

Smalis v. Pennsylvania,

    476 U.S. 140 (1986) . . . . . . . . . . . . . . . . . . . . 24

Smith v. Massachusetts,

    543 U.S. 462 (2005) . . . . . . . . . . . . . 22, 23, 24, 25

United States v. Alvardo,

    440 F.3d 191 (4th Cir. 2006) . . . . . . . . . . . . . . 20

United States v. Armstrong,

    165 Fed.Appx 768 (11th Cir. 2006) . . . . . . . . . . . . 1

v

CASES (continued)

United States v. Awada,

    425 F.3d 522 (8th Cir. 2005) . . . . . . . . . . . . . . . . . . . 14

United States v. Baldwin,

    389 F.Supp.2d 1 (D.D.C. 2005) . . . . . . . . . . . . 18, 19

United States v. Blood,

    435 F.3d 612 (6th Cir. 2006) . . . . . . . . . . . . . . 20

United States v. Booker,

    543 U.S. 220 (2005) . . . . . . . . . . . . . . . . . . passim

United States v. Christo,

    129 F.3d 578 (11th Cir. 1997) . . . . . . . . . . . . . . 14

United States v. Coleman,

    370 F.Supp.2d 661 (S.D. Ohio 2005) . . . . . . . . . . 18

United States v. Corchada-Peralta,

    318 F.3d 255 (1st Cir. 2003) . . . . . . . . . . . . . . 15

United States v. Duncan,

    400 F.3d 1297 (11th Cir. 2005) . . . . . . . . . . . . . 16

United States v. Edgmon,

    952 F.2d 1206 (10th Cir. 1991) . . . . . . . . . . . . . 14

United States v. Estacio,

    64 F.3d 477 (9th Cir. 1995) . . . . . . . . . . . . . . . 14

United States v. Gall,

    446 F.3d 884 (8th Cir. 2006) . . . . . . . . . . . . . . 18

United States v. Gaytan,

    74 F.3d 545 (5th Cir. 1996) . . . . . . . . . . 12, 13, 14

United States v. Gigante,

    39 F.3d 42 (2nd Cir. 1994) . . . . . . . . . . . . . . . 27

**CASES (continued)**

United States v. Gray,

    362 F.Supp.2d 714 (S.D.W.Va. 2005) . . . . . . . . . . . 19

United States v. Jackson,

    935 F.2d 832 (7th Cir. 1991) . . . . . . . . . . . . . . 15

United States v. Kikumura,

    918 F.2d 1084 (3rd Cir. 1990) . . . . . . . . . . . . . . 26

United States v. Lombard,

    72 F.3d 170 (1st Cir. 1995) . . . . . . . . . . . . . . . 26

United States v. Marshall,

    248 F.3d 525 (6th Cir. 2001) . . . . . . . . . . . . . . 15

United States v. Martin Linen Supply Co.,

    430 U.S. 564 (1977) . . . . . . . . . . . . . . . . . passim

    534 F.3d 585 (5th Cir. 1976) . . . . . . . . . . . . . . 23

United States v. Ogles,

    440 F.3d 1095 (9th Cir. 2006) . . . . . . . . . . . 23, 24

United States v. Pimental,

    367 F.Supp.2d 143 (D.Mass. 2005) . . . . . . . . . . . 19

United States v. Powell,

    469 U.S. 57 (1984) . . . . . . . . . . . . . . . . . . 22

United States v. Rodriguez,

    398 F.3d 1291 (11th Cir. 2005) . . . . . . . . . . . . 16

United States v. Savage,

    67 F.3d 1435 (9th Cir. 1995) . . . . . . . . . . . . . 13

United States v. Seward,

    272 F.3d 831 (7th Cir. 2001) . . . . . . . . . . . . . 14

CASES (continued)

United States v. Townley,

    929 F.2d 365 (8th Cir. 1991) . . . . . . . . . . . . 26, 28

United States v. Washington,

    11 F.3d 1510 (10th Cir. 1993) . . . . . . . . . . . . . . 27

United States v. Watts,

    519 U.S. 148 (1997) . . . . . . . . 18, 19, 25, 26, 27, 28

    67 F.3d 790 (9th Cir. 1995) . . . . . . . . . . . . . . . 25

United States v. Witte,

    515 U.S. 389 (1995) . . . . . . . . . . 18, 25, 26, 27, 28

UNITED STATES CONSTITUTION

U.S. Const.Amend. V . . . . . . . . . . . . . . . . . . . . passim

U.S. Const.Amend. VI . . . . . . . . . . . . . . . . . . . passim

STATUTES AND RULES

18 U.S.C. § 1956(a)(1) . . . . . . . . . . . . . . . . . passim

18 U.S.C. § 1956(h) . . . . . . . . . . . . . . . . . . . passim

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . 23

28 U.S.C. 1254(1) . . . . . . . . . . . . . . . . . . . . . . 1

Fed.R.Crim.P. 29 . . . . . . . . . . . . . . . . . . . . . passim

OTHERS

U.S.S.G. § 1B1.3 . . . . . . . . . . . . . . . . . . . . . 24

U.S.S.G. § 2D1.1(b)(1) . . . . . . . . . . . . . . . . . . . 25

U.S.S.G. § 2S1.1(a) . . . . . . . . . . . . . . . . . . . 7, 19

U.S.S.G. § 2S1.1(b)(2)(B) . . . . . . . . . . . . . . . . 8, 19

70 Notre Dame L.R. 891 (1995) . . . . . . . . . . . . . . . 13

**IN THE**

**SUPREME COURT OF THE UNITED STATES**

**PETITION FOR A WRIT OF CERTIORARI**

Petitioner respectfully prays that this Honorable Supreme Court issue a writ of certiorari to review the opinion and judgment below.

### OPINION AND JUDGMENT BELOW

The opinion of the United States Court of Appeals for the Eleventh Circuit appears at Appendix A (App. 1-8) to the petition and is not officially reported, but can be found at 165 Fed.Appx 768 (11th Cir. 2006).

The judgment of the United States District Court for the Middle District of Alabama appears at Appendix B (App. 9-14) to the petition and is unpublished.

### JURISDICTION

The decision of the United States Court of Appeals for the Eleventh Circuit was entered on January 31, 2006. No petition for rehearing was timely filed. However, on April 28, 2006, an extension of time to file the petition for a writ of certiorari was granted to and including June 30, 2006, in Application No. 05A938. The jurisdiction of this Court is therefore timely invoked under 28 U.S.C. § 1254(1).

## CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

**U.S. Const.Amend. V:**

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment of indictment of a Grand Jury, except in cases arising in the land or naval forces, or in Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

**U.S. Const.Amend. VI:**

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witness against him; to have compulsory process for obtaining witnesses in his favor, and to have Assistance of Counsel for his defence.

**Title 18 U.S.C. § 1956(a)(1) & (h):**

Appears at Appendix G (App. 58 & 59, respectively) to the petition.

**U.S.S.G. §§ 1B1.3(a)(1) and 2S1.1(a) & (b):**

Appear at Appendix H (App. 60 and 61, respectively) to the petition.

2

**STATEMENT OF THE CASE**

## 1. Procedural History

On May 5, 2004, a federal grand jury for the Middle District of
Alabama returned a four-count indictment against Petitioner Neal
Armstrong and Roderick Perkins, charging them with conspiracy to
distribute and possession with intent to distribute cocaine
(Count 1), distribution of cocaine (Count 2), mailing injurious
materials (Count 3), and conspiracy to launder monetary
instruments (Count 4). Petitioner was subsequently arrested by
federal authorities in the United States Virgin Islands and
brought to face the charges in Alabama. Petitioner pleaded not
guilty to the charges and, eventually, the government voluntarily
dismissed Count 3 prior to trial. (See App. 2, 55-57).

Petitioner proceeded to a jury trial on November 1 through
3, 2004. At the close of the government's case-in-chief,
Petitioner requested a direct verdict pursuant to Fed.R.Crim.P.
29, which the district court denied. On November 3, 2004, the
jury returned a verdict of guilty only on Count 4 of the
indictment and was unable to reach a unanimous verdict as to
Counts 1 and 2. Thus, the government moved the district court to
dismiss Counts 1 and 2 with prejudice and that motion was
granted. Petitioner thereafter moved for a judgment of acquittal
on Count 4, which the court denied, along with his subsequent
motion for reconsideration and supplemental motion for judgment
of acquittal. (See App. 4, 21-22, 51-53).

The district court conducted a sentencing hearing on
February 23, 2005, in which it heard from witnesses and adopted

3

the United States Probation Office's presentence investigation (PSI) report.   The PSI recommended a sentencing range of 87-121 months; the court therefore sentenced Petitioner to 109 months in prison.   Petitioner objected to the PSI and to the sentencing court's finding of extra-verdict facts and using of acquitted conducts to increase his sentence.   However, these objections were overruled by the district court.   On February 25, 2005, the district court entered a final judgment of conviction and sentence.   (See App. 4-5, 9-14, 15-24).   Petitioner thereafter filed a timely notice of appeal to the United States Court of Appeals for the Eleventh Circuit.

On January 31, 2006, the Eleventh Circuit affirmed Petitioner's conviction and sentence after finding the evidence sufficient for such, and after finding no violation of his Fifth or Sixth Amendments rights.   (App. 6-8).

On April 28, 2006, Petitioner's application to the Supreme Court for an extension of time to and including June 30, 2006, to file the ensuing petition for a writ of certiorari was granted. Petitioner is currently incarcerated in the Federal Bureau of Prisons.

## 2.   Factual Background

On May 9, 2003, Wallace Pickett was arrested in Montgomery, Middle District of Alabama, for taking possession of a package containing 499.5 grams of cocaine that had been mailed to him from the United States Virgin Islands.   (App. 2).   On September 5, 2003, Pickett pleaded guilty to possession with intent to distribute cocaine hydrochloride and mailing poisonous drugs

**4**

through the United States Postal Service. (App. 27). He was facing 57 months in prison, thus, he decided to cooperate with the prosecution to obtain a substantial assistance to law enforcement reduction of sentence. (See Doc. 129 (Trial Tr., Vol. I, at 130-36)). Based on his cooperation agreement, Pickett informed authorities that the Petitioner had mailed the cocaine from the Virgin Islands and **Pickett paid the Petitioner for the Cocaine by United States Postal Money Orders**. (App. 2, 28) (emphasis added). Pickett also informed authorities that he sometimes employed Roderick Perkins to purchase the money orders sent to Petitioner. (App. 2).

On May 5, 2004, based on the information obtained from Pickett, the Petitioner and Perkins were indicted and arrested as discussed ante. (App. 2). Petitioner pleaded not guilty; however, Perkins, like Pickett before, pleaded guilty and entered into cooperation agreement with the prosecution to obtain substantial assistance reduction of sentence. (See Trial Tr., Vol. I, at 61, 80, 85, 96-97). Both Pickett and Perkins testified against Petitioner at his trial. (App. 3).

Picket testified that Petitioner shipped cocaine from the Virgin Islands to Pickett and "**Pickett paid [Petitioner] for the cocaine by sending postal money orders by express mail.**" (App. 2, 28)(emphasis added). Pickett eventually received a sentence of only 30 months in prison. (App. 27 ¶ 8; see Trial Tr., Vol. I, 130-36).

"Perkins testified that he sometimes assisted Pickett in purchasing and sending money orders to [Petitioner,]" (App. 3),

5

knowing that **the money orders "were being sent to [Petitioner] as payment for cocaine, which [Petitioner] was sending from the Virgin Islands to Montgomery, Alabama."** (Id.)(emphasis added). Perkins was not sentenced to a term of imprisonment; he was set free on probation.

The government presented evidence that Petitioner "endorsed and signed for five money orders totalling $5,000, which had been purchased by Pickett and Perkins on April 15, 2003," (App. 3-4, 27-29), and sent to Petitioner as **"exchange for cocaine."** (Trial Tr., Vol. II, at 235)(emphasis added).

At the close of the government's case-in-chief, the defense did not call any witness nor present evidence; however, Petitioner moved the district court for a direct verdict on Count 4 pursuant to Fed.R.Crim.P. 29. (Doc. 97). The district court denied this motion, stating that the government's evidence was sufficient for the case to go to the jury on the question of money laundering under 18 U.S.C. § 1956(a)(1)(A)(i) and (h). (See Trial Tr., Vol. II, at 237-38).

The jury deliberated from the afternoon of November 2, 2004, to noon the following day (see id., at 277, 280-283), but could not "come to an agreement concerning counts one and two." (App. 48). Though they had "reached a verdict concerning count four," (id.), no member of the jury felt that they could reach a unanimous verdict on Counts 1 and 2, even with further deliberation. (App. 4, 51). The jury verdict was guilty as to Count 4 only, i.e., "conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h)." (App. 4).

6

Thereafter, the government moved to dismiss "counts one and two of the indictment," (App. 53), and the "district court granted the government's motion . . . with prejudice." (App. 4). The Petitioner motioned for a judgment of acquittal on Count 4 (Docs. 105, 112), arguing that the district court erred in upholding the jury verdict, where there was no evidence nor testimony demonstrating that Petitioner accepted money "with intent to promote the carrying on of specific unlawful activity," (Doc. 112 at 2), or that "he reinvested the proceeds thereof to further that activity." (Id.).

On January 14, 2005, the district court directed Petitioner to file a brief addressing the application of the Supreme Court's decision in United States v. Booker, 543 U.S. 220, 160 L.Ed.2d 621 (2005). (Doc. 117). The petitioner thereby argued that, in light of Booker, he "cannot be legally held responsible for conspiracy with intent to distribute and possess 500 grams or more of cocaine nor with actual possession . . . because the jury did not find these facts." (Doc. 118 at 2). Therefore, "the Sentence Guideline to be consulted is § 2S1.1.(a)(2) instead of § 2S1.1(a)(1)." (Doc. 118 at 2). "As such, the base offense level is eight (8)," (id.), which will result in a sentencing "range of 0-6 months." (Id.).

The PSI reported that **"Pickett paid [Petitioner] for the cocaine hydrochloride through United States postal money orders."** (App. 28). The PSI determined that Petitioner was accountable for the 499.5 grams of cocaine Pickett received in May 2004 and for two separate 250-gram packages Pickett received in April

7

2004, for a total amount of 999.5 grams of cocaine. (App. 29). "As such, the PSI recommended a base offense level of 26 . . . "for unlawful distribution of at least 500 grams but less than two kilograms of cocaine." (App. 4-5). "The PSI also recommended a specific offense enhancement of two levels," under U.S.S.G. § 2S1.1(b)(2)(B), a two-level enhancement for obstruction of justice, and an adjusted offense level of 30." (App. 5). Hence, "a criminal history category of I, with a resulting guideline imprisonment range of 97-121 months," (id.), for the first-time offender.

Petitioner renewed his aforementioned objections and further objected to the PSI's finding of facts. (See Sent.Tr. at 3-9). Particularly, Petitioner objected to the use and calculation of cocaine (not found by the jury) to increase his sentence for the money laundering conviction (App. 43, 45), and to the obstruction of justice enhancement (App. 44)(not presented to, much less found by, the jury).

The district court conducted a sentencing hearing in which the government called witnesses James Tynan, United States Postal Inspector (Sent.Tr. at 11-17, 42-45); Irvin Johnson, convicted felon, serving jail time (id. at 17-30); and Timothy Sewell, also a convicted felon, serving jail time (id. at 31-42).

Tynan, who had also testified at trial, testified at sentencing concerning drug quantity. He "basically" reiterated the same testimony the jury heard at trial concerning drugs and failed to convict. (Id. at 12-15). Tynan admitted to having neither "documentation" nor "indication" that Petitioner directed

8

"any mailing going from the Virgin Islands to either Mr. Pickett
or Mr. Perkins," (id. 16), except for their saying so.  The only
actual evidence was that Petitioner's "name was on" and "endorsed
on the five money orders" in question, totaling "$5,000." (Id.
at 17).

Johnson, apparently seeking a sentence reduction, testified
concerning the obstruction of justice for the first time at
sentencing.  He stated that Petitioner told Johnson to kill
Wallace and "Tim Pickett," while Petitioner and Johnson were
together in "cell 33" of the Montgomery "city jail." (Id. at 19-
20).  Johnson testified that Petitioner offered to pay "$500" and
"ten kilos" of cocaine for the double murder.  (Id. at 20).
Johnson stated that this interaction occurred in "June or July"
of 2004.  (Id. at 21, 28; see App. 31-32, 44).

Sewell, also testifying with the hope or reducing his
sentence, testified next concerning the obstruction of justice
for the first time at sentencing.  Sewell testified that a "money
order," not in "any large increment," coming "through the mail"
from Petitioner was "no big deal." (Sent.Tr. at 38).  Because
Petitioner

> was a very nice guy [who gave] money to a lot of
> people, to the less fortunate.  He's done it
> several times.  I've seen him do it, okay?  He's
> come to me and asked me, should I give this
> person $50 or should I give this person $20.  He
> has done that.

(Id. at 38-39).  Sewell admitted that Johnson was extorting
Petitioner and that both Sewell and Petitioner knew that Johnson
was "100%" lying.  (Id. at 39).  So much so, that Sewell "had an

9

altercation with Johnson" because Johnson wanted Sewell "to pay him [Johnson] to . . . jump on . . . an individual" with whom Sewell "had a problem with." (Id. at 40).

Indeed, Sewell continued, Johnson went so far with his extortion of Petitioner that, "it [got] to the point where Mr. Johnson threatened him [Petitioner]." (Id. at 41). Thus, "Mr. Armstong [Petitioner] went ahead and agreed, said, yeah, I'll give you $500." (Id.). Probably, "just to get him [Johnson] out of his [Petitioner] face." (Id.).

Thereafter, the government recalled Tynan to the stand, this time to testify concerning the obstruction of justice. He testified that, to corroborate Johnson and Sewell's testimony, he "obtained printout from the jail" for the dates that Johnson "was in custody." (Id. at 43). The printout included "a receipt for a $35 money order that was deposited into Mr. Johnson's account coming from the Virgin Islands." (Id. at 43-44). Tynan stated that the money order did not say it came from the Petitioner nor was there any evidence as to what it was sent for. (Id. at 45).

Petitioner objected to the sentencing testimony, stating that "there is no credibility, indicia of reliability, or anything else about this obstruction of justice charge." (Id. at 48); App. 16, 44). Because, at the time that "the government is alleg[ing] this to have happened," Petitioner was already attending court proceedings with counsel and knew the Picketts were "already locked up and gone." (App. 16). Besides, "[i]t makes no sense to try to have somebody killed and then come up with a $35 payment." (Id.; see also, App. 16-17). Furthermore,

10

"[s]uch allegations must be found by a jury beyond a reasonable doubt." (App. 44).

As for the drug amount, Petitioner stated that the dismissed counts of "the indictment" that "went to the jury" charged 500 grams or more. (App. 17). Thus, considering the jury's misgiving as to whether Petitioner was involved in any drug activity, Petitioner stated, "Judge, for you to find that there is almost a thousand [grams] versus 499 [grams of cocaine, in light of] what went on at trial[,] doesn't fit the evidence. . . ." (Id.; see also, App. 43, 45).

After hearing from the witnesses and counsels, and stating that it adopted the PSI's recommendations, "the district court found by a preponderance of the evidence that 999.5 grams of cocaine should be attributed to [Petitioner]." (App. 5, 18-19). By the same token, the district court also found that Petitioner "had obstructed justice by attempting to solicit the murder of Wallace Pickett prior to trial." (App. 5, 19-20). The district court rejected Petitioner's objections and assigned "an adjusted offense level of 30," (App. 5, 21), and a term of imprisonment of "109 months" (App. 5, 22). Petitioner instantly renewed his objections. (App. 23-24).

For its stated reasons, (App. 6-8), the court of appeals affirmed the district court's decision.

11

**REASONS FOR GRANTING THE WRIT**

I

**The Question Of Whether A Financial Transaction That Allegedly Paid For Cocaine Provides Sufficient Evidence Pursuant To Jackson v. Virginia, For A Money Laundering Conviction Under 18 U.S.C. § 1956, Is An Important Matter That Has Split The Federal Circuits And Is Yet To Be Answered By The Supreme Court. This Court Is Hereby Called Upon To Exercise Its Supervisory Power to Unite The Circuits Concerning This Issue.**

In regard to the sufficiency of the evidence for Petitioner's money laundering conviction, the Eleventh Circuit Court of Appeals held that "[a]t trial, the government presented evidence that (1) Armstrong cashed or attempted to cash the money orders mailed by Pickett and Perkins; (2) Armstrong knew that the money orders represented the proceeds of the illegal sale of cocaine; and (3) Armstrong **took the money in exchange for cocaine** he shipped to Perkins with intent to facilitate the illegal sale of cocaine." (App. 6)(emphasis added).

As evidenced by the facts ante, and discussed infra, that holding is both factually and legally insufficient to uphold Petitioner's conviction. Because, for the purposes of a money laundering prosecution, the proceeds of illegal activity cannot be simply the receipt of payment for the underlying illegal activity. Thus, "a transaction to pay for illegal drugs is not money laundering, because the funds involved are not proceeds of an unlawful activity when the transaction occurs, but become so only after the transaction is completed." United States v. Gaytan, 74 F.3d 545, 555-56 (5th Cir. 1996); see Maura E. Fenningham, A Full Laundering Cycle is Required: Plowing Back

12

the Proceeds to Carry on Crime is the Crime Under 18 U.S.C. §
1956(a)(1)(A)(i), 70 Notre Dame L.Rev. 891 (1995).

As emphasized in the facts (ante at 5, 6, 8 and App. 2, 3,
6), the government's testifying witnesses, including alleged co-
conspirators, all held firm that Petitioner received **$5,000**,
through five money orders of $1,000 each sent by mail, **as payment
for cocaine** he similarly shipped. Indeed, the Eleventh Circuit,
in affirming the district court's holding that the government
provided sufficient evidence to sustain Petitioner's conviction
under 18 U.S.C. § 1956(a)(1)(A)(i) and (h), echoed the
government's allegation that Petitioner **"took the money in
exchange for cocaine he shipped to Perkins."** (App. 6)(emphasis
added). The Eleventh Circuit's decision therefore directly
conflicts with the Fifth Circuit's Gaytan, supra, and contravenes
Jackson v. Virginia, 443 U.S. 307, 61 L.Ed.2d 560 (1979) and In
re Winship, 397 U.S. 358, 25 L.Ed.2d 364 (1970).

That is so because, even "after viewing the evidence in the
light most favorable to the prosecution," Jackson, 443 U.S. at
319, Winship, 397 U.S. at 364, the evidence here merely suggested
cocaine for money order transaction. There were absolutely no
evidence of an agreement to launder money "from prior separate
criminal activity," United Stated v. Savage, 67 F.3d 1435, 1441
(9th Cir. 1995), nor of "the intent to promote" the alleged
"specified unlawful activity." § 1956(a)(1)(A)(i). The Court in
Jackson and Winship require those elements to be found by a jury
beyond reasonable doubt. The fact that the government
established its evidence as "a transaction that pay for illegal

13

drugs [and such] is not money laundering," Gaytan, 74 F.3d at 555, no "rational trier of facts could have found the essential elements of the crime beyond reasonable doubt." Jackson, at 319.

This seems to hold firm in cases other than illegal drug cases. See, e.g., United States v. Awada, 425 F.3d 522, 524 (8th Cir. 2005)(holding that "[t]he transaction or transactions that created the criminally-derived proceeds must be distinct from the money-laundering transaction, because the money laundering statutes criminalize 'transaction[s] in proceeds, not the transaction[s] that create[] the proceeds'")(alteration in original)(quoting United States v. Seward, 272 F.3d 831, 836 (7th Cir. 2001)); United States v. Christo, 129 F.3d 578, 579-80 (11th Cir. 1997)(reversing money laundering convictions that were based on the same transmission of funds as the underlying crimes of bank fraud, the court noted that "[t]he main issue in a money laundering charge, therefore, is determining when the predicate crime becomes a 'completed offense' after which money laundering can occur"); United States v. Estacio, 64 F.3d 477, 480 (9th Cir. 1995); United States v. Edgmon, 952 F.2d 1206, 1213-14 (10th Cir. 1991)(holding that government must prove that the defendant knowingly used the proceeds of unlawful activity in a separate financial transaction because "Congress aimed the crime of money laundering at conduct that follows in time the underlying crime rather that to afford an alternative means of punishing the prior 'specified unlawful activity'").

As for the evidence in this case, it is simply not enough for the government to show that the Petitioner obtained money

14

from a "specified unlawful activity" and turned that money into something else. If that were the case, then "[a] defendant would . . . be exposed to criminal liability for every derivative transaction regardless of his or her criminal intent." United States v. Marshall, 248 F.3d 525, 540 (6th Cir. 2001). The courts have held firm, at least in principle, to the idea that the transactions must in fact promote the carrying on of "specified unlawful activity." See United States v. Jackson, 935 F.2d 832, 841-42 (7th Cir. 1991)(holding that the purchase of mobile phones and the receipt of rent checks by defendant constituted the mere spending of ill-gotten gains, and did not "promote" defendant's activities nor constituted a "plowing back" of the proceeds of his drug business); and cf. United States v. Corchada-Peralta, 318 F.3d 255, 259 (1st Cir. 2003)(overturning the conviction of a drug dealer's wife who had spent thousands of dollars that the wife knew to be the proceeds of illegal activity, the court found that such a conviction would "make it unlawful wherever a wife spends any of her husband's money, knowing or believing him to be a criminal").

Wherefore, certiorari should be granted to resolve the conflict among the circuits on the question presented, and to adopt the legal principle used in determining proceeds in money laundering cases where the underlying offense is not illegal drugs to money laundering cases where the underlying offense is illegal drugs.

15

II

**The Question Of Whether A District Court Could Reasonably Use A Dismissed Offense, On Which The Government Had Sought But Failed To Obtain A Valid Jury Verdict, And Find Additional Extra-Verdict Facts To Increase A Defendant's Sentence By Over Ten Times The Maximum Sentence A Judge Could Impose Solely On The Basis Of Facts Reflected In The Jury Verdict, Without Violating The Sixth Amendment's Jury-Trial Right, Is An Important Issue That Affects Defendants Nationally. The Circumstances Which Effectuated This Court's Ruling In United States v. Booker Have Resurfaced In This Case And, Likewise Booker, Call For An Exercise Of This Court's Supervisory Power.**

**A.  Unconstitutional Sentence For Acquitted Drugs Offenses.**

In addressing this issue, the court of appeals held (1) "'the use of extra-verdict enhancements in a non-mandatory guidelines system is not unconstitutional,'" (App. 8)(quoting United States v. Rodriques, 398 F.3d 1291, 1300 (11th Cir. 2005); (2) "a sentencing court still may consider conduct of which a defendant was acquitted, 'as long as the government proves the acquitted conduct relied upon by a preponderance of the evidence,'" (App. 8)(quoting United States v. Duncan, 400 F.3d 1297, 1304-05 (11th Cir. 2005); and (3) "[t]he district court then properly applied the calculated Guidelines range in an advisory fashion . . . that . . . did not violate [Petitioner's] Sixth Amendment rights." (App. 8).

The court of appeals erred in its holdings because, as shown in the facts ante, even though the jury had not agreed with the government that Petitioner was involved in the underlying drug offenses and the district court dismissed those counts "with prejudice" on the government's motion to dismiss, the Petitioner was still sentenced for that offense as if it was the offense of

**16**

conviction.    In addition, the district court unreasonably and unconstitutionally exposed Petitioner to a penalty far "'_exceeding_ the maximum he would receive if punished according to the facts reflected in the jury verdict alone.'"    Ring v. Arizona, 536 U.S. 584, 588-89, 153 L.Ed.2d 556 (2002)(quoting Apprendi v. New Jersey, 530 U.S. 466, 483, 147 L.Ed.2d 435 (2000)(which also stated that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt[,]" id. at 490); see Blakely v. Washington, 542 U.S. 296, 303, 159 L.Ed.2d 403 (2004)("the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant"); United States v. Booker, 543 U.S. 220, 160 L.Ed.2d 621 (2005)(applying same to the Federal Sentencing Guidelines and making the Guidelines advisory by severing statutory provisions concerning mandatory applicability).

While not denigrating the seriousness of the alleged drug offense in the case at bar, the jury had considered it along with the money laundering offense and passed on it.    The jury specifically found Petitioner guilty only on the money laundering count.    The Petitioner never waived his Sixth Amendment right to have the facts of the drug allegation determined by the jury beyond reasonable doubt.    Therefore, advisory guidelines notwithstanding, the Sixth Amendment does not permit the district court to use the guidelines to accomplish an "end-run" around a

**17**

defendant's constitutional right to trial by jury and usurp the jury's verdict to increase the defendant's sentence tenfold. Petitioner contends, such a precipitous departure "from the presumptively reasonable guidelines range," United States v. Gall, 446 F.3d 884, 889 (8th Cir. 2006), was not only unreasonable, but also unconstitutional under Booker, and its progeny.

This Court, in United States v. Watts, 519 U.S. 148, 150, 136 L.Ed.2d 554 (1997), and its predecessor, Witte v. United States, 515 U.S. 389, 401, 403, 415, 132 L.Ed.2d 351 (1995), had considered whether, and for that matter agreed that, under the mandatory sentencing guideline regime, a sentencing judge could consider conduct of which a criminal defendant had been acquitted at trial, using a preponderance of the evidence standard. The Eleventh Circuit has adopted this approach in its case law, including its decision in this case, supra. Nevertheless, "[i]n neither Witte nor Watts was there any contention that the sentencing enhancement had exceeded the sentence authorized by the jury verdict in violation of the Sixth Amendment." Booker, 160 L.Ed.2d at 648, 125 S.Ct. at 754. That is the issue that went to the Eleventh Circuit, in the instant case, and confronts this Court here today. Therefore, Watts is distinguished from the case at bar.

Furthermore, federal district courts are now coming to the conclusion that Watts is no longer good law and that a district court violates the Sixth Amendment by enhancing sentences in contravention to a jury's verdict. See, e.g., United States v.

Baldwin, 389 F.Supp.2d 1,2 (D.D.C. 2005)(if acquitted conduct could be considered at sentencing, the burden of proof would be proof beyond a reasonable doubt); United States v. Coleman, 370 F.Supp.2d 661, 665-73 (S.D. Ohio 2005)(at sentencing, acquitted conduct should always be considered using reasonable doubt standard; otherwise right to jury trial is eviscerated); United States v. Pimental, 367 F.Supp.2d 143, 150-51 (D. Mass. 2005) (characterizing Justice Stevens' language as questioning Watts' underlying proposition); and United States v. Gray, 362 F.Supp.2d 714, 721 (S.D. W.Va. 2005)("reasoning in Watts . . . was drawn into serious question by the constitutional majority in Booker").

In this case, the Petitioner cannot be held legally responsible for conspiracy with intent to distribute and possess 500 grams or more of cocaine nor with actual possession of same because the jury did not find these facts. Since none of the relevant conduct contained in Counts 1 and 2 of the indictment is attributable to the Petitioner, the advisory sentencing guideline that should have been consulted is § 2S1.1(a)(2) instead of § 2S1.1(a)(1). As such, the base offense level should be eight (level-8), with a two-level increase under § 2S1.1(b)(2)(B) to level-10, resulting in a sentencing range of 6-12 months.

## B. Unconstitutional Enhancement For Obstruction of Justice

As shown in the facts (ante at 9-10), the sheer ridiculousness of the allegation by Petitioner's cell-mates, who were seeking favors from the government, that Petitioner contracted one of them for $500 and ten kilograms of cocaine to kill the Pickett brothers, whom Petitioner knew were locked up in

19

another jail and thus out of reach, is the very reason why this charge should have gone to a jury of Petitioner's peer and determined beyond a reasonable doubt. A jury of Petitioner's peer would find it absolutely incredible that Petitioner would pay, and that contract killer accept, a mere $35 to carry out a double murder, while Petitioner was giving away that amount and up to $50 to anyone else in the cell that needed money to buy commissary. (Ante at 9).

Nevertheless, even if the evidence at sentencing could have said to have been sufficient to satisfy a preponderance standard, there is a reasonable probability that the jury, hearing the evidence and observing the witnesses demeanor, would not come to the same conclusion under a reasonable doubt standard at trial. See United States v. Alvarado, 440 F.3d 191, 200-201 (4th Cir. 2006)(remanding for resentencing because firearm and obstruction of justice "enhancements increased defendant's sentence beyond what he could have received under the Guidelines based on the jury factual findings alone, and were in violation of Booker"); United States v. Blood, 435 F.3d 612, 631 (6th Cir. 2006)(holding that enhancement based on judge's finding of obstruction of justice was plain error in violation of Sixth Amendment).

## C. Unreasonable Application of the Advisory Guidelines

The facts, as established beyond reasonable doubt by the jury verdict in this case, only supported a maximum sentence of 6-12 months imprisonment pursuant to the presumptively reasonable guidelines range. The district court's imposition of a sentence 97-103 months longer than the guidelines maximum, based upon

judge-found facts, was an unreasonable application of the advisory sentencing guidelines under Booker. Further evidence of the district court's unreasonableness is found in the disparity between Petitioner's sentence and the sentences of his alleged co-conspirator (Pickett, who was only sentenced to 30 months after being convicted on two counts) and codefendant (Perkins, was given probation on the money laundering count that Petitioner is sentenced to serve 109 months imprisonment on). (See ante at 5-6). In imposing sentence, the district court must consider the factors set forth in 18 U.S.C. § 3553(a), which include: . . . "(6) the need to avoid unwarranted sentence disparities among defendants with similar records who been found guilty of similar conduct." Petitioner and Perkins were first time offenders. But Pickett, was a repeated offender and, in addition to his poor record, he was convicted on two drug counts in this case. Despite his instant multiple convictions and prior record, Pickett was somehow given a sentence over three times less than Petitioner's. Albeit Petitioner was only convicted of the money laundering count for which Perkins, with the same record as Petitioner, got probation.

Wherefore, for the foregoing reasons, the present case is "ripe" for a decision concerning the constitutionality and reasonableness of a district court's using of "acquitted conduct" and "extra-verdict" facts to increase a defendant's sentence by ten times the presumptive maximum guidelines range the defendant was exposed to, based on the facts reflected in the jury verdict alone, and thereby this Court is respectfully invited to resolve this issue here.

## III

**The Question Of Whether An Offense That Was Dismissed With Prejudice After Jury Could Not Reach An Unanimous Verdict At A Defendant's Trial Is An Acquittal, Such That It Would Estop The District Court From Sentencing The Defendant On That Offense Under The Fifth Amendment's Double Jeopardy Clause, Is Also A Very Important Question That Has National Effect. The Eleventh Circuit's Opinion In This Case Departs From United States v. Martin Linen Co., In That It Tacitly Sanctioned Such A Departure By The District Court, And Thereby Require The Granting Of This Petition To Enable The Supreme Court To Ascertain Compliance With Its Ruling In The Lower Courts.**

This matter is distinguished from the "inconsistent jury verdicts" issue the court of appeals and district court misread it to be (App. 8-9)(citing United States v. Powell, 469 U.S. 57, 65-67, 83 L.Ed.2d 461 (1984), and the "overt act" question answered by this Court in Whitfield v. United States, 543 U.S. 209, 160 L.Ed.2d 611 (2005). This issue requires the application of Ashe v. Swenson, 397 U.S. 436, 25 L.Ed.2d 469 (1970)("collateral estoppel" doctrine), and United States v. Martin Linen Supply Co., 430 U.S. 564, 51 L.Ed.2d 642 (1977)("Double Jeopardy Clause") to the sentencing issue in this case and similar cases.

"'Collateral estoppel' . . . means simply that when an issue of ultimate fact has once been determined by a valid and final judgment that issue cannot again be litigated between the same parties in any future lawsuit." Ashe, 397 U.S. at 443 (emphasis added). Ultimately, the first phase of the answer to this question then is to answer whether the mistrial and eventual dismissal of the drug offense "with prejudice" was a final judgment of acquittal. An examination of Smith v. Massachusetts,

22

543 U.S. 462, 160 L.Ed.2d 914, 924-26 (2005), and Martin Linen, 430 U.S. at 565-66, 569-72, would demonstrate that the circumstances under which the dismissal was made in this case qualify as a final judgment of acquittal that bars reprosecution.

In Martin Linen, as well as in this case, a "'hopelessly deadlocked' jury was discharged when unable to agree upon a verdict at the criminal [] trial. . . ." 430 U.S. at 465. The district in Martin Linen granted the defendant timely motions for judgments of acquittal and the government appealed. The court of appeals dismissed the appeal, United States v. Martin Linen Supply Co., 534 F.2d 585 (5th Cir. 1976), holding that the Double Jeopardy Clause bars appellate review and retrial following a judgment of acquittal under Fed.R.Crim.P. 29(c). The Supreme Court granted certiorari and affirmed. See Martin Linen, 430 U.S. at 566-67; United States v. Ogles, 440 F.3d 1095, 1097, 1100-03 (9th Cir. 2006).

In Smith, a Massachusetts trial judge acquitted the defendant of one of the three offenses charged, midway through a jury trial. The judge thereafter "reversed" her previous ruling and allowed the previously acquitted count to go to the jury. The jury therefore convicted the defendant on all counts. In affirming, the Massachusetts Appeals Court held that the Double Jeopardy Clause was not implicated because the trial judge's correction of her ruling had not subjected the defendant to a second prosecution or proceeding. In reversing, this Court held that submitting the previously acquitted count to the jury plainly subjected the defendant to further "'factfinding

23

proceedings going to guilt or innocence,'" which are prohibited following a midtrial acquittal by the court. Smith, 160 L.Ed.2d at 923 (quoting Smalis v. Pennsylvania, 476 U.S. 140, 145, 90 L.Ed.2d 116 (1986)). The Supreme Court had "long held that the Double Jeopardy Clause of the Fifth Amendment prohibits reexamination of a court-decreed acquittal to the same extent it prohibits reexamination of an acquittal by jury verdict." Id. at 922; see Ogles, 440 F.3d at 1100-1103.

Accordingly, there should be no doubt that the dismissal of the drug offense "with prejudice" by the district court, after the jury could not agree upon an unanimous verdict in this case, constitutes an acquittal and final judgment. There should be no doubt either that such an acquittal and final judgment had collaterally estopped the district court from reexamining the drug offense in a subsequent proceeding, especially where the parties had stipulated and judge had specifically agreed that the drug offense could not be retried. (ante at 3, 7). See Smith, 160 L.Ed.2d at 924. Thus, having concluded that the acquittal of the drug offense was a final judgment that bars reprosecution, the more difficult phase of this question, whether the Double Jeopardy Clause permitted the sentencing court to sentence Petitioner for the acquitted drug offense in the manner it did in this case should be answered.

It is important to note, at the outset, that the facts of this case gave Petitioner no reason to doubt that the manner in which he was sentenced on his money laundering conviction is no different from the way he would have been sentenced had the jury

**24**

found him guilty of the dismissed drug offense. Therefore, his sentencing proceeding was no different from a retrial, prohibited by Martin Linen, and its progeny, except that Petitioner might have had a jury of his peer acquitted him in a new trial, but he did not stand a chance against the district judge at sentencing. Petitioner respectfully submits that the Double Jeopardy Clause of the Fifth Amendment should be held to collaterally estop a district court from employing relevant conduct, U.S.S.G. § 1B1.3, at sentencing, to wholly reinstate the penalty for a dismissed offense whether it was "a court-decreed acquittal" or "an acquittal by jury verdict." Smith 160 L.Ed.2d at 922 (listing cases, including Martin Linen, 430 U.S. at 565-66, 573).

The most difficult phase of the question, however, turns to this Court's precedent in Watts and Witte, supra. In Watts, police discovered cocaine base in a kitchen cabinet and two loaded guns and ammunition hidden in a bedroom closet of Watts' house. A jury convicted Watts of possessing cocaine base with intent to distribute, but acquitted him of using a firearm in relation to a drug offense." 519 U.S. at 149-50. Despite Watts' acquittal on the firearms count, the district court found by a preponderance of the evidence that Watts had possessed the guns in connection with the drug offense and therefore added **two points** to his base offense level under U.S.S.G. § 2D1.1(b)(1). The court of appeals vacated the sentence, holding that "a sentencing judge may not, 'under any standard of proof,' rely on facts of which the defendant was acquitted." 519 U.S. at 150 (quoting United States v. Watts, 67 F.3d 790, 797 (9th Cir.

1995)(other citations omitted).  Relying on Witte, 515 U.S. at
402-03, this Court reversed, holding the Double Jeopardy Clause
permitted a court to consider acquitted conduct in sentencing a
defendant under the (then mandatory) guidelines.  Watts, 519 U.S.
at 154-55.

        "In neither Witte nor Watts was there any contention that
the sentencing enhancement had exceeded the sentence authorized
by the jury verdict in violation of the Sixth Amendment."
Booker, 160 L.Ed.2d at 648.  (See ante at 18-19).  Nevertheless,
the Watts Court "acknowledge[d] a divergence of opinion among the
Circuits as to whether, in extreme circumstances, relevant
conduct that would dramatically increase the sentence must be
based on clear and convincing evidence."  519 U.S. at 156.  See
McMillan v. Pennsylvania, 477 U.S. 79, 88, 91 L.Ed.2d 67
(1986)(upholding use of preponderance standard where there was no
allegation that the sentencing enhancement was "a tail which wags
the dog of the substantive offense"); United States v. Kikumura,
918 F.2d 1084, 1102 (3rd Cir. 1990)(holding that clear-and-
convincing standard is implicit in 18 U.S.C. § 3553(b), which
requires a sentencing court to "find" certain facts in order to
justify certain large upward departures); United States v.
Townley, 929 F.2d 365, 369 (8th Cir. 1991)("At the very least,
McMillan allows for the possibility that the preponderance
standard the Court approved for garden variety sentencing
determinations may fail to comport with due process where, as
here, a sentencing enhancement factor becomes 'a tail which wags
the dog of the substantive offense'")(quoting McMillan, supra);

United States v. Gigante, 39 F.3d 42, 48 (2nd Cir. 1994), as amended, 94 F.3d 53, 56 (1996)("Where a higher standard, appropriate to a substantially enhanced sentence range, is not met, the court should depart downwardly"); United States v. Lombard, 72 F.3d 170, 186-187 (1st Cir. 1995)(authorizing downward departure, where acquitted conduct calling for an "enormous" sentence enhancement "is itself very serious conduct," and "where the ultimate sentence is itself enormous").

There is also a circuit-split concerning this issue that requires this Court's resolution. See United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993)(taking the opposite track from the above-listed cases and stating that "concerns making guideline calculations the issue of a higher than a preponderance standard is foreclosed in this circuit"), cert. denied, 511 U.S. 1020, 128 L.Ed.2d 76 (1994). Indeed, Justice White has, in dissenting from the denial of certiorari in Kinder v. United States, 504 U.S. 946, 948-949, 119 L.Ed.2d 214 (1992)(memorandum case), acknowledged the circuit-split and called for the granting of certiorari to clarify the applicable standards under the new sentencing regime. Heeding Justice White's call is imperative in this case before the Court today, especially in the aftermath of Booker.

The Court's precedent in Watts and Witte are distinguished from the instant case because the "exceptional circumstances" that this case present was not presented in Watts, and therefore, the Court did "not address that issue." 519 U.S. 157. That is so because Watts was only enhanced by "two points to his base

**27**

offense level," 519 U.S. at 150; Petitioner here was enhanced by **20 points** to his base offense level and tenfold his presumptively reasonable guidelines sentence by the acquitted conduct. Hence, the feared "tail which wags the dog of the substantive offense." McMillan, 477 U.S. at 88; Townley, 929 F.2d at 369. Wherefore, since this case squarely put the "extreme" and "exceptional" circumstances" that Watts and Witte failed to present before this Court, Petitioner respectfully submits, the petition should be granted.

## CONCLUSION

For the foregoing reasons, the petition for a writ of certiorari should be granted.

Respectfully submitted,

Neal Roman Armstrong
#07406-094   Unit-3BU

Petitioner, pro se
FCC Yazoo City-Low
P.O. Box 5000
Yazoo City, MS 39194-5000

28

27BC, CLOSED, EL

# U.S. District Court
## Alabama Middle District (Montgomery)
## CRIMINAL DOCKET FOR CASE #: 2:04-cr-00084-WHA-CSC-1
## Internal Use Only

Case title: USA v. Armstrong et al                    Date Filed: 05/05/2004

Assigned to: Honorable W. Harold
Albritton, III
Referred to: Honorable Charles S.
Coody

## Defendant

**Neal Armstrong** (1)                    represented by **Joseph Rutherford Willie**
*TERMINATED: 02/25/2005*                    4151 Southwest Freeway, Suite 490
*also known as*                             Houston, TX 77027
Neil Armstrong (1)                          713-659-7330
*TERMINATED: 02/25/2005*                    Fax: 713-599-1659
                                            Email: jwillieii@aol.com
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE NOTICED*
                                            *Designation: Retained*

                                            **Richard Kelly Keith**
                                            Richard K Keith, Esq.
                                            22 Scott Street
                                            Montgomery, AL 36104
                                            US
                                            334-264-6776
                                            Fax: 334-265-5362
                                            Email: rkk@rkeithlaw.com
                                            *TERMINATED: 06/24/2004*
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE NOTICED*

## Pending Counts                          ## Disposition

MONEY LAUNDERING -
INTERSTATE COMMERCE - NMT
$500,000;[*];NMT20Y; B; NMT 3Y            109 Mos Imp; 3 Yrs Sup Rel; $100 SA
SUP REL; G/L; VWPA; $100 AF
(4)

### Highest Offense Level (Opening)

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| CONSPIRACY TO DISTRIBUTE NARCOTICS - NMT $2,000,000;[*]; NLT 5Y; NMT 40Y; B; NLT 4Y SUP REL; G/L; VWPA; $100 AF (1) | DISMISSED ON ORAL MOTION OF U.S. ATTORNEY (following trial) |
| NARCOTICS - SELL, DISTRIBUTE, OR DISPENSE and Aiding & Abetting - NMT $1,000,000;[*]; NMT 20Y; B; NLT 3Y SUP REL; G/L; VWPA; $100 AF (2) | DISMISSED ON ORAL MOTION OF U.S. ATTORNEY (following trial) |
| INJURIOUS ARTICLE AS NON-MAILABLE -NMT $100,000; [*]; NMT 1Y; B; NMT 1Y SUP REL; G/L; VWPA; $25 AF (3) | DISMISSED ON ORAL MOTION OF U.S. ATTORNEY |

### Highest Offense Level (Terminated)

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

### Plaintiff

| **USA** | represented by | **Todd A. Brown** |
|---|---|---|

represented by **Todd A. Brown**
U.S. Attorney's Office
PO Box 197
Montgomery, AL 36101-0197
334-223-7280
Fax: 223-7560
Email: todd.brown@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Susan R. Redmond**
U.S. Attorney's Office
PO Box 197

Montgomery, AL 36101-0197
334-223-7280
Fax: 223-7560
Email: susan.redmond@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 05/05/2004 | ❶1 | INDICTMENT as to Neal Armstrong (1) count(s) 1, 2, 3, 4, Roderick Perkins (2) count(s) 1, 2, 3, 4. (ws, ) (Entered: 05/07/2004) |
| 05/07/2004 | ❶2 | Arrest Warrant Issued as to Neal Armstrong. (ws, ) (Entered: 05/07/2004) |
| 05/07/2004 |  | ***Set Flags as to Neal Armstrong, Roderick Perkins (ws, ) (Entered: 05/07/2004) |
| 05/27/2004 | ❶13 | Arrest Warrant Returned Executed on 5/12/04 as to Neal Armstrong. (ws, ) (Entered: 05/27/2004) |
| 05/27/2004 | ❶ | Case unsealed as to Neal Armstrong (ws, ) (Entered: 05/27/2004) |
| 05/28/2004 | ❶16 | MOTION for Detention Hearing by USA as to Neal Armstrong. (ws, ) (Entered: 05/28/2004) |
| 05/28/2004 | ❶18 | NOTICE OF ATTORNEY APPEARANCE: Richard K. Keith appearing for Neal Armstrong (ekl, ) (Entered: 05/28/2004) |
| 05/28/2004 | ❶ | Arrest of Neal Armstrong in Virgin Island. (ws, ) (Entered: 05/28/2004) |
| 05/28/2004 | ❶19 | Minute Entry for proceedings held before Judge Charles S. Coody :Initial Appearance as to Neal Armstrong held on 5/28/2004 (Tape #FTR: 3:03 - 3:10.) (ws, ) (Entered: 05/28/2004) |
| 05/28/2004 | ❶ | ORAL ORDER as to Neal Armstrong appointing CJA panel Attorney Richard Keith to represent the defendant . Signed by Judge Charles S. Coody on 5/28/04. (ws, ) (Entered: 05/28/2004) |
| 05/28/2004 | ❶20 | CJA 23 Financial Affidavit by Neal Armstrong (ws, ) (Entered: 05/28/2004) |
| 06/01/2004 | ❶22 | ORDER OF TEMPORARY DETENTION PENDING HEARING as to Neal Armstrong re 16 MOTION for Detention Hearing filed by USA. Detention Hearing set for 6/2/2004 01:00 PM in Courtroom 4B before Honorable Charles S. Coody. USM to produce deft for this hearing. Signed by Judge Charles S. Coody on 6/1/04. (ekl, ) (Entered: 06/01/2004) |
| 06/01/2004 | ❶23 | ORDER that CJA Panel Attorney Richard Keith be appointed to represent defendant for all further proceedings as to Neal Armstrong ( follows Oral Order). Appointed counsel shall file a written notice of appearance with the court. . Signed by Judge Charles S. Coody on 6/1/04. (ekl, ) (Entered: 06/01/2004) |

| 06/02/2004 | ●25 | CJA 20 as to Neal Armstrong : Appointment of Attorney Richard Kelly Keith for Neal Armstrong. . Signed by Judge Charles S. Coody on 6/2/04. (ws, ) (Entered: 06/02/2004) |
|---|---|---|
| 06/02/2004 | ●26 | Minute Entry for proceedings held before Judge Charles S. Coody : Arraignment as to Neal Armstrong (1) Count 1,2,3,4 held on 6/2/2004; Detention Hearing as to Neal Armstrong held on 6/2/2004; Plea entered by Neal Armstrong Not Guilty on counts 1-4. (Tape #FTR: 1:00 - 1:140.) (Attachments: # 1 Witness List) (ws) (Entered: 06/02/2004) |
| 06/03/2004 | ●27 | ORDER ON ARRAIGNMENT Pretrial Conference set for 6/14/2004 03:30 PM in Courtroom 4B before Honorable Charles S. Coody. Jury Trial set for 7/7/2004 10:00 AM in Courtroom 2C before Honorable Judge W. Harold Albritton III. Pretrial Motions due by 6/11/2004. Discovery due by 6/9/2004.. Signed by Judge Charles S. Coody on 6/3/04. (ekl, ) (Entered: 06/03/2004) |
| 06/04/2004 | ●28 | ORDER OF DETENTION pending trial as to Neal Armstrong . Signed by Judge Charles S. Coody on 6/4/04. (ekl, ) (Entered: 06/04/2004) |
| 06/11/2004 | ●29 | First MOTION to Continue trial by Neal Armstrong. (Keith, Richard) Additional attachment(s) added on 6/16/2004 (ws, ). (Entered: 06/11/2004) |
| 06/11/2004 | ●30 | First MOTION for Extension of Time to File by Neal Armstrong. (Keith, Richard) Additional attachment(s) added on 6/16/2004 (ws, ). (Entered: 06/11/2004) |
| 06/14/2004 | ●31 | Minute Entry for proceedings held before Judge Charles S. Coody :Pretrial Conference as to Neal Armstrong held on 6/14/2004 (Tape #FTR: 3:37 - 3:40.) (ws ) (Entered: 06/15/2004) |
| 06/15/2004 | ●33 | NOTICE of Deficiency sent to Attorney Richard Keith re: documents #29 and #30 filed on 6/11/04 need signatures on pleadings. (ws) (Entered: 06/15/2004) |
| 06/16/2004 | ●34 | NOTICE of Correction (Attachments: #(1) Motion to Continue Trial; #(2) Motion to Extend Filing Deadline)(ws ) (Entered: 06/16/2004) |
| 06/18/2004 | ●35 | WAIVER of Speedy Trial by Neal Armstrong (ekl, ) (Entered: 06/21/2004) |
| 06/18/2004 | ●36 | MOTION for Admission Pro Hac Vice filed by Attorney Joseph R. WIllie, II as to defendant Neal Armstrong. $20.00 paid. Receipt 102688 (ekl, ) Additional attachment(s) added on 6/23/2004 (ekl, ). (Entered: 06/21/2004) |
| 06/18/2004 | ●37 | MOTION to Vacate Detention Order by Neal Armstrong [treated as a Motion for Revocation or Amendment of the Magistrate Judge's Detention Order, pursuant to 18 USC 1345(b) ] (ekl, ) Modified on 7/14/2004 (ekl, ). (Entered: 06/21/2004) |

| 06/18/2004 | ❸38 | MEMORANDUM OF LAW in Support by Neal Armstrong re 37 MOTION to Vacate Detention Order (ekl, ) (Entered: 06/21/2004) |
|---|---|---|
| 06/21/2004 | ❸39 | MOTION to Withdraw as Attorney by Richard K. Keith. by Neal Armstrong. (Keith, Richard) (Entered: 06/21/2004) |
| 06/22/2004 | ❸41 | MOTION to Dismiss (Counts III and IV) Indictment for Improper Venue by Neal Armstrong. (ekl, ) (Entered: 06/22/2004) |
| 06/23/2004 | ❸42 | ORDER granting 36 Motion for Admission Pro Hac Vice (Joseph R. Willie, II) as to Neal Armstrong (1). Signed by Judge W. Harold Albritton III on 6/23/04. (ekl, ) (Entered: 06/23/2004) |
| 06/23/2004 | ❸43 | PRETRIAL CONFERENCE ORDER as to Neal Armstrong Jury Trial (3 DAYS) set for 10/25/2004 10:00 AM in Courtroom 2C before Honorable Judge W. Harold Albritton III. Jury Selection set for 10/25/2004 before Honorable Judge W. Harold Albritton III. Voir Dire due by 10/18/2004 Proposed Jury Instructions due by 10/18/2004 Motions in Limine due by 10/18/2004 Plea Agreement due by 10/18/2004.. Signed by Judge Charles S. Coody on 6/21/04. (ekl, ) (Entered: 06/23/2004) |
| 06/23/2004 | ❸44 | ORDER as to Neal Armstrong Pretrial Conference set for 8/23/2004 03:30 PM in Courtroom 4B before Honorable Charles S. Coody.. Signed by Judge Charles S. Coody on 6/21/04. (ekl, ) (Entered: 06/23/2004) |
| 06/23/2004 | ❸ | Terminate Deadlines and Hearings as to Neal Armstrong, Roderick Perkins : (ekl, ) (Entered: 06/23/2004) |
| 06/24/2004 | ❸47 | ORDER TO CONTINUE - Ends of Justice as to Neal Armstrong, Roderick Perkins Time excluded from 6/24/04 until 10/25/04., Motions granted and terminated as to Neal Armstrong, Roderick Perkins : 29 First MOTION to Continue trial filed by Neal Armstrong, [21] MOTION to Continue filed by Roderick Perkins. Jury Trial continued from 7/7/04 and reset for 10/25/2004 10:00 AM in Courtroom 2C before Honorable Judge W. Harold Albritton III.. Signed by Judge W. Harold Albritton III on 6/24/04. (ekl, ) (Entered: 06/24/2004) |
| 06/24/2004 | ❸48 | ORDER as to Neal Armstrong re 37 MOTION to Vacate Detention Order filed by Neal Armstrong Response by USA due by 7/6/2004. Signed by Judge W. Harold Albritton III on 6/24/04. (ekl, ) (Entered: 06/24/2004) |
| 06/24/2004 | ❸49 | STAMPED ORDER as to Neal Armstrong re 39 MOTION to Withdraw as Attorney by Richard K. Keith. filed by Neal Armstrong, Motion granted and terminated as to Neal Armstrong. . Signed by Judge W. Harold Albritton III on 6/24/04. (ekl, ) (Entered: 06/25/2004) |
| 06/24/2004 | ❸ | Attorney update in case as to Neal Armstrong. Attorney Richard Kelly Keith terminated. (ekl, ) (Entered: 07/07/2004) |
| 06/25/2004 | ❸50 | RESPONSE to Motion by USA as to Neal Armstrong re 37 MOTION to Vacate *Detention Order* (Brown, Todd) (Entered: 06/25/2004) |

| | | |
|---|---|---|
| 07/06/2004 | ❏51 | REPLY TO Government's RESPONSE to Motion by Neal Armstrong re 37 MOTION to Vacate Detention Order (ekl, ) (Entered: 07/09/2004) |
| 07/12/2004 | ❏ | TRANSCRIPT of Proceedings by Digital Sound Recording of DETENTION HEARING and ARRAIGNMENT as to Neal Armstrong held on June 2, 2004 before Judge Charles S. Coody. Tape transcribed by Court Reporter: Risa Entrekin. (ekl, ) (Entered: 07/12/2004) |
| 07/14/2004 | ❏52 | ORDER as to Neal Armstrong re 41 MOTION to Dismiss for Improper Venue filed by Neal Armstrong. USA to show cause on or before 7/23/04 why motion should not be granted. Reply due by defendant 7/30/2004. Signed by Judge W. Harold Albritton III on 7/14/04. (ekl, ) (Entered: 07/14/2004) |
| 07/14/2004 | ❏53 | ORDER denying 37 Motion to Vacate Detention Order [treated as a Motion for Revocation or Amendment of the Magistrate Judge's Detention Order,pursuant to 18 USC 1345(b)]as to Neal Armstrong (1). The court explicitly adopts the Magistrate Judge's detention order entered on 6/4/04, doc. 28. Signed by Judge W. Harold Albritton III on 7/14/04. (ekl, ) (Entered: 07/14/2004) |
| 07/14/2004 | ❏ | MOTION as to Neal Armstrong REFERRED to Magistrate Judge: 41 MOTION to Dismiss for Lack of Jurisdiction. See referral order, doc.54. (ekl, ) (Entered: 07/23/2004) |
| 07/15/2004 | ❏54 | ORDER REFERRING MOTION to Magistrate Judge Charles S. Coody for consideration and recommendation as to Neal Armstrong 41 MOTION to Dismiss for Improper Venue filed by Neal Armstrong . Signed by Judge W. Harold Albritton III on 7/15/04. (ekl, ) (Entered: 07/15/2004) |
| 07/16/2004 | ❏55 | RESPONSE to Motion by USA as to Neal Armstrong re 41 MOTION to Dismiss for Lack of Jurisdiction (Brown, Todd) (Entered: 07/16/2004) |
| 07/19/2004 | ❏56 | MOTION for Reconsideration re 53 Order on Motion to Vacate, by Neal Armstrong. (Willie, Joseph) (Entered: 07/19/2004) |
| 07/19/2004 | ❏57 | Rule 40 Documents Received from District Court of the Virgin Islands as to Neal Armstrong (ekl, ) (Entered: 07/21/2004) |
| 07/21/2004 | ❏58 | STAMPED ORDER denying 56 Motion for Reconsideration of 53 Order on Motion to Vacate, filed by Neal Armstrong as to Neal Armstrong (1). Signed by Judge W. Harold Albritton III on 7/21/04. (ekl, ) (Entered: 07/21/2004) |
| 07/22/2004 | ❏59 | MOTION for Bill of Particulars by Neal Armstrong. (Willie, Joseph) (Entered: 07/22/2004) |
| 07/22/2004 | ❏60 | BRIEF/RESPONSE in Support by Neal Armstrong re 59 MOTION for Bill of Particulars (Willie, Joseph) (Entered: 07/22/2004) |
| 07/23/2004 | ❏61 | ORDER as to Neal Armstrong Pretrial Conference set for 8/23/04 is RESET for 8/19/2004 03:30 PM in Courtroom 4B before Honorable Charles S. Coody.. Signed by Judge Charles S. Coody on 7/23/04. (ekl, ) |

| | | |
|---|---|---|
| | | (Entered: 07/23/2004) |
| 07/23/2004 | ●63 | ORDER denying 59 Motion for Bill of Particulars as to Neal Armstrong (1). Signed by Judge Charles S. Coody on 7/23/04. (ekl, ) (Entered: 07/23/2004) |
| 07/23/2004 | ●64 | ORDER finding as moot 30 Motion for Extension of Time to File as to Neal Armstrong (1). Signed by Judge Charles S. Coody on 7/23/04. (ekl, ) (Entered: 07/23/2004) |
| 07/24/2004 | ●65 | REPLY TO RESPONSE to Motion by Neal Armstrong re 59 MOTION for Bill of Particulars *Objections to Magistrate's Order* (Willie, Joseph) (Entered: 07/24/2004) |
| 07/27/2004 | ●66 | ORDER that upon consideration of Defendant's Objections to the Order of the Chief Magistrate Judge Denying the Motion for Bill of Particulars and Request for De Novo Review (Doc. #65), filed on July 24, 2004, it is ORDERED that the United States shall show cause, if any there be, on or before August 3, 2004, why the Objections should not be sustained. The objections will be taken under submission on that day for determination without oral hearing. Signed by Judge W. Harold Albritton III on 7/27/04. (kcg, ) (Entered: 07/27/2004) |
| 07/28/2004 | ●67 | REPLY TO RESPONSE to Motion by Neal Armstrong re 41 MOTION to Dismiss for Lack of Jurisdiction (Willie, Joseph) (Entered: 07/28/2004) |
| 07/29/2004 | ●68 | RESPONSE to Motion by USA as to Neal Armstrong re 59 MOTION for Bill of Particulars *65Defendant's Objections to Order of Chief Magistrate Denying the Motion for Bill of Particulars and Request for de novo Review and re: Court's July 27, 2004 Order* (Brown, Todd) (Entered: 07/29/2004) |
| 08/03/2004 | ●69 | CJA 20 as to Neal Armstrong : Authorization to Pay Richard Keith. Amount: $ 1,945.05, Voucher # 040707000182. Signed by Judge W. Harold Albritton III on 7/8/04. (ws) (Entered: 08/03/2004) |
| 08/06/2004 | ●70 | REPORT AND RECOMMENDATIONS as to Neal Armstrong re 41 MOTION to Dismiss for Lack of Jurisdiction Objections to R&R due by 8/19/2004. Signed by Judge Charles S. Coody on 8/6/04. (ekl, ) (Entered: 08/06/2004) |
| 08/19/2004 | ●71 | Minute Entry for proceedings held before Judge Charles S. Coody :Pretrial Conference as to Neal Armstrong held on 8/19/2004 (Tape #FTR: 3:31 - 3:32.) (ws ) (Entered: 08/19/2004) |
| 08/19/2004 | ●73 | OBJECTION TO REPORT AND RECOMMENDATIONS 70 by Neal Armstrong (Willie, Joseph) (Entered: 08/19/2004) |
| 08/23/2004 | ●74 | ORDER as to Neal Armstrong ADOPTING 70 Report and Recommendations, re 41 MOTION to Dismiss for Lack of Jurisdiction filed by Neal Armstrong, Motion DENIED and terminated . Signed by Judge W. Harold Albritton III on 8/23/04. (ekl, ) (Entered: 08/23/2004) |

| 08/23/2004 | ◉75 | ORDER as to Neal Armstrong re 65 Objection to the Chief Magistrate Judge Denying the Motion for bill of Particulars and Request for De Novo Review filed by Neal Armstrong. Objections OVERRULED and Motion for Bill of Particulars is DENIED. Signed by Judge W. Harold Albritton III on 8/23/04. (ekl, ) (Entered: 08/23/2004) |
|---|---|---|
| 10/17/2004 | ◉83 | NOTICE TO RETAINED CRIMINAL DEFENSE ATTORNEY as to Neal Armstrong (ekl, ) (Entered: 10/17/2004) |
| 10/17/2004 | ◉84 | Trial NOTICE (with attachments) as to Neal Armstrong (ekl, ) (Entered: 10/17/2004) |
| 10/18/2004 | ◉85 | Proposed Voir Dire by USA as to Neal Armstrong (Brown, Todd) (Entered: 10/18/2004) |
| 10/18/2004 | ◉86 | Proposed Jury Instructions by USA as to Neal Armstrong (Brown, Todd) (Entered: 10/18/2004) |
| 10/20/2004 | ◉87 | MOTION for handwriting samples, handprints, and fingerprints by USA as to Neal Armstrong. (ekl, ) (Entered: 10/20/2004) |
| 10/22/2004 | ◉88 | NOTICE OF ATTORNEY APPEARANCE Susan R. Redmond appearing for USA. (Redmond, Susan) (Entered: 10/22/2004) |
| 10/22/2004 | ◉89 | Proposed Voir Dire by Neal Armstrong (Willie, Joseph) (Entered: 10/22/2004) |
| 10/22/2004 | ◉90 | Proposed Jury Instructions by Neal Armstrong (Willie, Joseph) (Entered: 10/22/2004) |
| 10/25/2004 | ◉ | VOIR DIRE BEGUN before Judge W. Harold Albritton on 10/25/2004 Neal Armstrong (1) on Count 1,2,3,4 (Court Reporter Risa Entrekin.) (ekl, ) (Entered: 10/26/2004) |
| 10/25/2004 | ◉91 | Minute Entry for proceedings held before Judge W. Harold Albritton III:JURY SELECTION as to Neal Armstrong held on 10/25/2004. Trial SET for 11/1/04 at 9:00 a.m. (Court Reporter Risa Entrekin.) (ekl, ) (Entered: 10/26/2004) |
| 10/27/2004 | ◉92 | RESPONSE to Motion by Neal Armstrong re 87 MOTION for handwriting samples, handprints, and fingerprints (Willie, Joseph) (Entered: 10/27/2004) |
| 10/28/2004 | ◉93 | MOTION for Release from Custody *Wallace Pickett to agents* by USA as to Neal Armstrong. (Attachments: # 1 Text of Proposed Order)(Brown, Todd) (Entered: 10/28/2004) |
| 10/28/2004 | ◉94 | ORDER granting 93 Motion to Release Custody of Wallace Pickett to Special Agents (as set out in order) as to Neal Armstrong (1). Signed by Judge Charles S. Coody on 10/28/04. (ekl, ) (Entered: 10/28/2004) |
| 10/28/2004 | ◉95 | Minute Entry for proceedings held before Judge Charles S. Coody :Motion Hearing as to Neal Armstrong held on 10/28/2004 re 87 MOTION for handwriting samples, handprints, and fingerprints filed by |

| | | USA (Recording Time FTR: 1:30 - 1:38.) (ws) (Entered: 10/28/2004) |
|---|---|---|
| 10/28/2004 | ● | ORAL ORDER denying 87 Motion for Handwriting Samples, Handprints and Fingerprints as to Neal Armstrong (1). Signed by Judge Charles S. Coody on 10/28/04. (ws) (Entered: 10/28/2004) |
| 11/01/2004 | ● | ORAL MOTION to Dismiss Count 3 of the Indictment by USA as to Neal Armstrong. (ekl, ). (Entered: 11/03/2004) |
| 11/01/2004 | ● | ORAL ORDER OF DISMISSAL OF COUNTS on Government's Oral Motion. Neal Armstrong (1) Dismissed Count 3. By Judge W. Harold Albritton III (at side bar) in open court on 11/1/04. (ekl, ) (Entered: 11/03/2004) |
| 11/02/2004 | ●96 | Court's Jury Charge as to Neal Armstrong (Willie, Joseph) (Entered: 11/02/2004) |
| 11/02/2004 | ●97 | MOTION for Directed Verdict of Acquittal and Memorandum of Law by Neal Armstrong. (ekl, ) (Entered: 11/02/2004) |
| 11/02/2004 | ● | ORAL ORDER denying 97 Motion for Directed Verdict as to Neal Armstrong (1). By Judge W. Harold Albritton III on 11/2/04 in open court. (ekl, ) (Entered: 11/03/2004) |
| 11/02/2004 | ●98 | REDACTED Indictment by USA as to Neal Armstrong (ekl, ) (Entered: 11/03/2004) |
| 11/02/2004 | ●99 | Court's Jury Charge as to Neal Armstrong (ekl, ) (Entered: 11/03/2004) |
| 11/03/2004 | ●100 | Note from the Jury as to Neal Armstrong (ekl, ) (Entered: 11/03/2004) |
| 11/03/2004 | ●101 | JURY VERDICT as to Neal Armstrong (1) Guilty on Count 4. (ekl, ) (Entered: 11/03/2004) |
| 11/03/2004 | ● | ORAL DECLARATION OF MISTRIAL as to Neal Armstrong (1) Count 1,2 Neal Armstrong (1) on Count 1,2. By Judge W. Harold Albritton III on 11/3/04. (ekl, ) (Entered: 11/03/2004) |
| 11/03/2004 | ● | ORAL MOTION to Dismiss Counts 1 and 2 of the Indictment by USA as to Neal Armstrong. (ekl, ) (Entered: 11/03/2004) |
| 11/03/2004 | ● | ORAL ORDER OF DISMISSAL OF COUNTS on Government Motion. Neal Armstrong (1) Dismissed counts Count 1,2. By Judge W. Harold Albritton III on 11/3/04 in open court. (ekl, ) (Entered: 11/03/2004) |
| 11/03/2004 | ●102 | Minute Entry for proceedings (witness list and exhibit list) held before Judge W. Harold Albritton III:Jury Trial as to Neal Armstrong held on Nov. 1,2,3, 2004. [EXHIBITS IN BOX IN EXHIBIT ROOM. DRUG EXHIBIT RETURNED TO USA.] (Court Reporter Risa Entrekin.) (ekl, ) (Entered: 11/03/2004) |
| 11/05/2004 | ●106 | ORDER as to Neal Armstrong Sentencing set for 1/24/2005 09:00 AM in Courtroom 2C before Honorable W. Harold Albritton III. Any objections to the PSR are due in writing to the PO 1/4/05. Unless excused in writing, |

| | | |
|---|---|---|
| | | parties shall be available for a conference with the PO 1/6/05 at 9:00 am. Signed by Judge W. Harold Albritton III on 11/5/04. (ekl, ) (Entered: 11/08/2004) |
| 11/06/2004 | ❍105 | MOTION for Acquittal by Neal Armstrong. (Willie, Joseph) (Entered: 11/06/2004) |
| 11/08/2004 | ❍107 | MOTION Substitute Original Exhibits with Copies by USA as to Neal Armstrong. [COPIES OF EXHIBITS IN SEPARATE ENVELOPE] (ekl, ) (Entered: 11/09/2004) |
| 11/10/2004 | ❍108 | ORDER denying 105 Motion for Acquittal as to Neal Armstrong (1). Signed by Judge W. Harold Albritton III on 11/10/04. (ekl, ) (Entered: 11/10/2004) |
| 11/10/2004 | | ***Motion terminated as to Neal Armstrong, : Oral MOTION to Dismiss by USA in open court. (ekl, ) (Entered: 11/10/2004) |
| 11/10/2004 | ❍109 | ORDER as to Neal Armstrong re 107 MOTION Substitute Original Exhibits filed by USA, Motion GRANTED and terminated. Signed by Judge W. Harold Albritton III on 11/10/04. (ekl, ) (Entered: 11/10/2004) |
| 11/10/2004 | ❍110 | MOTION for Reconsideration by Neal Armstrong. (Willie, Joseph) (Entered: 11/10/2004) |
| 11/16/2004 | ❍111 | ORDER denying defendant's 110 Motion for Reconsideration as to Neal Armstrong (1). Signed by Judge W. Harold Albritton III on 11/16/04. (ekl, ) (Entered: 11/16/2004) |
| 12/06/2004 | ❍112 | Supplemental MOTION for Acquittal by Neal Armstrong. (Willie, Joseph) (Entered: 12/06/2004) |
| 12/17/2004 | ❍113 | ORDER denying 112 Motion for Judgment of Acquittal as to Neal Armstrong (1). Signed by Judge W. Harold Albritton III on 12/17/04. (ekl, ) (Entered: 12/17/2004) |
| 12/30/2004 | ❍114 | MOTION to Continue *Sentencing* by USA as to Neal Armstrong, Roderick Perkins. (Redmond, Susan) (Entered: 12/30/2004) |
| 01/11/2005 | ❍115 | ORDER as to Neal Armstrong, Roderick Perkins granting 114 MOTION to Continue filed by USA; Motions terminated as to Neal Armstrong, Roderick Perkins, granting 114 MOTION to Continue *Sentencing* filed by USA; Sentencing reset for 2/23/2005 01:00 PM in Courtroom 2C before Honorable W. Harold Albritton III.. Signed by Judge W. Harold Albritton III on 1/11/05. (ws ) (Entered: 01/11/2005) |
| 01/12/2005 | ❍116 | MOTION to Vacate *Order Continuing Sentencing Hearing* by Neal Armstrong. (Willie, Joseph) (Entered: 01/12/2005) |
| 01/14/2005 | ❍117 | ORDER denying 116 Motion to Vacate Order Continuing Sentencing Hearing and further Reconsiderationof Defendant's Motion for Judgment of Acquittal as to Neal Armstrong (1); the defendant is DIRECTED to file a brief directed to the applicatopm pf tje Supreme Court's decision in USA |

| | | |
|---|---|---|
| | | v. Booker and USA v. Fanfan on or before 1/28/05 and United States is DIRECTED to file a brief to those issues on or before 2/11/05. Signed by Judge W. Harold Albritton III on 1/14/05. (ws ) (Entered: 01/14/2005) |
| 01/28/2005 | ◔118 | BRIEF/RESPONSE in Support by Neal Armstrong re 105 MOTION for Acquittal, 116 MOTION to Vacate *Order Continuing Sentencing Hearing*, 110 MOTION for Reconsideration, MOTION to Dismiss, 112 Supplemental MOTION for Acquittal, 97 MOTION for Directed Verdict, MOTION to Dismiss *As to the Applicability of Booker Concerning the Sentencing of the Defendant* (Willie, Joseph) (Entered: 01/28/2005) |
| 02/11/2005 | ◔119 | SENTENCING MEMORANDUM by USA as to Neal Armstrong (Redmond, Susan) (Entered: 02/11/2005) |
| 02/22/2005 | ◔122 | SENTENCING MEMORANDUM by Neal Armstrong (Willie, Joseph) (Entered: 02/22/2005) |
| 02/23/2005 | ◔125 | Minute Entry for proceedings held before Judge W. Harold Albritton III:Sentencing held on 2/23/2005 as to Neal Armstrong for Neal Armstrong (1) (Court Reporter Risa L. Entrekin.) (Attachments: # 1 Witness List) (kcg, ) (Entered: 02/25/2005) |
| 02/24/2005 | ◔124 | NOTICE OF APPEAL by Neal Armstrong (Willie, Joseph) to the United States Court of Appeals Eleventh Circuit Modified on 5/25/2005 to reflect that he is Appealing the 126 judgment (ydw, ). (Entered: 02/24/2005) |
| 02/25/2005 | ◔126 | JUDGMENT as to Neal Armstrong (1), Count(s) 1, DISMISSED ON ORAL MOTION OF U.S. ATTORNEY (following trial); Count(s) 2, DISMISSED ON ORAL MOTION OF U.S. ATTORNEY (following trial); Count(s) 3, DISMISSED ON ORAL MOTION OF U.S. ATTORNEY; Count(s) 4, 109 Mos Imp; 3 Yrs Sup Rel; $100 SA . Signed by Judge W. Harold Albritton III on 2/25/05. (kcg, ) (Entered: 02/25/2005) |
| 02/25/2005 | | ***Case Terminated as to Neal Armstrong, Roderick Perkins (kcg, ) (Entered: 03/07/2005) |
| 05/25/2005 | ◔ | Transmission of Notice of Appeal and Certified Copy of Docket Sheet and Judgment as to Neal Armstrong to US Court of Appeals re 124 Notice of Appeal - Final Judgment (ydw, ) (Entered: 05/25/2005) |
| 05/31/2005 | ◔ | USCA Case Number as to Neal Armstrong 05-12959-H for 124 Notice of Appeal - Final Judgment filed by Neal Armstrong. (ydw, ) (Entered: 05/31/2005) |
| 06/02/2005 | ◔129 | Receive TRANSCRIPT Order Information Sheet re 124 Notice of Appeal - Final Judgment from Joseph R. Willie counsel for Neal Armstrong, with following notation: " I Am Ordering a Transcript of the Following Proceedings: Trial proceedings held on 11/1-3/04 before Judge W. Harold Albritton, Risa L. Entrekin C/R. and Sentencing held 2/23/04, before Judge W. Harold Albritton, Risa L. Entrekin C/R. Copy to RE/CR (ydw, ) (Entered: 06/02/2005) |

| 06/16/2005 | | TRANSCRIPT (Volume I) filed as to Neal Armstrong for dates of 11/1/04 for Jury Trial Proceedings before Judge W. Harold Albritton, re 05-12959-H, 124 Notice of Appeal - Final Judgment Court Reporter: Risa Entrekin. (ydw, ) (Entered: 06/17/2005) |
| --- | --- | --- |
| 06/16/2005 | | TRANSCRIPT (Volume II) filed as to Neal Armstrong for dates of 11/2/04 of Jury Trial proceeding before Judge W. Harold Albritton, re 05-12959-, 124 Notice of Appeal - Final Judgment Court Reporter: Risa Entrekin. (ydw, ) (Entered: 06/17/2005) |
| 06/16/2005 | | TRANSCRIPT (VOLUME III) filed as to Neal Armstrong for dates of 11/03/04 Jury Trial before Judge W. Harold Albritton, re 05-12959-H, 124 Notice of Appeal - Final Judgment Court Reporter: Risa Entrekin. (ydw, ) (Entered: 06/17/2005) |
| 06/16/2005 | | TRANSCRIPT filed as to Neal Armstrong for dates of 02/23/05 Sentencing before Judge W. Harold Albritton, re 05-12959-H, 124 Notice of Appeal - Final Judgment Court Reporter: Risa Entrekin. (ydw, ) (Entered: 06/17/2005) |
| 06/28/2005 | | USCA Appeal Fees received $ 255.00, receipt number 106816 as to Neal Armstrong re 124 Notice of Appeal - Final Judgment: (cc, ) (Entered: 06/28/2005) |
| 07/06/2005 | | Certificate of Readiness to US Court of Appeals re 05-12959-H, 124 Notice of Appeal - Final Judgment (ydw, ) (Entered: 07/06/2005) |
| 07/08/2005 | | Payment Received from BOP: as to Neal Armstrong $ 100.00 assessment payment, receipt number 106918 (ws, ) (Entered: 07/27/2005) |
| 10/07/2005 | | Request for Record on Appeal By USCA Eleventh Circuit re: 05-12959-HH, 124 NOTICE OF APPEAL (ydw, ) (Entered: 10/07/2005) |
| 10/07/2005 | | Certified and Transmitted Record on Appeal as to Neal Armstrong to US Court of Appeals re 05-12959-HH, 124 Notice of Appeal - Final Judgment (ydw, ) (Entered: 10/07/2005) |
| 10/17/2005 | | Acknowledgement of Receipt of Record on Appeal from USCA re 05-12959-H, 124 Notice of Appeal - Final Judgment (ydw, ) (Entered: 10/18/2005) |
| 03/17/2006 | 132 | Per Curiam Opinion received from USCA Eleventh Circuit of Opinion Entered on 1/31/06; AFFIRMED (ydw, ) (Entered: 03/17/2006) |
| 03/17/2006 | 133 | JUDGMENT ISSUED AS MANDATE 1/31/06 of USCA (certified copy) as to Neal Armstrong re 124 Notice of Appeal - Final Judgment; AFFIRMING the District Court's decision. (ydw, ) (Entered: 03/17/2006) |
| 03/17/2006 | | Appeal Record Returned as to Neal Armstrong: 05-12959-HH, 124 Notice of Appeal - Final Judgment (ydw, ) Modified on 3/17/2006 to reflect that the PSI was returned to USPO (ydw, ). (Entered: 03/17/2006) |

| 08/10/2006 | 141 | Judgment Returned Executed as to Neal Armstrong on 5/18/05. (ws, ) (Entered: 08/10/2006) |
| 10/16/2006 | | RECEIVED LETTER FROM USCA RE: 05-12959-HH, 124 Notice of Appeal as to Neal Armstrong: The the Supreme Court has denied certiorari. The court's mandate having previously issued, no further action will be taken by this court. (ydw, ) (Entered: 10/17/2006) |

✎AO 245B    (Rev. 12/03) Judgment in a Criminal Case
            Sheet 1

# UNITED STATES DISTRICT COURT

MIDDLE                                  District of                          ALABAMA

UNITED STATES OF AMERICA
V.                                      ## JUDGMENT IN A CRIMINAL CASE
**NEAL ROMAN ARMSTRONG a/k/a
NEIL ARMSTRONG**
                                        Case Number:              2:04cr084-A

                                        USM Number:               07406-094

                                        Joseph R. Willie, II
                                        Defendant's Attorney

## THE DEFENDANT:

☐ pleaded guilty to count(s)

☐ pleaded nolo contendere to count(s)
  which was accepted by the court.

X was found guilty on count(s)    4 of the Indictment by a jury on November 3, 2004
  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC 1956(h) | Conspiracy to Launder Monetary Instruments | 5/12/04 | 4 |

The defendant is sentenced as provided in pages 2 through ___6___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

X Count(s)    1, 2 and 3              ☐ is   X are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

February 23, 2005
Date of Imposition of Judgment

_____
Signature of Judge

W. HAROLD ALBRITTON, SENIOR UNITED STATES DISTRICT JUDGE
Name and Title of Judge

Date  2/25/05

AO 245B    (Rev. 12/03) Judgment in Criminal Case
           Sheet 2 — Imprisonment

DEFENDANT:        NEAL ARMSTRONG                    Judgment — Page __2__ of __6__
CASE NUMBER:      2:04cr084-A

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

**109 months.**

☐ The court makes the following recommendations to the Bureau of Prisons:

**X** The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

   ☐ at _____ ☐ a.m. ☐ p.m. on _____ .

   ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐ before 2 p.m. on _____ .

   ☐ as notified by the United States Marshal.

   ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B    (Rev. 12/03) Judgment in a Criminal Case
Sheet 3 — Supervised Release

| | | |
|---|---|---|
| DEFENDANT: | NEAL ARMSTRONG | Judgment—Page __3__ of __6__ |
| CASE NUMBER: | 2:04cr084-A | |

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

**three (3) years.**

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

**X** The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

**X** The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B   (Rev. 12/03) Judgment in a Criminal Case
Case 2:04-cr-00084-WHA-CSC   Document 126   Filed 02/25/2005   Page 4 of 6
Sheet 3C — Supervised Release

| | |
|---|---|
| DEFENDANT: NEAL ARMSTRONG | Judgment—Page __4__ of __6__ |
| CASE NUMBER: 2:04cr-084-A | |

## SPECIAL CONDITIONS OF SUPERVISION

Defendant shall participate in drug testing and/or treatment if directed by the probation officer. Defendant shall contribute to the cost of any treatment based on ability to pay and availability of third party payments.

AO 245B (Rev. 12/03) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Case 2:04-cr-00084-WHA-CSC Document 126 Filed 02/25/2005 Page 5 of 6
Case 2:04-cr-00084-WHA-CSC Document 1-5 Filed 07/30/2007 Page 5 of 6

| DEFENDANT: | NEAL ARMSTRONG | Judgment — Page 5 of 6 |
|---|---|---|
| CASE NUMBER: | 2:04cr084-A | |

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| **TOTALS** | $ 100.00 | $ -0- | $ -0- |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|

| **TOTALS** | $ | $ | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the ☐ fine ☐ restitution.

☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 12/03) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Case 2:05-cv-00689-WHA-CSC   Document 1-5   Filed 07/30/2007   Page 6 of 6
Case 2:04-cr-00084-WHA-CSC   Document 126   Filed 02/25/2005   Page 6 of 6

DEFENDANT: NEAL ARMSTRONG
CASE NUMBER: 2:04cr084-A

Judgment — Page ___6___ of ___6___

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A  **X**  Lump sum payment of $ __100.00__ due immediately, balance due

☐ not later than _____ , or
**X** in accordance  ☐ C,  ☐ D,  ☐ E, or  **X** F below; or

B  ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

C  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  **X**  Special instructions regarding the payment of criminal monetary penalties:
Payment shall be made to the Clerk, U.S. District Court, P. O. Box 711, Montgomery, AL 36101.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.