# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **NEAL ARMSTRONG** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 2:07cv689-WHA-CSC** |
| | ) | **(2:04-CR-84-WHA)** |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |

## UNITED STATES' RESPONSE TO § 2255 MOTION

Comes now the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and, in compliance with this Court's order, responds to Defendant/Movant Neal Armstrong's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, Or Correct Sentence By a Person In Federal Custody, as follows:

## I.     PROCEDURAL HISTORY AND RELEVANT FACTS

On May 5, 2004, a grand jury for the Middle District of Alabama returned a four-count indictment against Neal Armstrong, (hereinafter "Armstrong") and Roderick Perkins, (hereinafter "Perkins"). (R1:1.) Count 1 of the indictment charged that, from an unknown date and continuing to and including May, 2003, the exact dates being unknown to the grand jury, in Montgomery County, Alabama, within the Middle District of Alabama, the defendants did knowingly and willfully combine, conspire, confederate and agree together, with Wallace Pickett, and with other persons known and unknown to the grand jury to knowingly and intentionally distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine hydrochloride, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846.

Count 2 of the indictment charged that, on or about May 12, 2003, in Montgomery County, Alabama, within the Middle District of Alabama, the defendants did knowingly and intentionally,

aiding and abetting one another, distribute cocaine hydrochloride, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Count 3 of the indictment charged that, on or about May 12, 2003, in Montgomery County, Alabama, within the Middle District of Alabama, the defendants did knowingly cause to be delivered by mail a package addressed to Corey Smith, 2945 Thrasher Street, Montgomery, Alabama, containing poisonous drugs, to-wit: cocaine hydrochloride, which is nonmailable and not authorized to be mailed by the rules and regulations of the Postal Service, in violation of 18 U.S.C. § 1716(j)(1).

Count 4 of the indictment charged that, from an unknown date, but commencing at least as early as the month of April, 2003, and continuing up to and including the month of May, 2003, the defendants did knowingly and willfully combine, conspire, and confederate with each other, Wallace Pickett, and with other persons, known and unknown to the grand jury, to knowingly conduct, attempt to conduct, and cause to be conducted, financial transactions affecting interstate commerce, to wit: the mailing of United States Postal money orders, using the proceeds of a specified unlawful activity, to-wit: conspiracy to distribute and possess with intent to distribute a controlled substance, and distribution of a controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1), as charged in Counts 1 and 2, with the intent to promote the carrying on of a specified unlawful activity, all in violation of 18 U.S.C. § 1956(h).

Armstrong proceeded to trial on November 1, 2004. The United States voluntarily dismissed Count 3 of the indictment at the outset of the trial. At the close of the government's case, Armstrong requested a directed verdict pursuant to Fed.R.Crim.P. 29 as to Count 4, which the District Court denied. On November 3, 2004, he was convicted only on Count 4, as the jury could not reach a unanimous decision as to Counts 1 and 2. The United States moved the District Court to dismiss Counts 1 and 2, and the motion was granted.

On November 6, 2004, Armstrong filed a motion for judgment of acquittal. The District Court issued a written order which contained the legal basis for its denial of the motion on November

10, 2004. Armstrong filed a motion for reconsideration and a supplemental motion for acquittal. The District Court denied both motions.

On February 23, 2005, Armstrong was sentenced to serve 109 months in prison. The District Court entered a final judgment of conviction and sentence in his case on February 25, 2005.

Armstrong filed a timely notice of appeal on February 24, 2005.

Armstrong filed his appellate brief on September 1, 2005. Attachment "A".

On October 4, 2005, the United States filed its response brief to Armstrong's appeal. Attachment "B".

On March 1, 2006, the Eleventh Circuit Court of Appeals issued as mandate its judgment denying Armstrong's appeal and affirmed his conviction and sentence. Attachment "C".

On May 1, 2006, Armstrong filed a Petition for a Writ of Certiorari to the United States Supreme Court of Appeals for the Eleventh Circuit. Attachment "D".

On October 2, 2006, certiorari was denied. Attachment "E".

On July 26, 2007, Armstrong filed a motion for relief under 28 U.S.C. § 2255, Motion to Vacate, Set Aside or Correct Sentence. On July 31, 2007, this Court entered an order directing the United States to respond within thirty days. The United States now files this response to the § 2255 motion.

## II.  CLAIMS RAISED IN THE § 2255 MOTION

As far as the United States can discern, Armstrong raises the following issues in his § 2255 motion:

1.  Armstrong is being held in violation of the Constitution and laws of the United States because the facts presented at trial do not establish the elements of the charge of conviction, money laundering pursuant to Title 18, United States Code, Section 1956(h) and 1956(a)(1)(A)(I) but, instead, only establish that payments for illegal drugs were made;

2.  The District Court erred in finding that Armstrong willfully obstructed justice;

3.  Counsel was ineffective for not properly attacking the charge of conviction;

3

4.      Counsel was ineffective for not properly attacking the obstruction of justice enhancement at sentencing; and

5.      Counsel was ineffective for failing to properly communicate with Armstrong regarding the issues to be raised on appeal and by failing to provide Armstrong a copy of the appellant and appellee brief.

### III.  RESPONSE TO CLAIMS FOR RELIEF

**A.**     **Armstrong Has Met The One-Year Statute Of Limitations Deadline For The Filing of Claims Under 28 U.S.C. § 2255.**

The United States notes at the outset that Armstrong has filed his motion in a timely manner under paragraph six of 28 U.S.C. § 2255, which provides a one-year period of time to file a motion to vacate, set aside, or correct sentence under the rule.  The applicable provision in this case requires that a movant file his § 2255 motion within one year from "the date on which the judgment of conviction became final."

The judgment against Armstrong was entered by the District Court on February 25, 2005. Armstrong timely filed his notice of appeal and filed his appeal on September 1, 2005. The Eleventh Circuit Court of Appeals issued its mandate on March 1, 2006.  Armstrong timely filed his notice of certiorari and filed his petition for writ of certiorari on May 1, 2006. Certiorari was denied on October 2, 2006. Although not specifically addressing the application of the statute of limitations to the 10-day notice of appeal requirement, the Eleventh Circuit has held that a judgment of conviction becomes final for someone who appeals to an appellate court when the time for seeking certiorari review in the Supreme Court expires.  *See Kaufman v. United States,* 282 F.3d 1336, 1337-39 (11th Cir.2002). Likewise, a judgment of conviction becomes final for someone who does seek certiorari review in the Supreme Court, when said petition is denied. Armstrong's judgment of sentence, therefore, became final on October 2, 2006.  Thus, under § 2255, Armstrong had until October 2, 2007, to file his motion.  Therefore, Armstrong's filing of his § 2255 motion prior to October 2, 2007, renders it timely.

4

**B.**  **This Court Should Dismiss All of Armstrong's Claims, Except For His Claims Of Ineffective Assistance Of Counsel, Because All Of Those Claims Are Procedurally Defaulted Because They Were Either Raised On Direct Appeal, Or They Could Have Been Raised On Direct Appeal, But Were Not.**

Armstrong is not entitled to relief on those claims that he did not raise at or prior to trial, conviction and sentencing, but could have.  His appeal to the Eleventh Circuit addressed two of the issues listed above - the legal and factual insufficiency of the evidence and arguments presented against him at trial and sentencing - and the district court's finding that Armstrong willfully obstructed justice - the Eleventh Circuit affirmed the district court's action, and the United States Supreme Court denied certiorari.

A motion under § 2255 cannot be used as a substitute for appeal, *Burke v. United States*, 152 F.3d 1329, 1331 (11th Cir. 1998), and claims not raised at trial or on direct appeal that could have been are generally barred from review in § 2255 proceedings, *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001), *cert. denied*, 122 S.Ct. 2362 (2002).  In *Mills v. United States*, 36 F.3d 1052 (11th Cir. 1994), the Eleventh Circuit succinctly summarized the law concerning procedural default as follows:

> Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding....  A ground of error is usually "available" on direct appeal when its merits can be reviewed without further factual development....  When a defendant fails to pursue an available claim on direct appeal, it will not be considered in a motion for § 2255 relief unless he can establish cause for the default and actual prejudice resulting from the alleged error....  Alternatively, under the fundamental miscarriage of justice exception, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."...

*Id*. at 1055-56 (internal citations omitted).  *See also*, *McCoy v. United States, 266 F. 3d at 1258* ("A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish cause and prejudice for his failure to assert his claims on direct appeal.").  The burden of demonstrating cause and prejudice or a miscarriage of justice is on the movant.  *See, e.g., Bousley v. United States*, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise

5

it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,'...or that he is 'actually innocent[.]'").

In this case Armstrong has clearly defaulted his claims that do not relate to ineffective assistance of counsel, and he has not alleged any cause and prejudice, or actual innocence, to overcome these procedural defaults. Therefore, those claims for relief should be rejected.

As was noted above, Armstrong filed an appeal to the Eleventh Circuit Court of Appeals and filed a Petition for Writ of Certiorari Review with the United States Supreme Court, challenging his conviction and sentence. In the brief filed by Armstrong, one issue was identified, and is raised again by Armstrong in his pro se § 2255 motion. Another issue, though not directly raised by Armstrong on appeal, was nonetheless discussed and dismissed by the Court. Those issues are the following:

> 1. Armstrong is being held in violation of the Constitution and laws of the United States because the facts presented at trial do not establish the elements of the charge of conviction, money laundering pursuant to Title 18, United States Code, Section 1956(a)(1)(A)(I) but, instead, only establish that payments for illegal drugs were made.
>
> 2. The District Court erred in finding that Armstrong willfully obstructed justice.

The Eleventh Circuit addressed these issues and found them to be without merit and the Supreme Court effectively concurred in that decision by refusing certiorari. See Attachments C, D, and E. Armstrong has already litigated these issues and they are not, therefore, properly before this Court in this § 2255 proceeding. As the former Fifth Circuit held, a district court need not "conduct a hearing and relitigate issues that were raised by the petitioner in his direct appeal." *Kastenbaum v. United States*, 588 F.2d 138, 139 (1979).

## C.     Armstrong's Non-Ineffective Assistance of Counsel Claims Are Without Merit, Even If They Were Not Procedurally Defaulted.

As was demonstrated in part III. B, above, Armstrong's various claims that the Court acted improperly in convicting and sentencing him are procedurally defaulted and not properly before this Court in this § 2255 proceeding. However, even if they were properly before this Court, they are without any merit and should be rejected for that reason, as well.

**1.  Armstrong is being held in violation of the Constitution and laws of the United States because the facts presented at trial do not establish the elements of the charge of conviction, money laundering pursuant to Title 18, United States Code, Section 1956(a)(1)(A)(I) but, instead, only establish that payments for illegal drugs were made.**

Armstrong asserts that the facts established at trial did not establish the elements of the crime of conviction. He bases his assertion on "... the issues presented...in his petition for writ of certiorari.", to-wit: that Armstrong should have been acquitted due to the fact that the government dismissed the substantive charges in counts 1 and 2 of the indictment and that as a matter of law, there can be no conspiracy to commit money laundering where no substantive offense related to any alleged conspiracy to commit money laundering has been found by a trier of fact. *Armstrong v. United States*, 2006 WL 1530523.

Armstrong is misguided, as the Eleventh Circuit pointed out to him in it's Judgment. See Attachment "C" at 7-8, stating, "Contrary to Armstrong's argument, "[a defendant's] personal involvement in, or guilt of, the [underlying drug activity] is not an element of the money laundering charge he was convicted of in this case." *United States v. Magluta*, 418 F.3d 1166, 1174 (11th Cir. 2005). The government did not need to prove Armstrong's personal involvement in drug activities, but rather only that Armstrong, "with the requisite knowledge and intent, conducted a financial transaction involving the proceeds of felony drug offenses.""

Based upon circuit law, the district court did not err in upholding the findings of the jury and, therefore, this issue is without merit.

**2.  The district court erred in finding that Armstrong willfully obstructed justice.**

Armstrong also contends that the district court erred in enhancing his sentence based on a finding that Armstrong willfully obstructed justice, a fact not found by the jury, in violation of *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005).

Armstrong is again misguided as the Eleventh Circuit stated to him in its Judgment. "C" at 4-5, 8. The district court correctly used extra-verdict enhancements, established by a preponderance of evidence, in its non-mandatory guideline calculation. The district court correctly calculated the

appropriate offense level and criminal history calculation and properly applied the calculated Guideline range in an advisory fashion.

Based upon circuit law, the district court did not err in its finding that Armstrong obstructed justice, nor in its calculation and application of the appropriate advisory sentencing guideline range and, therefore, this issue is without merit.

## D.    Armstrong's Ineffective Assistance of Counsel Claims Should Be Rejected Because They Are Without Any Merit.

Finally, Armstrong alleges his counsel was ineffective for three different reasons: (1) for not properly attacking the charge of conviction; (2) for not properly attacking the obstruction of justice enhancement at sentencing; and (3) for failing to properly communicate with Armstrong regarding the issues to be raised on appeal and by failing to provide Armstrong a copy of the appellant and appellee brief.  As is demonstrated below, Armstrong was not denied the effective assistance of counsel as he claims.

To succeed on a claim of ineffective assistance of counsel, a defendant must prove both that his counsel's performance was deficient and that deficient performance prejudiced his case. *Strickland v. Washington,* 466 U.S. 668 (1984); *See also*, *Bell v. Cone,* 122 S. Ct. 1843 (2002) (Supreme Court reaffirming the *Strickland v. Washington* standard for reviewing ineffective assistance of counsel claims); *Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) (Eleventh Circuit applying two-part test of *Strickland v. Washington*), *cert. denied,*122 S. Ct. 1185 (2002).  More specifically, Barnes must show that (1) identified acts or omissions of counsel fell below an objective standard of reasonableness, and (2) that his counsel's alleged errors or omissions resulted in prejudice to him to such an extent that, without counsel's alleged errors or omissions, there is a reasonable probability that the outcome of his trial would have been different.  *Yordan v. Dugger,* 909 F.2d 474, 477 (11th Cir. 1990).

In analyzing counsel performance under the performance prong of *Strickland*, this Court must presume that the conduct of counsel was reasonable, *Yordan v. Dugger,* 909 F.2d at 477.  A

8

"[d]efendant must prove deficient performance by a preponderance of competent evidence, and the standard is 'reasonableness under prevailing professional norms.'" *Gallo-Chamorro v. United States*, 233 F.3d 1298, 1303-04 (11th Cir. 2000)(footnotes omitted).  The Eleventh Circuit has described a defendant's burden with regard to the deficient performance prong of an ineffective assistance of counsel claim as follows:

> Because there is such a wide range of constitutionally acceptable performance, a petitioner seeking to rebut the presumption of adequate performance must bear a heavy burden:
>
> > The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. ...  We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.
> >
> > ... Thus, in order to show that counsel's performance was unreasonable, the petitioner must establish that *no competent counsel would have take the action that his counsel did take....*

*Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (some internal citations omitted).

The Eleventh Circuit has described a defendant's burden in demonstrating that his counsel's deficient performance prejudiced his case as "high", noting that it is not enough to show that any errors had some conceivable effect on the outcome of the proceeding.  *Robinson v. Moore*, 300 F.3d 1320, 1343-44 (11th Cir. 2002).  To succeed on the ineffective assistance of counsel claim, the defendant must show that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different.  In the guilty plea context, to satisfy the prejudice requirement, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *United States v. Pease*, 240 F.3d 938, 941 (11th Cir.)(*citing Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)), *cert. denied*, 122 S. Ct. 381 (2001).

Finally, "[i]t is well established that a habeas petitioner must demonstrate both deficient performance and prejudice, and that a failure to demonstrate either prong constitutes a failure to

9

demonstrate ineffective assistance of counsel." *Bottoson v. Moore*, 234 F.3d 526, 532 (11th Cir. 2000); *accord, Robinson v. Moore*, 300 F.3d at 1343.

As to each of his claims of ineffective assistance of counsel, Armstrong has failed to plead facts sufficient to demonstrate that he was prejudiced by any of counsel's actions. For that reason, his § 2255 motion should be summarily dismissed.

Further, Joseph R. Willie, II, D.D.S., J.D., trial and appellate counsel for Armstrong, has filed an affidavit with the Court in which he refutes all of Armstrong's claim of ineffectiveness. See Attachment "F". Specifically, Mr. Willie states that he raised the issues contained in Armstrong's first two grounds for relief, explains that trial strategy was engaged in not cross-examining a government witness at sentencing and refutes Armstrong's contention that counsel failed to communicate with him.

In light of Armstrong's failure to plead facts sufficient to demonstrate prejudice and counsel's sworn statement to the contrary, Armstrong's claims of ineffective assistance of counsel should be summarily dismissed.

## IV. A HEARING IS NOT APPROPRIATE IN THIS MATTER

Armstrong has not pleaded facts or presented sufficient evidence or argument which, if true, show that he is entitled to an evidentiary hearing, and his claims for relief should be denied without an evidentiary hearing. *See Blacklidge v. Allison*, 431 U.S. 63, 73-74 (1977); *Tejada v. Dugger*, 941 U.S. 1551, 1559 (11th Cir. 1991); *United States v. Laetividal-Gonzalez*, 939 F. 2d 1455, 1465 (11th Cir. 1991). Should this Court determine that Armstrong has made any arguments not addressed in this response, or should the Court determine that it needs a more detailed response from Armstrong and so orders, the United States would request the opportunity to further respond to those arguments.

## V. CONCLUSION

For the above reasons, Defendant/Movant Neal Armstrong has failed to demonstrate that he is entitled to any relief from this Court, and his § 2255 motion should be denied without an evidentiary hearing.

10

Respectfully submitted this the 30th day of August, 2007.

                              LEURA G. CANARY
                              UNITED STATES ATTORNEY

                              /s/ Susan R. Redmond
                              SUSAN R. REDMOND
                              Assistant United States Attorney
                              Post Office Box 197
                              Montgomery, Alabama 36101-0197
                              (334) 223-7280     (334) 223-7138 fax
                              susan.redmond@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **NEAL ARMSTRONG** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 2:07cv689-WHA-CSC** |
| | ) | **(2:04-CR-84-WHA)** |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on August 30, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant: Neal Roman Armstrong, Federal Bureau of Prisons, FCI Yazoo City-Low, Yazoo City, MS 39194-5000.

Respectfully submitted,

s/ Susan R. Redmond
SUSAN R. REDMOND
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
(334) 223-7280     (334) 223-7138 fax
susan.redmond@usdoj.gov

12

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

No. 05-12959

NEAL ROMAN ARMSTRONG, SR.,

Defendant-Appellant,

vs.

UNITED STATES OF AMERICA,

Plaintiff-Appellee.

Appeal from the United States District Court
For the Middle District of Alabama
Northern Division

BRIEF OF APPELLANT

WILLIE & ASSOCIATES, P.C.

Joseph R. Willie, II, D.D.S., J.D.
4151 Southwest Freeway, Suite 490
Houston, Texas 77027
(713) 659-7330
(713) 599-1659 (FAX)
Federal Bar I.D. #13746
SBOT #21633500

ATTORNEY FOR APPELLANT
NEAL ROMAN ARMSTRONG, SR.



GOVERNMENT
EXHIBIT
A

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

No. 05-12959

NEAL ROMAN ARMSTRONG, SR.,

Defendant-Appellant,

vs.

UNITED STATES OF AMERICA,

Plaintiff-Appellee.

Appeal from the United States District Court
For the Middle District of Alabama
Northern Division

CERTIFICATE OF INTERESTED PERSONS

The undersigned certifies that the persons and entities listed below have an interest in the outcome of this case. This representation is made in order that the Judges of this Honorable Court may evaluate possible disqualification or recusal.

1.    Neal Roman Armstrong, Sr., the Defendant-Appellant.

2.    United States of America, the Plaintiff-Appellee.

3.    Joseph R. Willie, II, D.D.S., J.D., attorney for the Defendant-Appellant.

4.   Christine Sampson Willie, Esquire, attorney for the Defendant-Appellant.

5.   Louis V. Franklin, Sr., Esquire, Assistant United States Attorney at trial.

6.   Susan R. Redmond, Esquire, Assistant United States Attorney at trial.

7.   Willie & Associates, P.C., Dr. Willie's law firm.

8.   Christine M. Sampson, P.C., Attorney Christine Sampson Willie's law firm.

9.   Office of the United States Attorney, Middle District of Alabama.


WILLIE & ASSOCIATES, P.C.

By: _____
Joseph R. Willie, II, D.D.S., J.D.

ATTORNEY FOR APPELLANT
NEAL ROMAN ARMSTRONG, SR.

iii

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

No. 05-12959

NEAL ROMAN ARMSTRONG, SR.,

Defendant-Appellant,

vs.

UNITED STATES OF AMERICA,

Plaintiff-Appellee.

Appeal from the United States District Court
For the Middle District of Alabama
Northern Division

STATEMENT REGARDING ORAL ARGUMENT

This appeal involves, among others, important questions of law: whether the Government failed to meet its burden of proof concerning Count 4 of the Indictment, conspiracy to launder monetary instruments, and whether the Defendant was properly sentenced pursuant to the mandates imposed by Booker and Blakely. Accordingly, Neal Roman Armstrong, Sr. requests oral argument.

WILLIE & ASSOCIATES, P.C.

By: _____
Joseph R. Willie, II, D.D.S., J.D.

iv

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . .    ii

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . .    iv

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . .    v

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . .    vi

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . .    1

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . .    2

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . .    3

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . .    3

    A. Course of Proceedings and Disposition in the
       Court Below . . . . . . . . . . . . . . . . . .    3

    B. Statement of Facts . . . . . . . . . . . . . .    4

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . .    5

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . .    6

    A. The evidence is legally and factually
       insufficient to sustain the conviction of the
       Defendant . . . . . . . . . . . . . . . . . . .    6

    B. The district court has sentenced the Defendant
       to a term of imprisonment that exceeds the
       statutory maximum requirements imposed by
       Booker and Blakely . . . . . . . . . . . . . .    10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . .    13

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . .    13

# TABLE OF AUTHORITIES

Page(s)

CASES:

Blakely v. Washington, 124 S.Ct. 2531 (2004) . . . . . . . . . . iv, 2, 5, 12

Crist v. Bretz, 437 U.S. 28 (1978) . . . . . . . . . . . . . . 8, 10

In re Winship, 397 U.S. 358 (1970) . . . . . . . . . . . . . 2, 5, 10

Jackson v. Virginia, 443 U.S. 307 (1979) . . . . . . . . . . . . . 2, 5, 10

United States v. Booker, 125 S.Ct. 738 (2005) . . . . . . . . . iv, 2, 5, 10, 12

United States v. Christo, 129 F.3d 578 (11th Cir. 1997) . . . . . . . . . 7

United States v. Gonzales-Rodriguez, 966 F.2d 918 (5th Cir. 1992) . . . . . . . . . 7

United States v. Mathenia, 409 F.3d 1289 (11th Cir. 2005) . . . . . . . . 3

United States v. Moncivais, 213 F.Supp.2d 704 (S.D. Tex. 2001) . . . . . . 9

United States v. Pinero, 389 F.3d 1359 (11th Cir. 2004) . . . . . . . . 3

United States v. Suba, 132 F.3d 662 (11th Cir. 1998) . . . . . . . . . 7

United States v. West, 22 F.3d 586 (5th Cir. 1994) . . . . . . . . . . 7

CONSTITUTIONS:

U.S. CONST. amend. V . . . . . . . . . . . . . . . . . 8

TABLE OF AUTHORITIES (cont'd)

Page(s)

U.S. Const. amend. VI . . . . . . . . . . . . . . .          12


RULES AND STATUTES:

Fed. R. App. P. 4(b) . . . . . . . . . . . . . . . .           1

18 U.S.C. § 1956(a)(1)(A)(i) . . . . . . . . . . .           8

18 U.S.C. § 1956(h) . . . . . . . . . . . . . . .      6, 7, 8

18 U.S.C. § 1957 . . . . . . . . . . . . . . . . .       6, 8

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . .           1


SECONDARY AUTHORITIES:

U.S. Sentencing Guidelines Manual § 2S1.1(a)(1) (2004) .          12

U.S. Sentencing Guidelines Manual § 2S1.1(a)(2) (2004) .          12

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

No. 05-12959

---

NEAL ROMAN ARMSTRONG, SR.,

Defendant-Appellant,

vs.

UNITED STATES OF AMERICA,

Plaintiff-Appellee.

---

Appeal from the United States District Court
For the Middle District of Alabama
Northern Division

---

BRIEF OF APPELLANT

---

### STATEMENT OF JURISDICTION

This is an appeal by Defendant-Appellant Neal Roman
Armstrong, Sr. from a conviction of conspiracy to launder
monetary instruments entered in the district court. Pursuant to
Rule 4(b) of the Federal Rules of Appellate Procedure, a timely
notice of appeal was filed on behalf of the Defendant.
Accordingly, this Court has jurisdiction of this appeal under 28
U.S.C. § 1291.

## STATEMENT OF ISSUES

1.     Whether the evidence is legally and factually insufficient
       to sustain the conviction of the Defendant when applied to
       the law enumerated in In re Winship, 397 U.S. 358 (1970),
       and Jackson v. Virginia, 443 U.S. 307 (1979).


2.     Whether the district court improperly sentenced the
       Defendant pursuant to the mandates announced in United
       States v. Booker, 125 S.Ct. 738 (2005), and Blakely v.
       Washington, 124 S.Ct. 2531 (2004).

2

## STANDARD OF REVIEW

The standard of review on Issue #1 is de novo, but all reasonable inferences are resolved in favor of the jury's verdict. See United States v. Pinero, 389 F.3d 1359 (11th Cir. 2004). The standard of review on Issue #2 is harmless error. See United States v. Mathenia, 409 F.3d 1289, 1291 (11th Cir. 2005).

## STATEMENT OF THE CASE

### A.   Course of Proceedings and Disposition in the Court Below

On May 5, 2005, the Defendant was charged in a four-count indictment with conspiracy to distribute and possession with intent to distribute cocaine, distribution of cocaine, mailing injurious materials, and conspiracy to launder monetary instruments. (Doc. 1.)

On November 1, 2004 through November 3, 2004, the case was tried before a jury, with the Honorable W. Harold Albritton, III, United States District Judge for the Middle District of Alabama, Northern Division, presiding. (1R. 4-182; 2R. 185-284; 3R. 286-292.)

On November 2, 2004, at the close of the Government's case-in-chief, the Defendant filed and presented his Motion for Directed Verdict of Acquittal. (2R. 230-234; Doc. 97, pp. 1-3.) The district court denied the Defendant's Motion for Directed

3

Verdict of Acquittal. (2R. 236-238.) On November 3, 2004, the jury returned a verdict of guilty on Count 4 of the Indictment and did not reach a verdict as to Counts 1 and 2. Count 3 had been previously dismissed by the Government before the start of trial. (3R. 289-290; Doc. 101.) The Government subsequently dismissed Counts 1 and 2 with prejudice after trial. (3R. 291.)

On February 23, 2005, the district court sentenced the Defendant to serve one-hundred nine months in the custody of the Bureau of Prisons on the conspiracy to launder monetary instruments charge, imposed a supervised release term of three years, and imposed a one-hundred-dollar special assessment. (4R. 54-55; Doc. 126.)

The Defendant timely filed his Notice of Appeal on February 24, 2005. (Doc. 124.)

B.     **Statement of the Facts**

On May 9, 2003, Wallace Pickett was arrested in Montgomery, Alabama for taking possession of a package mailed from Christiansted, St. Croix, United States Virgin Islands, which had previously been identified by federal law enforcement officials as containing a suspected amount of cocaine. (1R. 25-29, 34-36, 40-43, 137-138.)

Upon custodial interview by federal authorities, Wallace Pickett indicated that he was being supplied with the cocaine by

4

the Defendant. Wallace Pickett additionally indicated that he
paid for the cocaine by United States Postal Money Orders. (1R.
98-100.)

Based on the information obtained from Wallace Pickett, the
Defendant was subsequently indicted on federal drug charges in
the Middle District of Alabama and arrested by Deputy United
States Marshals in Christiansted, St. Croix, United States
Virgin Islands.

## SUMMARY OF ARGUMENT

Without establishing any evidence as to any agreement to
launder funds from any alleged drug transaction and with no
finding by the jury of any substantive drug offense, the
evidence offered by the Government is legally and factually
insufficient to sustain the conviction of the Defendant. See In
re Winship, 397 U.S. 358 (1970), and Jackson v. Virginia, 443
U.S. 307 (1979).

The statutory maximum sentence that a district judge may
impose must be based upon relevant facts found by a jury beyond
a reasonable doubt or that have been admitted by a criminal
defendant. The district court erred in its sentencing by not
applying the mandates announced in United States v. Booker, 125
S.Ct. 738 (2005), and Blakely v. Washington, 542 U.S. 296
(2004).

## ARGUMENT AND AUTHORITIES

**A.    The evidence is legally and factually insufficient to sustain the conviction of the Defendant.**

The Defendant contends that the Government has failed to meet its burden of proof concerning Count 4 of the Indictment which charges the Defendant with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).

The Defendant contends that there is no evidence to show that the Defendant ever presented to any financial institution any sums of currency to conceal or disguise its nature and/or source nor is there any evidence that the Defendant engaged in any activity to avoid a transaction reporting requirement under state or federal law. Additionally, there is no evidence that the Defendant returned any currency to Wallace Pickett and/or Roderick Perkins in an effort to "clean" any currency, as required by controlling case law and statute.

18 U.S.C. § 1956(h) succinctly and unambiguously states:

> Any person who conspires to commit any offense in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

The statute thus requires that the Government introduce legally and factually sufficient evidence to meet the elements of a

6

financial transaction and concealment, as to this Defendant, as contained in 18 U.S.C. § 1956.

The Government has introduced evidence that Wallace Pickett and/or Roderick Perkins took certain sums of cash and converted said cash into United States Postal Money Orders and reported said financial transactions on PS Form 8105-A. (1R. 62-67, 77-79, 107-111, 140-145; 2R. 197-200, 202.) At no time were these transactions hidden from the Government. The five (5) United States Postal Money Orders that were made payable to "Neal Armstrong" were cashed in Christiansted, St. Croix, U.S.V.I. by the Defendant using his driver's license as identification. (1R. 145, 172.) Again, there is no evidence of an attempt to hide the transaction. The money laundering statutes cannot be converted into "money spending statutes" to impose criminal liability where none has been created by Congress. See United States v. Christo, 129 F.3d 578, 579-580 (11th Cir. 1997); United States v. Gonzalez-Rodriguez, 966 F.2d 918, 923-926 (5th Cir. 1992). See also United States v. Suba, 132 F.3d 662, 674-675 (11th Cir. 1998) (discussing money laundering statute); United States v. West, 22 F.3d 586, 590-591 (5th Cir. 1994) (discussing elements of money laundering).

Upon reading the district court's order entered November 10, 2004, the Defendant respectfully submits that the district

court misread the Defendant's argument concerning his Motion for Judgment of Acquittal.

The Defendant has not argued that he is entitled to an acquittal due to the fact of inconsistent jury verdicts, the Defendant is arguing that he is entitled to an acquittal due to the fact that since the Government has dismissed the substantive charges (including conspiracy) in Counts 1 and 2 of the Indictment and that the Double Jeopardy Clause of the Fifth Amendment bars their re-prosecution, as a matter of law, there can be no conspiracy to commit money laundering because no substantive offense related to any alleged conspiracy to commit money laundering has been found by a jury and/or the district court, as to this Defendant. See Crist v. Bretz, 437 U.S. 28, 35-39 (1978). In its order, the district court has mistakenly held that the Defendant was convicted by the jury of money laundering. Such is not the case.

This Court is reminded that the Defendant was charged in Count 4 of the Indictment with conspiracy to launder money derived from illegal drug proceeds (18 U.S.C § 1956(h) )[1] and not with the substantive offense of money laundering (18 U.S.C. § 1956(a)(1)(A)(i) ). That is a distinction with a difference.

_____

[1] 18 U.S.C. 1956(h) reads:
    Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy. (Emphasis added).

Count 1 of the Indictment alleges conspiracy to possess with intent to distribute 500 grams of cocaine. At trial, Government alleged "one giant" conspiracy concerning Counts 1 and 4 and has never alleged and/or proved multiple conspiracies, and even emphasized this very fact in its closing argument to the jury ("Deals conceived in the bowels of hell are seldom witnessed by angels," quoting AUSA Louis Franklin). (2R. 254.) Although Counts 1 and 4 of the Indictment did not charge violations of the same statutes, there is a significant overlap in the offenses charged. Additionally, this Court is asked to take judicial notice that Count 4 of the Indictment actually references the alleged conspiracy in Count 1 of the Indictment as its "lynchpin." The Government dismissed Count 1 "on the merits" (essentially an acquittal of an alleged conspiracy) and the Double Jeopardy Clause of the Fifth Amendment bars its re-prosecution by the Government. Although there is no overlap between the statutory offenses charged in Counts 1 and 4 of the Indictment, those offenses are so interrelated in such a way as to evidence a single alleged conspiratorial agreement. Since the Defendant was essentially acquitted of conspiracy in Count1 and Count 4 involves the same conspiracy, the Defendant is entitled to this Court reversing the judgment of the district court entering a judgment of acquittal on Count 4 pursuant to the Double Jeopardy Clause of the Fifth Amendment. See, e.g., United

9

States v. Moncivais, 213 F.Supp.2d 704, 706-710 (S.D. Tex.
2001).

The Government must prove beyond a reasonable doubt every
fact that constitutes an essential element of the crime charged
against the Defendant. In re Winship, 397 U.S. 358, 364 (1970).
When considering the sufficiency of the evidence on review, the
proper inquiry is not whether the reviewing court itself
believes that the evidence established guilt beyond a reasonable
doubt but "whether, after viewing the evidence in the light most
favorable to the prosecution, any rational trier of fact could
have found the essential elements of the crime beyond a
reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319
(1979).

Under the Crist, Winship and Jackson standards, the
Government failed to fully carry its burden of proof as it
pertains to Count 4 of the Indictment.


**B.     The district court has sentenced the Defendant to a
term of imprisonment that exceeds the statutory
maximum requirements imposed by Booker and Blakely.**

The Defendant was convicted on Count 4 of the Indictment
and was sentenced to a term of one-hundred nine months
imprisonment after the district court fully adopted the
Presentence Investigation Report of the United States Probation

Department, despite the objections proffered by the Defendant.
(4R. 3-56; Doc. 122; Doc. 126.)

The Supreme Court of the United States in United States v.
Booker, 125 S.Ct. 738 (2005), 2005 WL 50108, at *6-8, held that
the statutory maximum sentence that a district judge may impose
must be based on the relevant facts found by a jury beyond a
reasonable doubt or that have been admitted by a criminal
defendant.

In the case at bar, the Defendant has been essentially
acquitted of the alleged drug offenses contained in Counts 1 and
2 of the Indictment. The jury did not find and the Government
dismissed the charge, with prejudice, that the Defendant
conspired to distribute and possess with intent to distribute
500 grams or more of cocaine (Count 1). The jury did not find
and the Government dismissed the charge, with prejudice, that
the Defendant aided and abetted in the distribution of cocaine
(Count 2).

Accordingly, the Supreme Court's opinion in Booker
precluded the district court from using the alleged conduct
contained in Counts 1 and 2 of the Indictment in determining the
statutory maximum sentence that should have been imposed in this
case. It is the Defendant's contention that the district court
ignored the Supreme Court's mandate and proceeded to include the

11

conduct alleged in Counts 1 and 2 to determine the sentence that was imposed.

The Defendant cannot be legally held responsible for conspiracy with intent to distribute and possess 500 grams or more of cocaine nor with actual possession of 500 grams or more of cocaine because the jury did not find these facts. By finding that the Defendant was criminally responsible for the conduct alleged in Counts 1 and 2 of the Indictment, the district court violated the Defendant's right to a jury trial guaranteed by the Sixth Amendment to the United States Constitution. See Booker, at *6-8, 11, 15; Blakely v. Washington, 124 S.Ct. 2531, 2537 (2004).

Since none of the relevant conduct contained in Counts 1 and 2 of the Indictment is attributable to the Defendant, the advisory Sentencing Guideline that should have been consulted is § 2S1.1(a)(2) instead of § 2S1.1(a)(1). As such, the base level offense is eight (8). Since it is uncontroverted by all parties that the Defendant has a Criminal History Category of I, the Defendant's sentence should have been in the range of 0-6 months. Since the Defendant, at the time of sentencing, had served over nine (9) months in federal detention, he had already served that statutory maximum sentence and should have been released from further custody.

## CONCLUSION

For the foregoing reasons, the judgment and sentence of the district court should be reversed on Count 4 of the Indictment and the cause remanded to either dismiss the indictment or enter a judgment of acquittal or, in the alternative, that the judgment and sentence of the district court should be reversed and the case remanded with instructions to order a new sentencing hearing.

Respectfully submitted,

WILLIE & ASSOCIATES, P.C.

By: _____
Joseph R. Willie, II, D.D.S., J.D.
4151 Southwest Freeway, Suite 490
Houston, Texas 77027
(713) 659-7330
(713) 599-1659 (FAX)
Federal Bar I.D. #13746
SBOT #21633500

ATTORNEY FOR APPELLANT
NEAL ROMAN ARMSTRONG, SR.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served, First-Class U.S. Mail, to Susan R. Redmond, Assistant United States Attorney, One Court Square, Suite 201, Montgomery, Alabama 36104, on the _1st_ day of September, 2005

_____
Joseph R. Willie, II, D.D.S., J.D.

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

NO. 05-12959-H

**UNITED STATES OF AMERICA,**
Plaintiff - Appellee

versus

**NEAL ROMAN ARMSTRONG,**

Defendant - Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

BRIEF OF APPELLEE

**LEURA GARRETT CANARY**
UNITED STATES ATTORNEY

**TODD A. BROWN**
Assistant U. S. Attorney
Post Office Box 197
Montgomery, Alabama 36101

**ATTORNEYS FOR APPELLEE**

GOVERNMENT
EXHIBIT
_B_

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,    )
                             )
        Plaintiff/Appellee    )
                             )
        v.                    )        APPEAL NO. 05-12959-H
                             )
NEAL ARMSTRONG               )
                             )
        Defendant/Appellant   )

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

The United States Attorney for the Middle District of Alabama, through undersigned counsel, certifies that the following persons and entities have an interest in the outcome of this case:

1.    The Honorable W. Harold Albritton, United States District Judge for the Middle District of Alabama;

2.    Neal Roman Armstrong, Defendant/Appellant;

3.    Todd Brown, Assistant United States Attorney;

4.    The Honorable Leura Garrett Canary, United States Attorney for the Middle District of Alabama;

5.    Louis V. Franklin, Sr., Assistant United States Attorney;

C-1 of 2

6.    Susan R. Redmond, Assistant United States Attorney;

7.    Christine Sampson Willie, trial counsel for Appellant; and,

8.    Joseph R. Willie, II, D.D.S., J.D., trial and appellate counsel for appellant.

## STATEMENT REGARDING ORAL ARGUMENT

The issues are not complex and are addressed in the briefs and record thoroughly such that oral argument would not significantly aid the decisional process.  See Fed. R. App. P. 34(a)(1) and (a)(2)(C).

## CERTIFICATE OF TYPE SIZE AND STYLE

The size and style of type utilized throughout Appellee's Brief is Times New Roman New, 14pt 10 pitch (Legal), proportionally spaced font.

i

# TABLE OF CONTENTS

***Page***

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C-1 of 2

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.  COURSE OF THE PROCEEDINGS AND DISPOSITION BELOW . . . 1

    II.  STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    III.  STANDARDS OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    I.  THE EVIDENCE PRESENTED AT TRIAL SUPPORTED
       ARMSTRONG'S CONVICTION FOR MONEY LAUNDERING,
       AS CHARGED IN COUNT 4 OF THE INDICTMENT. . . . . . . . . 14

ii

## TABLE OF CONTENTS - *con't*

***Page***

II.   THE DISTRICT COURT DID NOT VIOLATE UNDER
      STATES V. BOOKER WHEN IT DETERMINED ARMSTRONG'S
      SENTENCE PURSUANT TO U.S.S.G. § 2S1.1(a)(1) . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## <u>TABLE OF CITATIONS</u>

<div align="right"><u>***Page***</u></div>

## <u>Cases</u>

<u>United States v. Booker</u>, 543 U.S. __, 125 S.Ct. 738 (2005).  . . . .  10, 12, 22, 26

<u>United States v. Carcione</u>, 272 F.3d 1297 (11th Cir. 2001) . . . . . . . . . . . . .  16, 17

<u>United States v. Chilingirian</u>, 280 F.3d 704 (6th Cir. 2002)  . . . . . . . . . . . . . .  18

<u>United States v. Crawford</u>, 407 F.3d 1174 (11th Cir. 2005)  . . . . . . . . . . . .  12, 22

<u>United States v. Diaz</u>, 248 F.3d 1065 (11th Cir. 2001)  . . . . . . . . . . . . . . .  12, 21

<u>United States v. Duncan</u>,  400 F.3d. 1297, 1304-05 (11th Cir. 2005) . . . . . . . .  25

<u>United States v. Magluta</u>, 418 F.3d 1166 (11th Cir. 2005)  . . . . . . . . . . . . .  19, 20

<u>United States v. Mankarious</u>, 151 F.3d 694 (1st Cir. 1998) . . . . . . . . . . . . . . .  18

<u>United States v. Rodriguez</u>,  398 F.3d 1291, 1296 (11th Cir. 2005), <u>cert</u>. <u>denied</u>

125 S.Ct. 2935 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 25

<u>United States v. Whatley</u>,  133 F.3d 601 (9th Cir. 1998) . . . . . . . . . . . . . . . . .  18

<u>United States v. Williams</u>, 989 F.2d 1137 (11th Cir. 1993) . . . . . . . . . . . . . . .  1

<u>United States v. Winingear</u>, No. 05-11198, ___ F.3d ___, 2005 WL 2077087

(11th Cir. Aug. 30, 2005)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 22

# <u>TABLE OF CITATIONS</u> – *con't*

<u>*Page*</u>

## <u>Statutes</u>

18 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 1716 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 1956(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17, 19

18 U.S.C. § 1956(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9, 10, 14, 17, 19

18 U.S.C. § 3742(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21 U.S.C. § 841(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,3

21 U.S.C. § 846 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,3

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## <u>Other Authorities</u>

<u>Federal Rules of Appellate Procedure</u>

      Rule 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      Rule 4(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

<u>Federal Rules of Criminal Procedure</u>

      Rule 29 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## TABLE OF CITATIONS – *con't*

*Page*

U.S. Sentencing Guidelines Manual

    § 1B1.3(a)(1) (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    § 2D1.1(3) (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    § 2S1.1(a)(1) (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 22, 23

    § 2S1.1(a)(2) (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## STATEMENT OF JURISDICTION

A final judgment of conviction and sentence was entered against
Defendant/Appellant Neal Armstrong in the United States District Court for the
Middle District of Alabama on February 25, 2004. Armstrong filed a timely
notice of appeal from that final decision on February 24, 2004. This Court has
jurisdiction over this appeal. See 18 U.S.C. § 3742(a); 28 U.S.C. § 1291; Fed. R.
App. P. 3 and 4(b); United States v. Williams, 989 F.2d 1137, 1140 (11th Cir.
1993).

## STATEMENT OF THE ISSUES

1. WHETHER THE EVIDENCE PRESENTED AT TRIAL SUPPORTED
ARMSTRONG'S CONVICTION FOR MONEY LAUNDERING, AS CHARGED
IN COUNT 4 OF THE INDICTMENT?

2. WHETHER THE DISTRICT COURT VIOLATED UNITED
STATES V. BOOKER WHEN IT DETERMINED ARMSTRONG'S SENTENCE
PURSUANT TO U.S.S.G. § 2S1.1(a)(1)?

## STATEMENT OF THE CASE

### I.    COURSE OF PROCEEDINGS AND DISPOSITION BELOW

On May 5, 2004, a grand jury for the Middle District of Alabama returned a
four-count indictment against Neal Armstrong, (hereinafter "Armstrong") and

1

Roderick Perkins, (hereinafter "Perkins"). (R1:1.) Count 1 of the indictment charged that, from an unknown date and continuing to and including May, 2003, the exact dates being unknown to the grand jury, in Montgomery County, Alabama, within the Middle District of Alabama, the defendants did knowingly and willfully combine, conspire, confederate and agree together, with Wallace Pickett, and with other persons known and unknown to the grand jury to knowingly and intentionally distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine hydrochloride, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846.

Count 2 of the indictment charged that, on or about May 12, 2003, in Montgomery County, Alabama, within the Middle District of Alabama, the defendants did knowingly and intentionally, aiding and abetting one another, distribute cocaine hydrochloride, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Count 3 of the indictment charged that, on or about May 12, 2003, in Montgomery County, Alabama, within the Middle District of Alabama, the defendants did knowingly cause to be delivered by mail a package addressed to Corey Smith, 2945 Thrasher Street, Montgomery, Alabama, containing poisonous

2

drugs, to-wit: cocaine hydrochloride, which is nonmailable and not authorized to be mailed by the rules and regulations of the Postal Service, in violation of 18 U.S.C. § 1716(j)(1).

Count 4 of the indictment charged that, from an unknown date, but commencing at least as early as the month of April, 2003, and continuing up to and including the month of May, 2003, the defendants did knowingly and willfully combine, conspire, and confederate with each other, Wallace Pickett, and with other persons, known and unknown to the grand jury, to knowingly conduct, attempt to conduct, and cause to be conducted, financial transactions affecting interstate commerce, to wit: the mailing of United States Postal money orders, using the proceeds of a specified unlawful activity, to-wit: conspiracy to distribute and possess with intent to distribute a controlled substance, and distribution of a controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1), as charged in Counts 1 and 2, with the intent to promote the carrying on of a specified unlawful activity, all in violation of 18 U.S.C. § 1956(h).

Armstrong proceeded to trial on November 1, 2004. The United States voluntarily dismissed Count 3 of the indictment at the outset of the trial. (R3:15.) At the close of the government's case, Armstrong requested a directed verdict pursuant to Fed.R.Crim.P. 29 as to Count 4, which the District Court denied.

3

(R4:230, 238.) On November 3, 2004, he was convicted only on Count 4, as the jury could not reach a unanimous decision as to Counts 1 and 2. (R5:289-90; R1:101.) The United States moved the District Court to dismiss Counts 1 and 2, and the motion was granted. (R5:291.)

On November 6, 2004, Armstrong filed a motion for judgment of acquittal. (R1:105.) The District Court issued a written order which contained the legal basis for its denial of the motion on November 10, 2004. (R1:108.) Armstrong filed a motion for reconsideration and a supplemental motion for acquittal. (R1:110, 112.) The District Court denied both motions. (R1:111, 113.)

On February 23, 2005, Armstrong was sentenced to serve 109 months in prison. (R6:54.) The District Court entered a final judgment of conviction and sentence in his case on February 25, 2005. ( R1:126.)

Armstrong filed a timely notice of appeal on February 24, 2005. (R1:124.)

## II.    STATEMENT OF THE FACTS

Wallace Pickett (hereinafter "Pickett"), a resident of Montgomery, Alabama, met Neal Armstrong, a resident of the U.S. Virgin Islands ("U.S.V.I."), in midsummer of 2002. (R3:99.) Armstrong was visiting in Montgomery with two other cocaine dealers, Raheem and Kenya, to conduct business related to cocaine,

4

and met Pickett, a local cocaine dealer, during this trip. (R3:101, 103-04.) Pickett also knew that Armstrong sometimes used the name "Jay." (R3:119.)

In February of 2003, Pickett mailed five pounds of marijuana to Raheem in the U.S.V.I., and, in late March of 2003, received a quarter kilogram of cocaine from Armstrong in return. (R3:104-05, 108.) The cocaine was mailed to Pickett at an apartment on Thrasher Street in Montgomery, Alabama. (R3:105-6.) Pickett "cooked" the cocaine into cocaine base, and called Armstrong and Raheem to inform them that he had received the package. (R3:106-07.) Pickett made between seven and nine thousand dollars from the sale of the cocaine base. (R3:107.) Per Armstrong's instructions, Pickett sent five thousand dollars back to Armstrong by postal money order. (R3:107-08.) He purchased the money orders at the Mt. Meigs Post Office in Montgomery, Alabama, on April 15, 2003. (R3:110-11.) Pickett sent the money orders to Armstrong at an address in the Virgin Islands which was provided by Armstrong. (R3:112-13.)

Pickett would sometimes direct Roderick Perkins to purchase the money orders which were sent to Armstrong, and accompanied him on each visit to the post office. (R3:112-13, 61-62, 79-80.) Perkins was aware when he purchased the money orders that they were being sent to Neal Armstrong as payment for cocaine, which would be sent from the U.S.V.I. to Montgomery (R3:63-64, 69, 81-82.)

5

Perkins lived at 2945 Thrasher Street in Montgomery during 2003, and cocaine was mailed to his address in packages bearing the fictitious name of Corey Smith. (R3:58, 70-71, 105, 115.)  Perkins did not personally know Armstrong, or anyone else in the U.S.V.I., but was only acting at the direction of Pickett, who gave him cash to purchase money orders in thousand dollar increments during late April and early May of 2003.  (R3:62, 63, 66-67, 81-82.)  He purchased money orders for Pickett on three dates in 2003 - April 15, April 23, and May 5.  (R3:72-74, 77.) The total values of the money orders purchased on these days were, respectively, $5,000, $5,000, and $8,000.  (R3:71, 74-75, 79.)

The United States Postal Service requires that the purchaser of  money orders worth $3,000 or more complete a funds transaction report, or Postal Service Form 8105-A.  (R3:140.)  Funds transaction reports carrying the same three dates in 2003 - April 15, April 23, and May 5 - were located in Postal Service records. (R3:140.)  The reports bore the names of Wallace Pickett, Dirac Chapell, and Roderick Perkins, respectively.  (R3:140.)   (R3:66, 83.)

Two shipments of cocaine mailed by Armstrong to the Thrasher Street address weighed a quarter kilogram, and a third weighed one half kilogram. (R3:108-09, 119.)  The shipments of cocaine were directly related to the money orders sent to Armstrong by Pickett.  (R3:119.)  The third package containing a

6

half kilogram of cocaine, was received by Pickett on May 12, 2003. (R3:114-15, 119.) This package, mailed via United States Express Mail, had been flagged as suspicious after a routine x-ray by agents with the United States Customs Service in San Juan, Puerto Rico. (R3:40-41.) Agents in Puerto Rico field tested the contents and identified it as cocaine. (R3:46.) The package was addressed to Corey Smith at 2945 Thrasher Street in Montgomery, Alabama. (R3:29-30, 40.) A Customs agent assigned to Mobile, Alabama contacted United States Postal Inspection agents in Montgomery, Alabama, who agreed to assist with a controlled delivery of the package. (R3:25-26, 41-42; 138.) The package was intercepted at Mobile and delivered to Montgomery by Customs agent David Daniels. (R3:42.) Daniels delivered the package to Postal Inspector Ricky Obert in Montgomery. (R3:26-27.)

The Capitol Heights Post Office in Montgomery had received several telephone calls on May 8, 9, and 10, 2003 from someone looking for the package. (R3:26-27.) On May 12, 2003, Obert called the phone number left by the person to say that the package had arrived and was available for pickup. (R3:27-28.) Approximately 30 minutes later, a person who identified himself as Corey Smith arrived at the Capitol Heights Post Office to claim the package. (R3:26, 28.) The person signed the Postal Form 3849, which indicates receipt of express mail

7

packages, as Corey Pickett. (R3:28-29.) The return name and address listed on

the package was Maria Santos, 317 Sion Farm, Christiansted, St. Croix, U.S.V.I.

00723. (R3:31, 169.)

The person who signed for the package left the post office and was arrested.

The man was later identified as Wallace Pickett. (R3:138.) After the controlled

delivery, the package was opened by David Daniels, who forwarded the contents

to the Drug Enforcement Administration laboratory in Dallas, Texas. (R3:43-45,

48.) The cocaine delivered to Pickett weighed a total of 499 grams and had a

purity of 81%. (R5:227.)

The ensuing investigation showed that Armstrong negotiated the five money

orders totaling $5,000, which had been purchased by Pickett and Perkins on April

15, 2003. (R3:143-44.) The identification used during endorsement was taken

from a State of Florida drivers' license registered to Neal R. Armstrong. (R3:143-

46.) The endorsements for the remaining money orders could not be connected to

any known person. (R3:146.) Addressees of express mail packages may be

required to indicate their receipt of said package by signing a Postal Service Form

3849, and the Postal Service scans an image of the original form before it is

destroyed. (R3:149.) Using electronic versions of documents maintained by the

Postal Service, investigators retrieved images of Forms 3849 showing that Neal

8

Armstrong signed for the express mail packages sent by Pickett and Perkins on April 15, 2003, and May 5, 2003. (R3:149.) Another Form 3849 retrieved by investigators showed that the package of money orders mailed by Pickett and Perkins on April 23, 2003, was received by Carol Gerard, Armstrong's sister, on April 24, 2003. (R3:143, 149; PSI, at ¶ 32.)

At the conclusion of the prosecution's case, Armstrong moved for a judgment of acquittal as to Count 4. (R4:230.) The District Court denied the motion. (R4:238.) Armstrong then rested his case. (R4:238.)

On November 3, 2004, Armstrong was convicted on Count 4. (R5:289-90; R1:101.) The jury could not reach a unanimous decision as to Counts 1 and 2. (R5:289-90.) The United States moved the District Court to dismiss Counts 1 and 2, and the motion was granted. (R5:291.)

The United States Probation Office prepared a presentence investigation report which recommended that Armstrong's base offense level be established at 26. See PSI, at ¶ 18. The report also recommended a specific offense enhancement of two points based upon Armstrong's conviction for violating 18 U.S.C. § 1956, and a second enhancement of two points for obstruction of justice. PSI, at ¶ ¶ 19, 22. Armstrong was assigned a criminal history category of I. PSI, at ¶ 29. The resulting guideline imprisonment range was 97 to 121 months. PSI,

9

at ¶ 50.  Armstrong filed written objections which disputed the attributed drug

quantity, enhancements, and the use of the attributed quantity in establishing his

base offense level.  See Addendum to the PSI, at 1-3.

Armstrong's sentencing was conducted on February 23, 2005.  In support of

the obstruction enhancement, the United States presented testimony from two of

Armstrong's cellmates in the Montgomery City Jail.  The evidence presented

showed that Armstrong contracted with one of the men, Irvin Johnson, to kill

Wallace Pickett because he had "snitched" on Armstrong.  (R6:17-26; 34-34.)

The District Court credited the testimony, overruled Armstrong's objection, and

applied the enhancement.  (R6:51-52.)  The District Court also found that the

enhancement for conviction under 18 U.S.C. § 1956 "clearly" applied, and

overruled this objection.  (R6:52-53.)

The District Court attributed 999.5 grams of cocaine hydrochloride to

Armstrong.  (R6:50-51.)  This amount was derived from evidence presented at

trial which indicated that Armstrong mailed Pickett two packages containing a

quarter kilogram of cocaine, and the third, intercepted package, which contained

one half kilogram.  (R3:108-09, 119.)  Armstrong argued that, under United States

v. Booker, 543 U.S. ___, 125 S.Ct. 738 (2005), the cocaine mailed to Pickett was

not relevant for sentencing, because the jury had not found him guilty of any

10

substantive drug offense. (R6:4-5.) The District Court quoted from this Court's decision in United States v. Rodriguez, 398 F.3d 1291 (11th Cir. 2005), cert. denied 125 S.Ct. 2935 (2005), to defend its use of extra-verdict enhancements where a preponderance of the evidence supported its findings. (R6:7-8.)

The District Court sentenced Armstrong to serve 109 months in prison. (R6:54.) It entered a final judgment of conviction and sentence in his case on February 25, 2005. (R1:126.)

Armstrong filed a motion for judgment of acquittal. (R1:105.) The motion asserted that the money laundering conviction could not stand because he was not convicted of the underlying offenses in Counts 1 and 2 of the indictment. (R1:105, at ¶ 4.) The District Court issued an Order denying the motion. (R1:108.) The Order explained that "the fact that the jury did not convict [defendant] on the relevant underlying . . . charges does not undermine the money-laundering convictions," and that the relevant issue was whether the evidence presented supported the conviction. (R1:108:2.) Armstrong filed a motion for reconsideration and a supplemental motion for acquittal. (R1:110, 112.) The District Court denied both motions. (R1:111, 113.)

11

Armstrong filed a timely notice of appeal on February 24, 2005. (R1:124.) At the submission of this brief, Armstrong is serving the aforementioned sentence in the custody of the Federal Bureau of Prisons.

## III.  STANDARDS OF REVIEW

Whether sufficient evidence was presented at trial to support a conviction is a question of law subject to <u>de novo</u> review. The Court reviews the sufficiency of the evidence to determine whether a reasonable jury could have concluded that the evidence established guilt beyond a reasonable doubt. The evidence is viewed in the light most favorable to the government and all reasonable inferences and credibility choices are made in the government's favor. <u>United States v. Diaz</u>, 248 F.3d 1065, 1083 (11th Cir. 2001).

This Court reviews a district court's sentence of a criminal defendant for reasonableness. <u>United States v. Booker</u>, 543 U.S. ___, 125 S.Ct. 738, 765-67 (2005); <u>United States v. Winingear</u>, No. 05-11198, ___ F.3d ___, 2005 WL 2077087, manuscript op. at 7 (11th Cir. Aug. 30, 2005).

A district court's finding of fact is reviewed for clear error and its application of the Sentencing Guidelines <u>de novo</u>.  <u>See United States v. Crawford</u>, 407 F.3d 1174, 1177-78 (11th Cir. 2005).

# **SUMMARY OF THE ARGUMENT**

The evidence presented during trial was sufficient to sustain Armstrong's conviction for money laundering, and permitted the jury to conclude that he was guilty of Count 4 of the indictment, even though it did not reach a unanimous verdict as to the substantive drug offenses with which he was charged.

A preponderance of the evidence supported the District Court's decision to hold Armstrong accountable for 999.5 grams of cocaine hydrochloride. The guideline provision appropriate for his conviction, U.S.S.G. § 2S1.1(a)(1), specifically directed that relevant conduct should be considered in establishing a base offense level. The District Court correctly applied the guidelines to arrive at a reasonable sentence in this case.

## ARGUMENT

### I.  THE EVIDENCE PRESENTED AT TRIAL SUPPORTED ARMSTRONG'S CONVICTION FOR MONEY LAUNDERING, AS CHARGED IN COUNT 4 OF THE INDICTMENT.

Armstrong contends that the evidence was not sufficient to convict him on Count 4, which charged a violation of 18 U.S.C. § 1956(h).  His arguments in this appeal focus on (1) whether the United States showed that he tried to conceal any financial transactions; and, (2) whether his money laundering conviction may stand if he was not convicted of any underlying offense.

A.  The Elements Of Promotional Money Laundering Were Established

The indictment charged that Armstrong conspired to "knowingly conduct, attempt to conduct, and cause to be conducted, financial transactions affecting interstate commerce, to wit: the mailing of United States Postal money orders, using the proceeds of a specified unlawful activity. . . with the intent to promote the carrying on [of] a specified unlawful activity."  (R1:1:2-3.)  This count also referenced Counts 1 and 2, which indicated that substantive drug offenses were the specified unlawful activity.

The required elements for a conviction under Count 4 were made clear to Armstrong when the District Court denied his oral motion for acquittal during trial.  After the government rested, Armstrong argued for acquittal because there

14

had been no evidence of his intent to "conceal or disguise the nature or the source

of any money . . . ."  (R4:231.)  The District Court ruled that "Section 1956, which

is the basic money laundering statute, has alternative ways of committing that

offense," and that, though subsection 1956(a)(1)(B) did require concealment, the

United States was not prosecuting under that provision.  (R4:236-37.)  The District

Court then explained that the elements for promotional money laundering under

subsection 1956(a)(1)(A)(i) require that a person conduct or attempt to a financial

transaction, which in fact involves the proceeds of specified unlawful activity,

with the intent to promote the carrying on of specified unlawful activity.

(R4:237.)  The District Court again emphasized that concealment of a transaction

was not an element of subsection 1956(a)(1)(A)(i) and denied Armstrong's motion

for acquittal.  (R4:237-38.)

    The District Court's ruling was correct under the law of this Circuit.  When

prosecuting a promotional money laundering charge,

> the government bears the burden of proving beyond a reasonable
> doubt that: (1) the defendant conducted or attempted to conduct a
> financial transaction; (2) the defendant knew the property involved in
> the transaction represented the proceeds of unlawful activity; (3) the
> property involved was in fact the proceeds of the specified unlawful
> activity; and (4) the defendant conducted the financial transaction
> "with the intent to promote the carrying on of [the] specified unlawful
> activity."

15

United States v. Carcione, 272 F.3d 1297, 1302 (11th Cir. 2001) (quoting 18

U.S.C. § 1956(a)(1(A)(i)).  Evidence presented at trial established each of these

elements beyond a reasonable doubt.

　　Wallace Pickett first received cocaine hydrochloride from Armstrong in

return for five pounds of marijuana that he mailed to Armstrong's collaborator,

Raheem.  (R3:104-05, 108.)  After processing and selling the cocaine, and at

Armstrong's direction, Pickett used $5,000 of the resulting profit to purchase

postal money orders.  (R3:107-08.)  He was assisted in this task by Roderick

Perkins, and then mailed the money orders to a U.S.V.I. address supplied by

Armstrong.  (R3:61-62; 112-13.)  After the money orders were received by

Armstrong, he again mailed cocaine to Pickett, under the fictitious name of Corey

Smith, at Perkins' Thrasher Street address.  (R3:58, 70-71.)  Pickett again

provided cash for postal money orders in the amounts of $5,000 and $8,000,

respectively, on April 23 and May 5, 2003.  (R3:72-74, 77.)  Postal records show

that either Armstrong himself, or his sister Carole Gerard, signed for the express

mail packages sent by Pickett on April 15, April 23, and May 5, 2003.  (R3:143,

149.)  The third package sent to Pickett was deemed suspicious by U.S. Customs

agents in San Juan, Puerto Rico, and was received by Pickett under a controlled

delivery plan.  (R3:26-28, 138.)  This package contained a half kilogram of

16

cocaine hydrochloride and the surveillance conducted by Customs and Postal Service investigators led to Armstrong's prosecution and appeal.

The government therefore met its burden of showing beyond a reasonable doubt that (1) Armstrong directed Pickett to send payment for the cocaine through postal money orders, and that he negotiated at least five thousand dollar instruments, as demonstrated by the use of his Florida drivers' license (R3:143-46); (2) Armstrong knew that the money sent to him by Pickett was profit from sales of the cocaine mailed from the U.S.V.I. (R3:69, 107-08); (3) the money used to buy the money orders was, in fact, derived from Pickett's sales of cocaine received from the U.S.V.I. (R3:107-08); and, (4) the money orders were a critical piece of the "cash for cocaine" mailings between Armstrong and Pickett, and were necessary to perpetuate the agreement to distribute cocaine in Montgomery, Alabama (R3:63-64, 69.) This proof supported the jury's finding that Armstrong engaged in promotional money laundering as set forth in 18 U.S.C. § 1956(a)(1)(A)(i), and, consequently, that he conspired to violate that section as set forth in 18 U.S.C. § 1956(h). United States v. Carcione, 272 F.3d at 1302. Armstrong's sufficiency challenge as to whether the elements necessary for money laundering is, therefore, without merit, and the conviction should be affirmed.

17

### B. The Money Laundering Conviction Does Not Require A Conviction On A Specified Unlawful Activity

Armstrong's motion for judgment of acquittal challenged whether his conviction for money laundering could stand where he was not convicted on Counts 1 and 2, which charged that the drug distribution scheme described therein was the specified unlawful activity which the money laundering promoted. (R1:105, at ¶ 4.) The District Court issued an Order denying the motion, and explained that "the fact that the jury did not convict [defendant] on the relevant underlying . . . charges does not undermine the money-laundering conviction," and that the relevant issue was whether the evidence presented supported the conviction. (R1:108:2.) Armstrong renews this argument on appeal, and the United States responds with the same analysis issued by the District Court.

In rejecting Armstrong's claim that a money laundering conviction must be supported by convictions for the specified unlawful activity alleged in the indictment, the District Court cited authorities from various other circuits which held otherwise. See United States v. Whatley, 133 F.3d 601, 605-06 (9th Cir. 1998); United States v. Mankarious, 151 F.3d 694, 703 (1st Cir. 1998); and, United States v. Chilingirian, 280 F.3d 704, 712 (6th Cir. 2002). (R1:108:2.) Each of these cases upheld money laundering convictions despite the absence of a

18

conviction on the underlying offenses alleged. A recent decision of this Court also held that a defendant's "personal involvement in, or guilt of, [the underlying criminal activity] is not an element of the money laundering charge . . . ." <u>United States v. Magluta</u>, 418 F.3d 1166, 1174 (11th Cir. 2005) (Analyzing the essential elements for conviction under 18 U.S.C. § 1956(a)(1)(B)(i)).

In <u>Magluta</u>, the United States used evidence of the defendant's past involvement in substantive drug offenses to establish the "specified unlawful activity" element essential for money laundering, even though the defendant had in fact been acquitted of the conduct in a previous trial. <u>Id</u>. at 1173. This Court found that the United States did not have to prove that "Magluta committed the felony drug offenses" for the money laundering conviction to stand. <u>Id</u>. at 1174. Because <u>Magluta</u> specifically addressed Armstrong's claim, the jury's failure to convict him of the specified unlawful activity alleged in Counts 1 and 2 does not vitiate his conviction on Count 4. As discussed above in Part I.A., each individual element of 18 U.S.C. § 1956(a)(1)(A)(i), as alleged through 18 U.S.C. § 1956(h), was established during trial testimony, and found by the jury.

Armstrong asserts that the fact that he was charged with conspiracy to commit money laundering is relevant to whether his conviction may stand. He submits that the incorporation of the drug conspiracy, as alleged in Count 1, into

19

Count 4, requires a reversal because the two charges actually charge a single

conspiracy. Essentially, he argues that Counts 1 and 4 were interrelated to a

degree that a conviction for one without the other cannot stand. His argument

continues to assert that the interrelationship of Counts 1 and 4 demand that an

acquittal on one requires an acquittal on the other, even though Armstrong was not

acquitted on Counts 1 and 2.[1]

Although this argument is somewhat confusing, the United States believes

that it was also addressed by the Magluta decision. In distinguishing the elements

of the underlying drug offenses from those of money laundering in a collateral

estoppel context, this Court emphasized that "acquittal of illegal drug activity does

not extend to any of the essential elements of the money laundering charges on

which [Magluta] was convicted." Magluta, 418 F.3d at 1174. The same is true for

Armstrong's claim that acquittal on the conspiracy charge in Count 1 necessitates

the same for the conspiracy charge in Count 4. Again, under Magluta, the United

States did not have to prove Armstrong's guilt on the drug offenses, because

"laundering someone else's illegal proceeds is just as bad as laundering your own.

. . ." Id. The jury's verdict evidences its finding that Armstrong was aware that he

---

[1]The jury could not agree and therefore the District Court declared a mistrial
as to Counts 1 and 2. Thereafter, the government moved for and the District Court
granted its motion to dismiss Counts 1 and 2.

was conducting financial transactions which in fact involved the proceeds of specified unlawful activity, with the intent to promote the carrying on of specified unlawful activity. The proof necessary for this conviction is not diminished by the jury's failure to conclude unanimously that he engaged in substantive drug offenses.

The evidence in this case fully supports the money laundering conviction in this case. The District Court correctly denied his motion for judgment of acquittal, and his conviction should be affirmed based on the ample evidence presented at trial. The jury reasonably concluded that the evidence established guilt beyond a reasonable doubt as to Count 4. United States v. Diaz, 248 F.3d 1065, 1083 (11th Cir. 2001). Therefore, Armstrong's contention that the evidence was insufficient has no merit.

21

II.    **THE DISTRICT COURT DID NOT VIOLATE** UNITED STATES V. BOOKER **WHEN IT DETERMINED ARMSTRONG'S SENTENCE PURSUANT TO U.S.S.G. § 2S1.1(a)(1).**

Armstrong contends that the District Court did not comply with United States v. Booker, 543 U.S. ___, 125 S.Ct. 738 (2005), and so erred in its pronouncement of its sentence in his case. Booker requires that a criminal sentence be reasonable. Booker, 543 U.S. ___, 125 S.Ct. at 765-67; see also United States v. Winingear, No. 05-11198, ___ F.3d ___, 2005 WL 2077087, manuscript op. at 7 (11th Cir. Aug. 30, 2005). Under Booker, "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Booker, 125 S.Ct. at 767; United States v. Crawford, 407 F.3d 1174, 1178-79 (11th Cir. 2005). The record shows that the District Court sentenced Armstrong within the appropriate advisory guideline range of 97 to 121 months, and acted reasonably in sentencing him to 109 months imprisonment. (R6:54; R1:126.)

Armstrong contends that his guideline range was incorrectly established by the District Court. He explains that he should have been sentenced pursuant to U.S.S.G. § 2S1.1(a)(2), which recommends a base offense level of 8, plus the levels appropriate to the value of the laundered funds. See U.S.S.G. § 2S1.1(a)(2)

22

(2004). He claims that <u>Booker</u> error occurred when the District Court sentenced him pursuant to section 2S1.1(a)(1), which provides that a defendant receive the offense level "for the underlying offense from which the laundered funds were derived, if (A) the defendant committed the underlying offense (or would be accountable for the underlying offense under subsection (a)(1)(A) of § 1B1.3 (Relevant Conduct); and (B) the offense level for that offense can be determined...." U.S.S.G. § 2S1.1(a)(1) (2004). Thus, conduct relevant to the offense of Armstrong's conviction, money laundering, may be considered notwithstanding the absence of a conviction on the specified unlawful offense of cocaine distribution.

The District Court sentenced Armstrong correctly when it adopted the recommendations of the U.S. Probation Office, as contained in the presentence investigation report prepared in this case. (R6:53; PSI, at ¶18.) Section 2S1.1(a)(1) directs a district court to consider relevant conduct, as defined by U.S.S.G. § 1B1.3. That section alternatively defines "relevant conduct" as "all acts . . . committed, aided, abetted, counseled, commanded . . . or willfully caused by the defendant," or, as "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." See U.S.S.G. § 1B1.3(a)(1)(A) and (B) (2004).

23

The relevant conduct considered by the District Court was Armstrong's direction to Pickett that he pay for the cocaine, sent to Montgomery by Armstrong, via postal money order, and the providing a U.S.V.I. address as the destination for the payments. (R3:112-13.) Perkins also testified that he knew that the money orders were being sent to Armstrong as payment for the packages of cocaine that were being mailed to his Thrasher Street address. (R3:69.) The District Court specifically found that Armstrong "was involved in the shipment of powder cocaine from the Virgin Islands to Montgomery, Alabama, on three separate occasions." (R6:50.) Citing two shipments of 250 grams of cocaine, and a third shipment of 499.5 grams of cocaine, the District Court stated that it was "satisfied by a preponderance of the evidence that Neal Armstrong was involved in the shipments totaling 999.5 grams of cocaine hydrochloride." (R6:50.) Consequently, the District Court correctly used U.S.S.G. § 2D1.1(3)(C)(7), the guideline governing the distribution of cocaine, to establish a base offense level of 26. (R6:50, 53; PSI, at ¶ 18.)

This Court has held that "nothing in <u>Booker</u> erodes" precedent which "uniformly states, 'relevant conduct of which a defendant was acquitted nonetheless may be taken into account in sentencing for the offense of conviction, as long as the government proves the acquitted conduct relied upon by a

24

preponderance of the evidence.'" <u>United States v. Duncan</u>, 400 F.3d. 1297, 1304-05 (11th Cir. 2005); <u>see also</u> <u>United States v. Rodriguez</u>, 398 F.3d 1291, 1296 (11th Cir. 2005), <u>cert</u>. <u>denied</u> 125 S.Ct. 2935 (2005). The United States presented evidence which established by a preponderance of the evidence that Armstrong participated in the distribution of cocaine in Montgomery. The District Court quoted from <u>Rodriguez</u> at sentencing to remind Armstrong that, in this Circuit, a jury need not find every fact relevant to sentencing. It read into the record the following:

> [T]he error that was committed in pre-<u>Booker</u> sentencing . . . is not that there were extra-verdict enhancements--enhancements based on facts found by the judge that were not admitted by the defendant or established by the jury verdict–that led to an increase in the defendant's sentence. The error is that there were extra-verdict enhancements used in a mandatory guidelines system. We know for two reasons that if the same extra-verdict enhancements had been found and used in the same way in a non-mandatory guidelines system the result would have been constitutionally permissible.

(R6:7-8.) <u>United States v. Rodriguez</u>, 398 F.3d at 1300. The District Court also stated at sentencing that "decisions about sentencing factors would continue to be made by judges on a preponderance of the evidence." (R6:8.)

The record in this case clearly shows that the District Court applied the preponderance standard when it considered Armstrong's relevant conduct at sentencing. That conduct was correctly incorporated into his offense level

pursuant to U.S.S.G. § 2S1.1(a)(1). Armstrong's sentence in no way violated

United States v. Booker, and should be affirmed.

## **CONCLUSION**

For the above reasons, this Court should reject Armstrong's arguments and

affirm his conviction and sentence.

Respectfully submitted this the 4th day of October, 2005.

<div align="right">

LEURA GARRETT CANARY
UNITED STATES ATTORNEY


TODD A. BROWN
Assistant United States Attorney
United States Attorney's Office
One Court Square - Suite 201
Montgomery, AL 36104
(334) 223-7280

</div>

## **CERTIFICATE OF COMPLIANCE**

This brief is in compliance with Federal Rule of Appellate Procedure

32(a)(7)(B)(i) in that the principal brief is fewer than 30 pages.

<div align="right">

TODD A. BROWN
Assistant United States Attorney

</div>

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of October, 2005, the foregoing brief

was served on counsel for the Defendant/Appellant by placing copies of the same

to each in the United States mail, first class and postage prepaid, addressed as

follows:

> Joseph R. Willie, II, D.D.S., J.D.
> 4151 Southwest Freeway, Suite 490
> Houston, Texas 77027

and by mailing the original and additional copies by first class certified

mail, postage prepaid, to the Clerk of this Honorable Court on the same date,

addressed as follows:

> Clerk's Office - Appeal No. 05-12959-H
> U.S. Court of Appeals - Eleventh Circuit
> 56 Forsyth Street NW
> Atlanta, GA 30303

> TODD A. BROWN
> Assistant United States Attorney

# United States Court of Appeals

RECEIVED For the Eleventh Circuit

2006 MAR 17  A 9 53

No. 05-12959

District Court Docket No.
04-00084-CR-A-N

<table>
<tr><td>FILED<br>U.S. COURT OF APPEALS<br>ELEVENTH CIRCUIT<br><br>Jan 31, 2006<br><br>THOMAS K. KAHN<br>CLERK</td></tr>
</table>

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

versus

NEAL ARMSTRONG,
a.k.a. Neil Armstrong,

        Defendant-Appellant.

-----------------------------------------------------------------
Appeal from the United States District Court
for the Middle District of Alabama
-----------------------------------------------------------------

## J U D G M E N T

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

Entered:     January 31, 2006
For the Court:   Thomas K. Kahn, Clerk
By:       Harper, Toni

ISSUED AS MANDATE

MAR 0 1 2006

U.S. COURT OF APPEALS
ATLANTA, GA.



**GOVERNMENT
EXHIBIT**
C

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

r⎯⎯⎯⎯J

M⎯⎯ 17 2006

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 31, 2006
THOMAS K. KAHN
CLERK

No. 05-12959
Non-Argument Calendar

D. C. Docket No. 04-00084-CR-A-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NEAL ARMSTRONG,
a.k.a. Neil Armstrong,

Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of Alabama

(January 31, 2006)

Before ANDERSON, BARKETT and HULL, Circuit Judges.

PER CURIAM:

After a jury trial, Neal Roman Armstrong ("Armstrong") appeals his conviction and 109-month sentence for conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h). After review, we affirm Armstrong's conviction and sentence.

## I.     BACKGROUND

On May 9, 2003, Wallace Pickett ("Pickett") was arrested in Montgomery, Alabama, for taking possession of a package containing 499.5 grams of cocaine that had been mailed to him from the United States Virgin Islands. After a series of interviews, Pickett eventually informed federal authorities that Armstrong had mailed the cocaine from the Virgin Islands, that Armstrong had supplied Pickett with cocaine on multiple occasions, and that Pickett paid Armstrong for the cocaine by United States Postal Money Orders. Pickett also informed the authorities that he sometimes directed Roderick Perkins ("Perkins") to purchase the money orders sent to Armstrong.

On May 5, 2004, Armstrong was charged in a four-count indictment with conspiracy to distribute and possession with intent to distribute cocaine (Count I), distribution of cocaine (Count II), mailing injurious materials (Count III), and conspiracy to launder monetary instruments (Count IV). Prior to trial, the government voluntarily dismissed Count III.

2

Both Pickett and Perkins testified at Armstrong's trial. Pickett testified that he met Armstrong in Montgomery, Alabama in the summer of 2002, at which point they agreed to conduct business related to cocaine distribution. According to Pickett's testimony, Armstrong shipped cocaine from the Virgin Islands to Pickett on three or four occasions, beginning in March 2003. Pickett testified that Armstrong sent roughly a quarter kilogram of cocaine on at least two occasions and roughly half a kilogram of cocaine once, in the package intercepted by authorities on May 9, 2003. Per Armstrong's instructions, Pickett paid Armstrong for the cocaine by sending postal money orders by express mail.

Perkins testified that he sometimes assisted Pickett in purchasing and sending money orders to Armstrong. When Perkins purchased and mailed the money orders, Perkins was aware that they were being sent to Armstrong as payment for cocaine, which Armstrong was sending from the Virgin Islands to Montgomery, Alabama.

The government also presented evidence that (1) Armstrong had signed for express mail packages sent by Pickett and Perkins on April 15, 2003, and May 5, 2003; (2) Armstrong's sister signed for an express mail package from Pickett and Perkins on April 23, 2003; and (3) Armstrong endorsed and signed for five money

3

orders totaling $5,000, which had been purchased by Pickett and Perkins on April 15, 2003.[1]

On November 3, 2004, the jury found Armstrong guilty of Count IV, conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h). The jury could not reach a unanimous decision as to Counts I and II. After trial, the district court granted the government's motion to dismiss Counts I and II with prejudice.

The United States Probation Office prepared a presentence investigation report ("PSI"). The PSI determined that Armstrong was accountable for the 499.5 grams of cocaine Pickett received in May 2004 and for two separate 250-gram packages Pickett received in April 2004, for a total amount of 999.5 grams of cocaine. As such, the PSI recommended a base offense level of 26. See U.S. Sentencing Guidelines § 2S1.1(a)(1) (stating that the base offense level for a charge of conspiracy to launder monetary instruments in circumstances applicable to Armstrong is "[t]he offense level for the underlying offense from which the laundered funds were derived"); U.S.S.G. § 2D1.1(c)(7) (assigning a base offense

---

[1]According to Pickett and Perkins, they purchased and sent to Armstrong money orders totaling $5,000 on April 15, $5,000 on April 23, and $8,000 on May 5. However, the government presented evidence identifying Armstrong's endorsement and signature only on the April 15 money orders. The endorsements and signatures for the remaining money orders, sent by Pickett and Perkins to the Virgin Islands, could not be traced to any known person.

4

level of 26 for unlawful distribution of at least 500 grams but less than two kilograms of cocaine). The PSI also recommended a specific offense enhancement of two levels, see U.S.S.G. § 2S1.1(b)(2)(B) (two-level enhancement for violation of 18 U.S.C. § 1956), and a two-level enhancement for obstruction of justice, see U.S.S.G. § 3C1.1, for an adjusted offense level of 30. The PSI assigned Armstrong a criminal history category of I, with a resulting guidelines imprisonment range of 97 to 121 months.

The district court conducted a sentencing hearing on February 23, 2005. After hearing from witnesses, the district court found by a preponderance of the evidence that 999.5 grams of cocaine should be attributed to Armstrong and that Armstrong had obstructed justice by attempting to solicit the murder of Wallace Pickett prior to trial. The district court rejected Armstrong's argument that enhancing his sentence based on these findings would violate United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), asserting that such extra-verdict enhancements were permissible under an advisory guideline system. After considering the advisory guidelines range for an offense level of 30 and criminal history category of I, the district court sentenced Armstrong to 109 months in prison, finding such a sentence reasonable.

## II.    DISCUSSION

Armstrong was convicted of violating 18 U.S.C. § 1956(h), which makes it

unlawful to "conspire[] to commit any offense defined in [18 U.S.C. § 1956]. . . ."

18 U.S.C. § 1956(h) (emphasis added).  Specifically, Armstrong was convicted of

conspiring to commit the offense defined by 18 U.S.C. § 1956(a)(1)(A)(i).  That

subsection of Section 1956 makes it unlawful (1) to conduct or attempt to conduct

a financial transaction (2) that the defendant knows involves the proceeds of some

form of unlawful activity (3) with "the intent to promote the carrying on of [the]

specified unlawful activity."  18 U.S.C. § 1956 (a)(1)(A)(i); see United States v.

Carcione, 272 F.3d 1297, 1302 (11th Cir. 2001) (quoting 18 U.S.C.

§ 1956(a)(1)(A)(i)).  At trial, the government presented evidence that (1)

Armstrong cashed or attempted to cash the money orders mailed by Pickett and

Perkins; (2) Armstrong knew that the money orders represented the proceeds of the

illegal sale of cocaine; and (3) Armstrong took the money in exchange for cocaine

he shipped to Perkins with intent to facilitate the illegal sale of cocaine.

On appeal, Armstrong argues that the evidence was insufficient to support a

guilty verdict on Count IV in two respects.  First, Armstrong contends that the

government presented no evidence that he concealed or disguised the nature or

source of the money orders he cashed.  While Armstrong is correct, concealment is

6

not a necessary element of the offense of which he was convicted, see 18 U.S.C.

§ 1956(a)(1)(A)(i); United States v. Williamson, 339 F.3d 1295, 1301 n.15 (11th

Cir. 2003), cert. denied, 540 U.S. 1184, 124 S.Ct. 1427 (2004).[2]  No evidence of

concealment was necessary to convict Armstrong of Count IV.

Second, Armstrong asserts that because he was not convicted of the

conspiracy to distribute cocaine charged in Count I, his § 1956(h) conviction for

conspiracy to launder monetary instruments derived from the same distribution of

cocaine must be reversed.   Contrary to Armstrong's argument, "[a defendant's]

personal involvement in, or guilt of, the [underlying drug activity] is not an

element of the money laundering charge he was convicted of in this case." United

States v. Magluta, 418 F.3d 1166, 1174 (11th Cir. 2005).  The government did not

need to prove Armstrong's personal involvement in drug activities, but rather only

that Armstrong, "with the requisite knowledge and intent, conducted a financial

transaction involving the proceeds of felony drug offenses." Id.; see also United

States v. Lozano-Hernandez, 89 F.3d 785, 789 (11th Cir. 1996) (conviction on only

one of two related counts may be upheld where "[d]ifferent elements comprise the

two offenses, and, in any event, inconsistent jury verdicts are not necessarily a

---

[2]While concealment is an element of 18 U.S.C. § 1956(a)(1)(B)(i), Armstrong was
convicted of conspiracy to violate 18 U.S.C. § 1956(a)(1)(A)(i).  Concealment is not an element
of 18 U.S.C. § 1956(a)(1)(A)(i).

7

cause for reversal of a conviction.") (citing <u>United States v. Powell</u>, 469 U.S. 57, 65-67, 105 S.Ct. 471, 477, 83 L.Ed.2d 461 (1984)).

Finally, Armstrong argues that his constitutional rights were violated because his sentence was enhanced based on facts not found by the jury. <u>United States v. Booker</u>, 543 U.S. 220, 125 S. Ct. 738 (2005). As the district court correctly noted, "the use of extra-verdict enhancements in a non-mandatory guidelines system is not unconstitutional." <u>United States v. Rodriguez</u>, 398 F.3d 1291, 1300 (11th Cir.), <u>cert. denied</u>, 125 S.Ct. 2935 (2005). Consistent with <u>Booker</u>, the district court properly calculated Armstrong's guideline range, relying only on facts the government had proven by a preponderance of the evidence. <u>See</u> <u>United States v. Duncan</u>, 400 F.3d 1297, 1304-05 (11th Cir.), <u>cert. denied</u>, 126 S.Ct. 432 (2005) (stating that even after <u>Booker</u>, a sentencing court still may consider conduct of which a defendant was acquitted, "as long as the government proves the acquitted conduct relied upon by a preponderance of the evidence.") (quotation marks and citation omitted). The district court then properly applied the calculated Guidelines range in an advisory fashion. <u>See</u> <u>Rodriguez</u>, 398 F.3d at 1300. We readily conclude that Armstrong's sentence was consistent with <u>Booker</u> and did not violate his Sixth Amendment rights.

Accordingly, we affirm Armstrong's conviction and sentence.

**AFFIRMED.**

A TRUE COPY - ATTESTED:
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

BY:

DEPUTY CLERK
ATLANTA, GEORGIA

8

Westlaw.

2006 WL 1530523 (U.S.)

**(Cite as: 2006 WL 1530523)**

Page 1

For Opinion See 127 S.Ct. 109

Supreme Court of the United States.
Neal Roman ARMSTRONG, Sr., Petitioner,
v.
UNITED STATES OF AMERICA, Respondent.
No. 05-1548.
May 1, 2006.

On Petition for a Writ of Certiorari to the United States Court of Appeals for the Eleventh Circuit

Petition for Writ of Certiorari
Joseph R. Willie, II, D.D.S., J.D., Counsel of Record, Willie & Associates, P.C., 4151 Southwest Freeway, Suite 490, Houston, TX 77027, (713) 659-7330, Counsel for Petitioner.

QUESTIONS PRESENTED

1. Whether the Sixth Amendment right to a jury trial is violated by the use of acquitted conduct under the preponderance of the evidence standard when determining sentencing enhancements under the advisory United States Sentencing Guidelines?

2. If the answer to the first question is yes, the following question is presented: whether, in a case in which the advisory Guidelines are used, may sentence enhancements imposed by the trial court exceed the sentence authorized by the jury's verdict?

3. Whether the Court of Appeals erred in affirming the conviction of conspiracy to commit money laundering when the Government's proof was both legally and actually insufficient and the conviction violates the Double Jeopardy Clause of the Fifth Amendment?

**\*ii LIST OF PARTIES**

Petitioner certifies that the following is a complete list of the names of all parties.

PETITIONER:

Neal Roman Armstrong, Sr.

RESPONDENT:

United States of America

ATTORNEYS:

Joseph R. Willie, II, D.D.S., J.D.

4151 Southwest Freeway, Suite 490

Houston, Texas 77027

(713) 659-7330

Neal Roman Armstrong, Sr.

Susan R. Redmond, Esquire

Assistant United States Attorney

One Court Square, Suite 201

Montgomery, Alabama 36104

(334) 223-7280

United States of America

**\*iii TABLE OF CONTENTS**

QUESTIONS PRESENTED ... i

LIST OF PARTIES ... ii

TABLE OF CONTENTS ... iii

TABLE OF AUTHORITIES ... v

PRAYER ... 1

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

GOVERNMENT EXHIBIT
D

2006 WL 1530523 (U.S.)                                                                 Page 2

**(Cite as: 2006 WL 1530523)**

OPINIONS/ORDERS BELOW ... 1

JURISDICTION ... 1

CONSTITUTIONAL PROVISIONS, STATUTES AND RULES INVOLVED ... 2

STATEMENT OF THE CASE ... 2

REASONS FOR GRANTING THE WRIT ... 4

I. The question of whether acquitted conduct can be used to enhance a sentence that is not authorized by a jury's verdict represents an important question which has not been, but should be, decided by the Supreme Court ... 4

II. The money laundering statutes cannot be converted to "money spending statutes" to impose criminal liability where none has been created by Congress ... 8

**\*iv** CONCLUSION ... 10

APPENDIX "A": Decision of the Eleventh Circuit ... 1a

APPENDIX "B": Judgment and Sentence of the Trial Court ... 8a

APPENDIX "C": U.S. Const. amend. V ... 17a

APPENDIX "D": U.S. Const. amend. VI ... 18a

APPENDIX "E": 18 U.S.C. § 1956(h) ... 19a

APPENDIX "F": Presentence Investigation Report ... 20a

APPENDIX "G": Indictment ... 42a

**\*v** TABLE OF AUTHORITIES

Cases

*Apprendi v. New Jersey,* 530 U.S. 466 (2000) ... 5, 6

*Blakely v. Washington,* 124 S.Ct. 2531 (2004) ... 5, 7

*Blockburger v. United States,* 284 U.S. 299 (1932) ... 10

*Crist v. Bretz,* 437 U.S. 28 (1978) ... 8, 10

*In re Winship,* 397 U.S. 358 (1970) ... 10

*Jackson v. Virginia,* 443 U.S. 307 (1979) ... 10

*Jones v. United States,* 526 U.S. 227 (1999) ... 5, 6

*Ring v. Arizona,* 536 U.S. 584 (2002) ... 5

*United States v. Baldwin,* 389 F.Supp.2d 1 (D. D.C. 2005) ... 7

*United States v. Booker,* 125 S.Ct. 738 (2005) ... 5, 7

**\*vi** *United States v. Coleman,* 370 F.Supp.2d 661 (S.D. Ohio 2005) ... 7

*United States v. Duncan,* 400 F.3d 1297 (11th Cir.), *cert. denied,* 126 S.Ct. 432 (2005) ... 5

*United States v. Gray,* 362 F.Supp.2d 714 (S.D. W.Va. 2005) ... 7

*United States v. Moncivais,* 213 F.Supp.2d 704 (S.D. Tex. 2001) ... 10

*United States v. Pimental,* 367 F.Supp.2d 143 (D. Mass. 2005) ... 7

*United States v. Rodriguez,* 398 F.3d 1291 (11th Cir.), *cert. denied,* 125 S.Ct. 2935 (2005) ... 5

*United States v. Suba,* 132 F.3d 662 (11th Cir. 1998) ... 9

*United States v. Watts,* 519 U.S. 148 (1997) ... 4, 5, 7

*United States v. West,* 22 F.3d 586 (5th Cir. 1994) ... 9

**\*vii** Docketed Cases

*United States v. Armstrong,* 165 Fed.App. 768 (11th Cir. 2006) (not selected for publication in the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 1530523 (U.S.)                                                                          Page 3

**(Cite as: 2006 WL 1530523)**

Federal Reporter) ... *passim*

Constitutions

U.S. Const. amend. V ... 2

U.S. Const. amend. VI ... 2

Statutes

18 U.S.C. § 1956(a)(1)(A)(i) ... 9

18 U.S.C. § 1956(h) ... 2, 9

U.S. Sentencing Guidelines Manual

U.S. Sentencing Guidelines Manual § 2S1.1(a)(1) (2004) ... 7

U.S. Sentencing Guidelines Manual § 2S1.1(a)(2) (2004) ... 7

### *1 PRAYER

TO THE HONORABLE CHIEF JUSTICE AND
THE ASSOCIATE JUSTICES OF THE
SUPREME COURT OF THE UNITED STATES:

Petitioner herein prays that a Writ of Certiorari issue to the United States Court of Appeals for the Eleventh Circuit to review that court's January 31, 2006 Judgment and Opinion in this proceeding.

### OPINIONS/ORDERS BELOW

The Opinion of the United States Court of Appeals for the Eleventh Circuit entered on January 31, 2006, and from which review is sought is unreported but can be found at 165 Fed.App. 768, is attached as Appendix "A."

The Judgment and Sentence of the United States District Court for the Middle District of Alabama entered on February 23, 2005, from which Petitioner appealed, is attached as Appendix "B."

### JURISDICTION

The Opinion of the United States Court of Appeals

for the Eleventh Circuit was entered on January 31, 2006. This Petition for Writ of Certiorari is within 90 days of that date. The jurisdiction of this Court is invoked under 28 U.S.C. § 1254(1).

### *2 CONSTITUTIONAL PROVISIONS, STATUTES AND RULES INVOLVED

This case arises under the Fifth and Sixth Amendments to the United States Constitution and 18 U.S.C. § 1956(h). The constitutional provisions and statute are reprinted in the Appendix as Appendices "C," "D" and "E."

### STATEMENT OF THE CASE

On May 9, 2003, Wallace Pickett was arrested in Montgomery, Alabama for taking possession of a package mailed from Christiansted, St. Croix, United States Virgin Islands, which had previously been identified by federal law enforcement officials as containing a suspected amount of cocaine. (1R. 25-29, 34-36, 40-43, 137-138.)

Upon custodial interview by federal authorities, Wallace Pickett indicated that he was being supplied with the cocaine by the Petitioner. Wallace Pickett additionally indicated that he paid for the cocaine by United States Postal Money Orders. (1R. 98-100.)

Based on the information obtained from Wallace Pickett, the Petitioner was subsequently charged in a four count federal indictment with conspiracy to distribute and possession with intent to distribute cocaine, distribution of cocaine, mailing injurious materials, and conspiracy to launder monetary instruments in the Middle District of Alabama. The Petitioner was arrested by Deputy United States Marshals in Christiansted, St. Croix, United States Virgin Islands. (Doc. 1.)

On November 1, 2004 through November 3, 2004, the case was tried before a jury, with the Honorable W. Harold *3 Albritton, III, United States District Judge for the Middle District of Alabama, Northern Division, presiding. (1R. 4-182; 2R. 185-284; 3R. 286-292.)

On November 2, 2004, at the close of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 1530523 (U.S.)

Page 4

**(Cite as: 2006 WL 1530523)**

Government's case-in-chief, the Petitioner filed and presented his Motion for Directed Verdict of Acquittal. (2R. 230-234; Doc. 97, pp. 1-3.) The district court denied the Petitioner's Motion for Directed Verdict of Acquittal. (2R. 236-238.) On November 3, 2004, the jury returned a verdict of guilty on Count 4 of the Indictment and did not reach a verdict as to Counts 1 and 2. Count 3 had been previously dismissed by the Government before the start of trial. (3R. 289-290; Doc. 101.) The Government subsequently dismissed Counts 1 and 2 with prejudice after trial. (3R. 291.)

On February 23, 2005, the district court sentenced the Petitioner to serve one-hundred nine months in the custody of the Bureau of Prisons on the conspiracy to launder monetary instruments charge, imposed a supervised release term of three years, and imposed a one-hundred-dollar special assessment. (4R. 54-55; Doc. 126.)

On February 24, 2005, the Petitioner timely filed his Notice of Appeal to the United States Court of Appeals for the Eleventh Circuit. On January 31, 2006, a panel of the Eleventh Circuit consisting of Anderson, Barkett and Hull, Circuit Judges, filed its Opinion and affirmed the judgment and sentence of the district court. This present Petition for Writ of Certiorari followed.

**\*4 REASONS FOR GRANTING THE WRIT**

I. The question of whether acquitted conduct can be used to enhance a sentence that is not authorized by a jury's verdict represents an important question which has not been, but should be, decided by the Supreme Court.

The Petitioner was convicted on Count 4 of the Indictment and was sentenced to a term of one-hundred nine months imprisonment after the district court fully adopted the Presentence Investigation Report of the United States Probation Department, despite the objections proffered by the Petitioner. (4R. 3-56; Doc. 122; Doc. 126.)

In the case at bar, the Petitioner has been essentially acquitted of the alleged drug offenses contained in Counts 1 and 2 of the Indictment. The jury *did not*

find and the Government dismissed the charge, with prejudice, that the Petitioner conspired to distribute and possess with intent to distribute 500 grams or more of cocaine (Count 1). The jury *did not* find and the Government dismissed the charge, with prejudice, that Petitioner aided and abetted in the distribution of cocaine (Count 2).

Despite the jury's verdict and the Government's subsequent dismissals, the district court used the " acquitted conduct" attributed to Counts 1 and 2 of the Indictment to impermissibly enhance the Petitioner's sentence above the statutory maximum.

This Court in *United States v. Watts*, 519 U.S. 148, 150 (1997), addressed whether, under the mandatory sentencing guideline regime, a sentencing judge could consider conduct of which a criminal defendant had been acquitted at trial, using a preponderance of the evidence standard. This Court **\*5** found, "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *Id.* The Eleventh Circuit has adopted this approach in its case law. *See United States v. Duncan*, 400 F.3d 1297, 1304-1305 (11th Cir.), *cert. denied*, 126 S.Ct. 432 (2005); *United States v. Rodriguez*, 398 F.3d 1291, 1300 (11th Cir.), *cert. denied*, 125 S.Ct. 2935 (2005).

It is respectfully submitted that the *Watts* decision is no longer good law when contrasted with recent Supreme Court precedent. The viability of *Watts* was questioned by Justice Stevens' constitutional majority opinion in *United States v. Booker*, 125 S.Ct. 738 (2005). While stating that *Watts* was not inconsistent with the decision in *Booker*, Justice Stevens remarked that *Watts* did not involve "any contention that the sentencing enhancement had exceeded the sentence authorized by the jury verdict in violation of the Sixth Amendment. The issue we confront today simply was not presented." *Booker*, 125 S.Ct. at 754. By this petition, the issue is now squarely before this Court.

This Court's pronouncements in *Booker, Jones, Apprendi, Ring, and Blakely* have essentially eviscerated any remaining vitality of the holding in *Watts*. These cases, in no uncertain terms,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(Cite as: 2006 WL 1530523)**

emphasize that a trial court's determination at sentencing must be guided by the jury-authorized verdict. *Blakely v. Washington,* 124 S.Ct. 2531, 2537 (2004) (invalidating a state mandatory sentencing guideline system and homing that when a judge inflicts punishment that the jury's verdict alone does not authorize, "the jury has not found all the facts which the law makes essential to the punishment … and the judge exceeds his proper authority") (internal citations omitted); *Ring v. Arizona,* 536 U.S. 584, 609 (2002) (holding unconstitutional a sentencing judge's *6 finding of an aggravating circumstance necessary for imposition of the death penalty because it exposed Ring to a greater punishment than authorized by the guilty verdict); *Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000) (invalidating a state "hate crime enhancement" because it doubled the maximum jury-authorized sentence and held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt); *Jones v. United States,* 526 U.S. 227, 251-252 (1999) (concluding that a federal carjacking statute, which delineated imprisonment terms based on the extent of harm required the Government to prove the level of harm to the jury by proof beyond a reasonable doubt).

The holding by the Eleventh Circuit in the case at bar and its controlling precedent makes no sense, is totally illogical and is in complete contravention of the recent jurisprudence of this Court.

A criminal defendant has the absolute right, from eighteenth century England up to this present day in the United States of America, to have a "jury of his peers" decide his fate, either finding him guilty of the offense charged, finding guilt of a lesser included offense or by acquitting him altogether. This right is guaranteed by the Sixth Amendment to the United States Constitution. With the present situation, a prosecutor gets basically "two bites at the apple."

In this case, the Petitioner cannot be held legally responsible for conspiracy with intent to distribute and possess 500 grams or more of cocaine nor with actual possession of 500 grams or more of cocaine because the jury *did not* find these facts. By finding

that the Petitioner was criminally responsible for the "acquitted" conduct alleged in Counts 1 *7 and 2 of the Indictment, the district court violated the Petitioner's right to a jury trial guaranteed by the Sixth Amendment to the United States Constitution. *See Booker; Blakely, supra.* Additionally, more and more federal district courts are now coming to the conclusion that *Watts* is no longer good law and that a district court violates the Sixth Amendment by enhancing sentences in contravention to a jury's verdict. *See United States v. Baldwin,* 389 F.Supp.2d 1, 2 (D. D.C. 2005) (if acquitted conduct could be considered at sentencing, the burden of proof would be proof beyond a reasonable doubt); *United States v. Coleman,* 370 F.Supp.2d 661, 665-673 (S.D. Ohio 2005) (at sentencing, acquitted conduct should always be considered using reasonable doubt standard; otherwise right to jury trial is eviscerated); *United States v. Gray,* 362 F.Supp.2d 714, 721 (S.D.W.Va. 2005) ("The reasoning in *Watts* … was drawn into serious question by the constitutional majority in *Booker.*"); *United States v. Pimental,* 367 F.Supp.2d 143, 150-151 (D. Mass. 2005) (characterizing Justice Stevens' language as questioning *Watts'* underlying proposition).

Since none of the relevant conduct contained in Counts 1 and 2 of the Indictment is attributable to the Defendant, the advisory Sentencing Guideline that should have been consulted is § 2S1.1(a)(2) instead of § 2S1.1(a)(1). As such, the base level offense is eight (8). Since it is uncontroverted by all parties that the Petitioner has a Criminal History Category of I, the Petitioner's sentence should have been in the range of 0-6 months. Since the Petitioner, at the time of sentencing, had already served over nine (9) months in federal detention, he had already served the statutory maximum sentence and should have been released from further custody.

The present case is "ripe" for clarification and decision concerning whether "acquitted conduct" can be used to *8 enhance a sentence in contravention to a jury's verdict when juxtaposed with this Court's recent jurisprudence and the Supreme Court is respectfully invited to resolve this issue.

II. The money laundering statutes cannot be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 1530523 (U.S.)

(Cite as: 2006 WL 1530523)

Page 6

converted into "money spending statutes" to impose criminal liability where none has been created by Congress.

Upon reading the district court's order entered on November 10, 2004, the Petitioner respectfully submits that the district court, and subsequently the Eleventh Circuit, misread the Petitioner's argument concerning his Motion for Judgment of Acquittal.

The Petitioner *has not* argued that he is entitled to an acquittal due to the fact of inconsistent jury verdicts, the Petitioner is arguing that he is entitled to an acquittal due to the fact that since the Government has dismissed the substantive charges (including conspiracy) in Counts 1 and 2 of the Indictment and that the Double Jeopardy Clause of the Fifth Amendment bars their re-prosecution, as a matter of law, there can be no conspiracy to commit money laundering because no *substantive* offense related to any alleged conspiracy to commit money laundering has been found by a jury and/or district court, as to this Petitioner. *See Crist v. Bretz,* 437 U.S. 28, 35-39 (1978). In its order, which has been affirmed by the Eleventh Circuit, the district court has mistakenly held that the Petitioner was convicted by the jury of money laundering. Such is not the case.

The Petitioner was charged in Count 4 of the Indictment with *conspiracy* to launder money derived from illegal drug *9 proceeds (18 U.S.C. § 1956(h))[FN1] *and not* with the substantive offense of money laundering (18 U.S.C. § 1956(a)(1)(A)(i)). That is a distinction with a difference. The money laundering statutes cannot be converted into " money spending statutes" to impose criminal liability where none has been created by Congress. *See United States v. Suba,* 132 F.3d 662, 674-675 (11th Cir. 1998) (discussing money laundering statute); *United States v. West,* 22 F.3d 586, 579-591 (5th Cir. 1994) (discussing elements of money laundering).

> FN1. 18 U.S.C. § 1956(h) reads:
> Any person who *conspires* to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the

commission of which was the object of the conspiracy. (Emphasis added).

Count 1 of the Indictment alleges *conspiracy* to possess with intent to distribute 500 grams or more of cocaine. At trial, the Government alleged "one giant" conspiracy concerning Counts 1 and 4 and has never alleged and/or proved multiple conspiracies. (2R. 254.) Although Counts 1 and 4 of the Indictment did not charge violations of the same statutes, there is significant overlap in the offenses charged. Additionally, this Court is asked to take judicial notice that Count 4 of the Indictment actually references the alleged conspiracy in Count 1 as its "lynchpin." Since the jury could not reach a verdict on Count 1 of the Indictment, the Government dismissed Count 1 "on the merits" (essentially an acquittal of an alleged conspiracy) and the Double Jeopardy Clause of the Fifth Amendment bars its re-prosecution by the Government. Although there is no overlap between the statutory offenses charged in Counts 1 and 4 of the Indictment, those offenses are so interrelated in such a way as to evidence a single conspiratorial agreement. Since the *10 Petitioner was essentially acquitted of conspiracy in Count 1 and Count 4 involves the same conspiracy, the Petitioner is entitled to this Court reversing the judgment of the Eleventh Circuit and the district court and entering a judgment of acquittal on Count 4 pursuant to the Double Jeopardy Clause of the Fifth Amendment. *See, e.g., Blockburger v. United States,* 284 U.S. 299 (1932); *United States v. Moncivais,* 213 F.Supp.2d 704, 706-710 (S.D. Tex. 2001).

The Government must prove beyond a reasonable doubt every fact that constitutes an essential element of the crime charged against the Petitioner. *In re Winship,* 397 U.S. 358, 364 (1970). When considering the sufficiency of the evidence on review, the proper inquiry is not whether the reviewing court itself believes that the evidence established guilt beyond a reasonable doubt but " whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).

Under the *Blockburger, Crist, Winship,* and *Jackson*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 1530523 (U.S.)                                                              Page 7

**(Cite as: 2006 WL 1530523)**

standards, the Government failed to fully carry its burden of proof as it pertains to Count 4 of the Indictment.

CONCLUSION

For the foregoing reasons, Petitioner prays that a Writ of Certiorari issue to review the January 31, 2006 Opinion of the United States Court of Appeals for the Eleventh Circuit.

Armstrong v. United States of America
2006 WL 1530523 (U.S.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

127 S.Ct. 109                                                                                        Page 1

127 S.Ct. 109, 166 L.Ed.2d 32, 74 USLW 3687, 75 USLW 3141, 75 USLW 3022, 75 USLW 3164
**(Cite as: 127 S.Ct. 109)**

**H**
Armstrong v. U.S.
U.S.,2006

> Supreme Court of the United States
> Neal Roman ARMSTRONG, Sr., petitioner,
> v.
> UNITED STATES.
> **No. 05-1548.**

> Oct. 2, 2006.

Case below, 165 Fed.Appx. 768.

Petition for writ of certiorari to the United States
Court of Appeals for the Eleventh Circuit denied.

U.S.,2006
Armstrong v. U.S.
127 S.Ct. 109, 166 L.Ed.2d 32, 74 USLW 3687, 75
USLW 3141, 75 USLW 3022, 75 USLW 3164

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



GOVERNMENT
EXHIBIT
E

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| NEAL ROMAN ARMSTRONG, SR. | § | CIVIL ACTION NO. 2:07-cv-689-WHA |
| | § | |
| VS. | § | |
| | § | |
| UNITED STATES OF AMERICA | § | |

## DECLARATION OF
## JOSEPH R. WILLIE, II, D.D.S., J.D.

My name is Joseph R. Willie, II, D.D.S., J.D. I was the trial and appellate counsel

for the Petitioner, Neal Roman Armstrong, Sr. I have read the Petition for Writ of Habeas

Corpus concerning the above-entitled and numbered cause and I am now responding to

the Court's inquiry.

The record will reflect that the issue raised in Ground One was addressed by

proper objections at trial, including taking witnesses on *voir dire* to preclude prejudicial

testimony and evidence from being proffered to the jury concerning the conspiracy to

commit money laundering count of the Indictment. Additionally the issue was raised on

direct appeal to the Eleventh Circuit and in a Petition for Writ of Certiorari to the

Supreme Court of the United States.

Ground Two of the petition was subsumed and included in trial counsel

arguments that the district court could not impose sentence enhancements not authorized

by the jury's verdict. This would include any obstruction of justice enhancement found



GOVERNMENT
EXHIBIT
F

by the district court. Counsel made the proper *Blakely* and *Booker* arguments at trial, on direct appeal and in the Petition for Writ of Certiorari.

As to Ground Three, the testimony of Timothy Sewell took place at the Sentencing Hearing and not at trial on the merits. Mr. Sewell's testimony had no bearing on the conspiracy to commit money laundering count in the Indictment. A careful reading of the record reveals that Mr. Sewell's testimony basically showed that Irving Johnson was trying to extort money from the Petitioner and not for any alleged hit. To this date, I still believe Mr. Sewell testimony not to be credible and any attempt to impeach Mr. Sewell would tend to enhance his credibility. That is the reason I did not cross-examine Mr. Sewell. If the same opportunity presented itself today, I would make the same decision.

Ground Four basically raises the same issues in Grounds One and Two. Contrary to the Petitioner's allegations, he was informed as to the progress of his case and the status of his appeal. Revisionist history on the part of the Petitioner does not equate to ineffective assistance of counsel.

At the end of the trial, counsel asked Judge Albritton to critique his performance. Judge Albritton stated that counsel performed excellently and that he was welcomed in his court at ant time. My representation of the Petitioner never fell below the standards as set out in *Strickland* and *Cronic*.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of

the United States of America that the foregoing is true and correct.


Executed on: _8/22/07_

Joseph R. Willie, II, D.D.S., J.D.


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was
served, Certified Mail, Return Receipt Requested, to Neal Roman Armstrong, Sr.
#07406-094, FCC Yazoo City-Low, P.O. Box 5000, Yazoo City, Mississippi 39194-
5000, on the 22nd day of August, 2007, and by using the CM/ECF system on the 22nd day
of August, 2007, which will send notification of such filing to the following:

Susan R. Redmond, Esquire
Assistant United States Attorney

Todd A. Brown, Esquire
Assistant United States Attorney

Joseph R. Willie, II, D.D.S., J.D.