IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

NEAL ROMAN ARMSTRONG,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

_____/

Case No.  2:07cv689-WHA/CSC
             2:04cr-84-WHA/CSC

## NEAL ROMAN ARMSTRONG'S REPLY TO THE UNITED STATES' RESPONSE TO ARMSTRONG'S SECTION 2255 MOTION

COMES NOW Neal Roman Armstrong, pro se, and respectfully files this reply to the United States' Response to Armstrong's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, as follows:

### I.  PROCEDURAL HISTORY

On May 5, 2004, a grand jury for the Middle District of Alabama returned a four-count indictment against Armstrong and Roderick Perkins.  Perkins pleaded guilty prior to trial and agreed to testify against Armstrong in exchange for a substantial-assistance-to-law-enforcement reduction of sentence.  Armstrong, however, pleaded not guilty and proceeded to trial.  The United States voluntarily dismissed Count 3 of the indictment against Armstrong and the jury could not  reach a unanimous decision on Counts 1 and 2.  Armstrong was convicted by the jury only on Count 4.  Thus, the United States moved the District Court to dismiss Counts 1 and 2.

Count 4 of the indictment charged that, from an unknown date, but commencing at least as early as the month of April 2003 and continuing up to and including the month of May 2003, the defendants did knowingly and willfully combine, conspire, and confederate with each other, Wallace Pickett,[1] and with other persons, known and unknown to the grand jury, to knowingly conduct, attempt to conduct, and cause to be conducted, financial transactions affecting interstate commerce, to wit: the mailing of United States Postal Money Orders with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1), as charged in Counts 1 and 2, with the intent to promote the carrying on of a specified unlawful activity, all in violation of 18 U.S.C. § 1956(h).

Counsel for Armstrong, Joseph R. Willie, II, D.D.S., J.D., argued on several occasions that Armstrong ought to be acquitted because he neither attempted to "conceal or disguise" the nature and/or source of the money orders he received "nor engaged in any activity to avoid a transaction reporting requirement." § 2255 Memorandum of Law at 4 (quoting Doc. 97 at 1-2; and citing Trial Tr., Vol. II, at 230-34, 236, 237-38). This Court admonished counsel about confusing subsection (a)(1)(A)(i) of 18 U.S.C. § 1956 with subsection (a)(1)(B)(i) and (B)(ii).

---

[1] Wallace Pickett was the first to be arrested in connection to this case. He was also the first to plea guilty and agreed to cooperate with law enforcement for a substantial-assistance-reduction of sentence. As a result of his cooperation, Perkins and Armstrong were arrested. Both Pickett and Perkins testified against Armstrong at his trial.

Counsel filed an appeal to the Eleventh Circuit attacking the charge, conviction, and sentence with the same argument he advanced in the District Court and which the District Court had rejected based on established precedent.  Counsel argued that: (A) "there is no evidence to show that the Defendant ever presented to any financial institution any sums of currency to conceal or disguise its nature and/or source nor is there any evidence that the Defendant engaged in any activity to avoid a transaction reporting requirement."  Gov't Ex. A (Brief of Appellant) at 6; see Gov't Ex. B (Brief of Appellee) at 14; and Gov't Ex. C (Slip Opinion of the Eleventh Circuit) at 6-7; and (B) "By finding that the Defendant was criminally responsible for the [acquitted] conduct alleged in Counts 1 and 2 of the Indictment, the district court violated the Defendant's right to a jury trial guaranteed by the Sixth Amendment."  Gov't Ex. A at 12 (citing United States v. Booker, 543 U.S. 220, 160 L.Ed.2d 621, 125 S.Ct. 738 (2005), and Blakely v. Washington, 542 U.S. 296, 159 L.Ed.2d 403, 124 S.Ct. 2531 (2004)).

The Eleventh Circuit, like this Court, admonished counsel about his misguided attempt to substitute the legal requirements of 18 U.S.C. § 1956(a)(1)(B)(i) and (B)(ii) with that of § 1956 (a)(1)(A)(i).  See United States v. Armstrong, 165 Fed.Appx. 768, 771 & n.2 (11th Cir. 2006); Gov't Ex. C at 6-7 & n.2 (where the Eleventh Circuit held that:  "While concealment is an element of 18 U.S.C. § 1956(a)(1)(B)(i), Armstrong was convicted of conspiracy to violate 18 U.S.C. § 1956(a)(1)(A)(i).  Concealment is not an element of 18 U.S.C. § 1956(a)(1)(A)(i)).  Despite that, counsel would submit those same misguided claims to the

3

Supreme Court in petition for a writ of certiorari which Armstrong rejected and instructed counsel not to file, and, after counsel defiantly filed it, to withdraw it. That matter is pending with the Texas Bar Association (see attached Texas Bar file) to which Armstrong has made a formal complaint about counsel's behavior.

Though the Supreme Court had granted Armstrong's pro se motion for extension of time on April 28, 2006, extenting the time to file his petition until June 30, 2006 (Sup.Ct. Application No. 05A938), and though Armstrong had instructed counsel to send Armstrong's case file because he was going to file his certiorari pro se, counsel did not send the file to Armstrong, but hurriedly filed a petition with the Supreme Court on May 1, 2006. Because Willie had remained counsel of record, the Supreme Court returned Armstrong's pro se petition timely filed at a later date. Thus, the § 2255 Motion presented the first opportunity that Armstrong gotten to present these issues to the Court. His pro se certiorari was attached in support of his first ground in the § 2255.

## II.  RELEVANT FACTS

### 1.  Counsel's Misunderstanding of the Law

The testimony at trial, the evidence submitted by the United States in its case-in-chief, and in all its pleadings thereafter, alleged that Pickett sent the money in question to Armstrong to pay for cocaine. Armstrong, 165 Fed.Appx. at 769-770; Doc. 132 at 2-3; §2255 Motion at 5; Memorandum of Law at 3, 4-7. No evidence was submitted indicating that Armstrong conducted or attempted to a financial transaction with the intent to promote the carrying on of the specified unlawful activity as required

4

under 18 U.S.C. § 1956(a)(1)(A)(i) and charged in Count 4 of the indictment. Nevertheless, counsel argued a defense under § 1956(a)(1)(B)(i) and (B)(ii), thus, leaving the actual charge undefended. As shown, ante, at pages 2-4, this Court admonished counsel about submitting the wrong defense, but counsel stubbornly continued to advance his misguided defense in the higher courts.

## 2. Counsel's Failure to Cross-examine the Key Aggravating Witness

The PSI recommended a two-level enhancement of Armstrong's sentence for an alleged obstruction of justice. See PSI at ¶¶ 15, 22; § 2255 Motion at 6-7; and Memorandum of Law at 8-9. At sentencing, two of his former cellmates, Irvin Johnson and Timothy Sewell--both convicted felons, cooperating with law enforcement for a substantial-assistance-reduction of sentence, in their own separate and unrelated cases--were called by the government to testify against Armstrong concerning the alleged obstruction of justice. This obstruction  allegation was the absolute concoction of the two witnesses. See PSI at ¶¶ 15, 22.

The first to testify was Johnson. His bizarre and incredible story about being paid $35.00 by Armstrong--while Johnson was in Montgomery City jail with Armstrong--to kill Wallace Pickett, who was in Elmore County jail, and his brother "Tim Pickett" were shattered on cross-examination.  See § 2255 Motion at 8; Memorandum of Law at 9-10; Armstrong's Affidavit at ¶¶ 10-15. However, when Sewell got on the stand and related a more calculative and damaging story that corroborated some of

5

Johnson's story and seemed more persuasive, counsel failed to cross-examine Sewell or otherwise pointed out the inconsistencies in his story. This Court would accept Sewell's testimony and, as far as it was corroborated by Sewell, Johnson's testimony as true because Sewell's testimony was uncontested. See § 2255 Motion at 8. For example, counsel could have pointed out that:

a. Johnson testified that "I **didn't even know Mr. Pickett**," Sentencing Tr. at 28 (emphasis added); but shortly thereafter Sewell testified that Johnson told Armstrong that, "**Yeah, I (Johnson) know Wallace Pickett and Tim Pickett . . . , he didn't like him [] and for the right price he would vamoose with him.**" Id. at 35 (emphasis added); see § 2255 Motion at 6-7; Memorandum of Law at 10; Affidavit at ¶¶ 14-16.

b. Sewell testified that Armstrong paid Johnson with a money order (allegedly the $35.00 money order) and that Johnson told Sewell Armstrong was "**supposed to give me some more money**," but "**what happened was Mr. Johnson goes home.**" Sentencing Tr. at 38-39 (indicating that Johnson was given the $35.00 to kill the Picketts before he went out on bond in August 2004). However, Postal Inspector J.D. Tynan testified, holding the documented proof in his hand, that the $35.00 money order sent to Johnson from the Virgin Islands came on October 13, 2004. Id. at 43-44; see Memorandum of Law at 10-13; and Affidavit at ¶¶ 16-18.

c. Sewell testified that Johnson was extorting Armstrong and had similarly attempted to extort Sewell. See Sentencing Tr. at 39-41; § 2255 Memorandum of Law at 11-12; Affidavit at ¶¶ 4-6, 8-9. None of this was brought to the Court's attention by counsel.

### III.     GROUNDS FOR RELIEF

Armed with the foregoing facts, the facts alleged in his § 2255 Motion, Memorandum of Law, Affidavit, and the Attachment, Armstrong submitted the following grounds for relief:

**Ground One:     A  Transaction That Pays for Illegal Drugs not Constitute Money Laundering Under 18 U.S.C. §§ 1956(h), 1956(a)(1)(A)(i)**

The government alleged and presented evidence that Armstrong "endorsed and signed for five money orders totalling $5,000, which had been purchased by Pickett and Perkins on April 15, 2003," and sent to Armstrong in "exchange for cocaine." Trial Tr., Vol. II, at 235, 240, 242, 244, 254; Vol. I, at 110-11, 116, 119; Vol. I, at 63-64, 69, 85; and Vol. II, at 119 ("Q.  And what was the purpose of the money orders going to the Virgin Islands?  A. To purchase narcotics."). Particularly, when the government asked: "Q.  Mr. Perkins, do you know how the deal would work between Montgomery and the Virgin Islands in respect to the drugs coming in and the money going out?  How would that work?" Vol. I, at 69.  Perkins answered: "A.  The money would go out before the drugs would be sent off." Id. On May 9, 2003, Pickett was arrested when he went to pick up the cocaine in Montgomery.

The money had allegedly went to pay for the cocaine that got intercepted.  Thus, "a transaction to pay for illegal drugs is not money laundering, because the funds involved are not proceeds of an unlawful activity when the transaction occurs, but become so only after the transaction is completed." United States v. Gaytan, 74 F.3d 545, 555-56 (5th Cir. 1996), cert. den., 519

1006, 136 L.Ed.2d 397. 117 S.Ct. 506 (1996).  Though the Eleventh Circuit has addressed this aspect of money laundering concerning illegal drugs, it did so on slightly different grounds, and arrived at the same conclusion.  See United States v. Calderon, 169 F.3d 718, 721-23 (11th Cir. 1999)(reversing money laundering convictions because there was "no evidence indicating how the money was to be spent," and "that Appellant's conduct furthered the alleged underlying narcotics trafficking.").

That an underlying criminal offense has to be completed before it can generate proceeds to be laundered seems to hold firm in cases other than illegal drug cases in this Circuit as well as other circuits.  See, e.g., United States v. Christo, 129 F.3d 578 579-80 (11th Cir. 1997)(reversing money laundering convictions that were base on the same transmission of funds as the underlying crimes of bank fraud, the Court noted that "[t]he main issue in a money laundering charge, therefore, is determining when the predicate crime becomes a 'completed offense' after which money laundering can occur"); United States v. Malone, 484 F.3d 916, 921-22 (7th Cir. 2007)(explaining that the "act of paying a criminal operation's expenses out of gross income is not punishable as a transaction in proceeds under § 1956(a)(1) (A)(i)."); United States v. Awada, 425 F.3d 522, 524 (8th Cir. 2005)(holding that "[t]he transaction or transactions that created the criminally-derived proceeds must be distinct from the money-laundering transaction, because the money laundering statutes criminalize 'transaction[s] in proceeds, not the transaction[s] that create[] the proceeds'")(alteration in original)(quoting

8

United States v. Seward, 272 F.3d 831, 836 (7th Cir. 2001)); United States v. Parker, 364 F.3d 934, 948 (8th Cir. 2004)(agreeing with United States v. Jolivet, 224 F.3d 902, 909-10 (8th Cir. 2000)( reversing § 1956(a)(1)(A)(i) conviction where government presented no evidence that illegal proceeds, once deposited, were spent in furtherance of illegal scheme)(citing Calderon, 169 F.3d at 722; and, among other citations omitted here, Maura E. Fenningham, Note, A Full Laundering Cycle is Required:  Plowing Back the Proceeds to Carry on Crime is the Crime Under 18 U.S.C. § 1956(a) (1)(A)(i), 70 Notre Dame L.Rec. 891, 938 (1995); United States v. Dovalina, 262 F.3d 472, 476 (5th Cir. 2001)("A promotion money laundering offense cannot be established merely by evidence of a single buyer's repeated payments to a distributor.").

In this case, there is no evidence that the charged financial transaction conducted by Armstrong, receiving $5,000 in money orders, was a financial transaction conducted "with the intent to promote the carrying on of specified unlawful activity." The problem with the government's position is that it ignores the **intent** aspect of the promotion element of § 1956(a)(1)(A)(i) and this Circuit's precedent indicating that the transmittion and/or receipt of funds that pay for the product which became the under-lying offense is not punishable as a transaction in proceeds because the "predicate crime" then did not become a "completed offense after which money laundering can occur." Christo, 129 F.3d at 579-80; see Gaytan, 74 F.3d at 555-56 (holding that "a transaction to pay for illegal drugs is not money laundering, because the funds involved are not proceeds of an unlawful activity [until] after the transaction is completed").

Section 1956(a)(1)(A)(i) is not satisfied by a showing that a financial transaction involving the proceeds of specified unlawful activity merely promoted the carrying on of unlawful activity, even if the government had shown that in this case. The provision has a specific intent element: The government must show that the "dirty money" transaction was conducted "with the intent to promote the carrying on of specified unlawful activity." *United States v. Brown*, 186 F.3d 661, 670 (5th Cir. 1999):

> This element is not satisfied by mere evidence of promotion, or even knowing promotion, but requires evidence of **intentional** promotion. By contrast, § 1956(a)(1)(B), the money laundering provision applicable to "concealment" transactions, requires only knowing concealment, indicating that Congress intended a stringent **mens rea** requirement for promotion money laundering. Thus, absent some evidence that a dirty money transaction that in fact promoted specified unlawful activity was conducted **with intent** to promote such activity, a defendant may not be convicted of promotion money laundering under § 1956(a)(1)(A)(i).

*Ibid.* See *United States v. Edgmon*, 952 F.2d 1206, 1213-14 (10th Cir. 1991)(holding that the government must prove that the defendant knowingly used the proceeds of unlawful activity in a separate financial transaction with the intent to promote such activity because "Congress aimed the crime of money laundering at conduct that follows in time the underlying crime rather than to afford an alternative means of punishing the prior 'specified unlawful activity'"); *Dovalina, supra*, 262 F.3d at 476.

Because receiving payment alone, even if for illegal drugs, is not money laundering under 1956(a)(1)(A)(1), Armstrong is currently imprisoned for an act that was not a crime, therefore, his conviction on Count 4 is invalid.

10

<u>Ground Two:</u>  **The Evidence of Obstruction of Justice Considered By the Court was Unreliable, The Resulting Aggravated Sentence Unreasonable, and the Procedure Employed by the Court Unconstitutional**

The facts concerning this issue demonstrates that both Sewell and Johnson concocted their story simply to obtain favors from the United States.  The falsity was obvious; their story materially inconsistent; and the application of a two-level enhancement of Armstrong sentence based on these witnesses false testimony was constitutionally unreasonable.

The law of this Circuit clearly provides that only reliable evidence can be considered during sentencing.  <u>See United States v. Zlatogur</u>, 271 F.3d 1025, 1031 (11th Cir. 2001)(citing <u>United States v. Wilson</u>, 183 F.3d 1291, 1301 (11th Cir. 1999)(holding that "[a] court may consider any information (including hearsay), regardless of its admissibility at trial, in determining whether factors exist that would enhance a defendant's sentence, **provided that the information is sufficiently reliable.**")).  The evidence given at sentencing was clearly false and, therefore, could not be **sufficiently reliable** as required by the Eleventh Circuit.  A district court may only rely on evidence at sentencing that has "**sufficient indicia of reliability,**" <u>United States v. Anderton</u>, 136 F.3d 747, 751 (11th Cir. 1998)(per curiam), <u>cert. denied</u>, 525 U.S. 1126, 119 S.Ct. 913, 142 L.Ed.2d 911 (1999), "to support its probable accuracy," U.S.S.G. § 6A1.3.

The evidence considered by the district court in this case has no **indicia of reliability** and its accuracy is improbable, because, not only has the two storytellers contradicted themselves

11

and each others over and over again, they testified contrary
to the documented evidence of Inspector Tynan. Nevertheless,
though Armstrong was given "an opportunity to rebut the evidence,"
Zlatogur, 271 F.3d at 1031, his defense counsel never took that
opportunity to rebut Sewell's testimony. (Hence, counsel's
effectiveness is questioned in the following issues). As shown
in the facts, ante, at 5-6, Sewell's testimony is no more credible
than that of Johnson and both are incredibly false. Although
Sewell was the more articulated of the two concocters, his
calculative testimony nonetheless contradicts the only documented
evidence concerning the alleged murder-for-hire: the $35.00
money order. Sewell testified that Johnson received this **$35.00
money order as downpayment before his release on bond in August
2004.** Notwithstanding the ridiculousness of $35.00 being advanced
to murder two men, "Wallace Pickett and Tim Pickett," as testified
to by Johnson, Inspector Tynan testified and produced a document
indicating that the $35.00 was sent in October 2004; and this "Tim
Pickett" has no connection whatsoever with Armstrong's case.

### a.  The United States Response to the Two Foregoing Issues

The government paraphrases the two foregoing issues, see
United States Response at 3,6,7, and argues that "Armstrong is
not entitled to relief on those claims that he did not raise
at or prior to trial, conviction and sentencing, **but could
have.**" Id. at 5 (emphasis added). The "but could have" argument
is a testament to counsel's ineffectiveness: a remedy that cures
a defendant's failure to raise an issue from procedural default.

**12**

That is because, where counsel was responsible for raising the issue in the first place, the defendant cannot be required to "bear the risk of attorney error that result[ed] . . . [in a] procedural default." Coleman v. Thompson, 501 U.S. 722, 752, 115 L.Ed.2d 640, 111 S.Ct. 2546 (1991); see also id., at 753-754; Murray v. Carrier, 477 U.S. 478, 488, 91 L.Ed.2d 397, 106 S.Ct. 2639 (1986). The government cites McCoy v. United States, 266 F.3d 1245, 1258 (11th Cir. 2001), and Mills v. United States, 36 F.3d 1052, 1055-56 (11th Cir. 1994), for its argument that Armstrong issues ante are procedurally barred. In neither case did the petitioner raise the issue, infra, of ineffective counsel as cause for the default. Furthermore, Armstrong is factually innocent of the money laundering charge and the obstruction of justice sentence enhancement, and therefore, he has demonstrated both "cause" and "prejudice," and that he is actually innocent. Bousley v. United States, 523 U.S. 614, 622-23, 140 L.Ed.2d 828, 118 S.Ct. 1604 (1998)(cited by the government). Thus, both McCoy and Mills are distinguished.

The government's claim of procedural default must fail because there was nothing else that Armstrong could have done, as a practical matter, to present those issues to the courts for decision on the merits until he did so in his pro se certiorari (which was obstructed by counsel and thereby rejected by the Supreme Court without review), and now in his § 2255 Motion. In regard to the claimed default, Armstrong's counsel was not acting as his "agent" and therefore any default is to be excused. Coleman, 501 U.S. at 753; see United States v. Frady, 456 U.S.

**13**

152, 167-68, 71 I.Ed.2d 816, 102 S.Ct. 1584 (1982); Prou v. United
States, 199 F.3d 37, 41, 49-50 (1st Cir. 1999)(where counsel was
the same at trial, sentencing and on direct appeal, issues that
would have been otherwise procedurally defaulted because defendant
fail to object, his counsel's ineffectiveness in that failure
could constitute cause sufficient to excuse such default).

        As for prejudice, Armstrong has shown that but for counsel's
misunderstanding of the relevant law concerning the specify sub-
section of the money laundering statute that was charged, and for
his failure to point out the confirmed false testimony of Sewell,
Armstrong would not be convicted, or the Court would have granted
his motion for a judgment of acquittal, notwithstanding verdict,
or he would not have been sentenced to an additional 19-24 months
imprisonment.  Prejudice is presumed from an avoidable imprisonment.

        The government finally argues that counsel had indeed
raised those issues on direct appeal, see United States' Response
at 6-8; and counsel shamelessly attests to having raised them,
see Willie's Declaration (Gov't Ex. F).  Neither is supported by
the facts.  It is undeniable that counsel never objected to the
money laundering charge under 18 U.S.C. § 1956(a)(1)(A)(i) with
which Armstrong was charged.  See ante at 2-5; 165 Fed.Appx. at
771, n.2; Doc. 97 at 1-2; Doc. 132 at 7, n.2; Gov't Exs. A,B,C,
supra.  Nowhere in the record can it be found where counsel
attacked the charged offense under §1956(a)(1)(A)(i) and neither
counsel reference any such record.  Similarly, there is nowhere
in the record that counsel attacked Sewell's testimony in the
district court or challenged the reliability of the obviously

**14**

false testimony that brought about the enhanced sentence for obstruction of justice on direct appeal.  Understandably, neither counsel indicate where in the record to find either of those issues.  There is no such record nor no such place in the record.

Indeed, in the instances that the United States referenced page numbers to support its claim, those references refute the claim.  On page 7 of its response, the United States states that:

> Armstrong is misguided, as the Eleventh Circuit pointed out to him in it's [sic] Judgment.  See Attachment [Gov't Ex.] "C" at 7-8 stating, "Contrary to Armstrong's argument, "[a defendant's] personal involvment in, or guilt of, the [underlying drug activity] is not an element of the money laundering charge he was convicted of in this case."  United States v. Magluta, 418 F.3d 1066, 1174 (11th Cir. 2005).

Obviously, the United States is confusing Armstrong's pro se issues with those of counsel's--which Armstrong is critizing as been inapposite.  In fact the argument of counsel for the United States and the Eleventh Circuit's opinion support, if not entirely prove, Armstrong's position that his issues here were never raised before.

Another instance where the government cites pages of the record to support its objection to Ground 2 of the § 2255 Motion, see United States' Response at 7 (citng Gov't Ex. "C" at 4-5 and 8 to show that the Eleventh Circuit had mentioned the obstruction of justice enhancement), the referenced pages merely demonstrate a recitation of the facts and only addressed counsel's misguided claim that "the use of extra-verdict enhancements" based on "acquitted conduct" violated Armstrong's Sixth Amendment rights, respectively.  Accordingly, the government's response should be dismiss, as its claims are unsupported by facts and precedent.

**15**

**Ground Three:**   **Counsel was Ineffective for not Properly Attacking the Money Laundering Charge and for not Cross-examing Timothy Sewell.**

The government combines this two-part ground and the following two-part ground into one issue, see United States' Response at 8-10, and concludes that: "As to each of his claims of ineffective assistance of counsel, Armstrong has failed to plead facts sufficient to demonstrate that he was prejudiced by any of his counsel's actions." Id. at 10.  Counsel for the United States is clearly wrong.  The facts herein, as was first delineated in his pro se certiorari (Attachment to his § 2255 Motion) at 4-10, his Memorandum of Law in Support of the § 2255 Motion at 4-13, and in Armstrong's Affidavit, is sufficient to support Armstrong's argument herein and in the above-listed documents that had his counsel raised the issues presented "the result of the proceedings would have been different." Strickland v. Washington, 466 U.S. 668, 689, 694, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984).

**a.  Counsel Attacked the Wrong Charge in the District Court**

As the facts has clearly shown, it is undisputed that his counsel misguidedly attacked the wrong subsection of the statute with which Armstrong was charged.  See ante at 2-5.  Had counsel mounted correct defense under the correct subsection of the statute, precedent has shown that Armstrong could have and might have prevailed.  See ante at 7-10.  Where counsel has failed to understand the relevant law and thereby abandoned a potentially forceful defense in favor of exclusive reliance on a misguided

16

theory which the judge had rejected twice and pointed out its fallacy, and counsel had continued to present same irrelevant defense in a manner which clearly alienate the courts, counsel was undeniably ineffective.    Cf. Wade v. Calderon, 29 F.3d 1312, 1325 (9th Cir. 1994); United States v. Montoya, 945 F.2d 1068, 1076 (9th Cir. 1991)(stating that subsection's (A)(i) and (B)(i) are set forth in the disjunctive and "are aimed at different activities")(citing United States v. Jackson, 935 F.2d 832, 842 (7th Cir. 1991).    Counsel's errors in mounting a defense under the wrong subsections of the statute, arguing that acquitted conduct could not be used and, if used, it violated the Double Jeopardy Clause--in light of established precedents to the con-trary--was ineffective assistance under Strickland.    Because it was not, and cannot be said to be, a strategic decision to forego one defense in favor of another, "'[t]hey were the result of a misunderstanding of the law.'"    Lankford v. Arave, 468 F.3d 578, 584 (9th Cir. 2006)(quoting United States v. Span, 75 F.3d 1383, 1390 (9th Cir. 1996).    A lawyer who misunderstood relevant law did not assist his client.

## b.  Counsel Failure to Cross-examine the Aggravating Witness

It is undisputed that counsel never cross-examined Sewell at sentencing and that based upon his silence, the Court accepted Sewell's testimony as uncontested truth.    See facts, ante, at 5-6, argument, ante, at 11-12.    Counsel now states in a declaration submitted by the United States as Gov't Ex. F, that he "still believe Mr. Sewell's testimony not to be credible and any attempt

17

to impeach Mr. Sewell would tend to enhance his credibility."
Govt.Ex. F at 2.  This admission of counsel demonstrates counsel's
incompetence to the fullest.  Counsel had cross-examined Johnson
before Sewell gave his testimony.  Johnson's story fell apart
under cross to the extent that only where it was corroborated by
Sewell's uncontested testimony, it was believed by the Court.
Besides, only through cross-exam of the witness and argument of
counsel that the Court would have been obligated to decipher the
lies and inconsistencies buried in the witnesses' testimony.
Therefore, it is not what counsel believe, as any competent lawyer
would know, but what the Court believe.  A court has all the
right to infer that an uncontested testimony is true or otherwise
opposing counsel would have challenged it.

Further demonstrating his incompetence, counsel declares
that:  "If the same opportunity presented itself today, I would
make the same decision."  Id.  That being said in light of the
fact that it was Sewell's uncontested testimony that the Court
found credible and only credited Johnson's testimony in the areas
where it was corroborated by Sewell to sentence Armstrong to an
additional 19-24 months in prison.  Both the government and
Armstrong's counsel now claim that the decision not to contest
Sewell's testimony was tactical.  If so, this Court will agree
that counsel did not make a **reasonable** "strategic decision" to
foregoing bring the Court's attention to the mass inconsistencies
in Sewell's testimony.  Jackson v. Herring, 42 F.3d 1350, 1367
(11th Cir. 1995); Nixson v. Newsome, 888 F.2d 112, 116 (11th Cir.
1989)(perceiving no excuse for failure to impeach).

18

## c. Prejudice Suffered From Counsel's Ineffective Assistance

As is now familar, in order to be entitled to relief, the habeas petitioner must satisfy both prongs of Strickland's two-part test. Armstrong has already shown that counsel was constitutionally ineffective for defending the wrong subsection of the money laundering statute and thereby leaving the actual charge undefended, and **not** impeaching Sewell with the glaring and crucial discrepancies between Johnson, Sewell and Tynan's testimony at sentencing. See Lankford, 468 F.3d at 584; Jackson, 42 F.3d at 1367.

That is so because, though counsel's conduct at trial may have been otherwise creditable, his failure to inform himself of the most fundamental element of the offense with which his client was charged fell well below the level of reasonable professional assistance that the Sixth Amendment guarantees. Attorney Willie's neglect to read the statute and discern its obvious level of mental culpability is an error unjustified by prevailing professional norms. This is an error at the fundamental level of effective advocacy. Therefore, this Court should agree with Armstrong and find Willie's conduct outside of the range of professional competent assistance. See Oyola v. Bowers, 947 F.2d 928, 930-31 (11th Cir. 1991)(finding "that trial counsel's failure to inform himself of the fundamental elements of the offense with which Oyola was charged fell below the level of reasonable professional assistance that the Sixth Amendment guaranteed"); United States v. Castro, 26 F.3d 557, 561 (5th Cir. 1994)(such a failure "was not a strategic choice" because "a failure to investigate the applicable law of a case cannot be

**19**

considered adequate under prevailing norms of professional com-
petency). Had it not been for counsel's incompetency and the
defense raised in Ground One was mounted in the district court,
Armstrong would not have been convicted or this Court would have
granted his motion for acquittal notwithstanding the verdict,
even if found guilty by the jury. Thus, the prejudice prong of
Strickland is also met.

Similarly for the obstruction of justice issue. This Court
should "have no difficulty concluding that the attorney's actions
were not within the wide range of professional competence."
Nixon, 888 F.2d at 115. This Court should "perceive no excuse
for the failure to impeach" Sewell with Johnson and Tynan's
testimony. Id. at 116 (conforming Murray v. Carrier, 477 U.S. at
496 ("the right to effective assistance of counsel . . . may in
a particular case be violated by even an isolated error of counsel
if the error is sufficiently egregious and prejudicial."). To
hold here that "strategy" justified Willie's decision not to
impeach Sewell "would be to make a mockery of the word." Miller
v. Martin, 481 F.3d 468, 473 (7th Cir. 2007)(also holding that
counsel's "total dereliction at sentencing 'invites application
of Cronic, rather than Strickland,' and prejudice may be presumed")
Therefore, "there is a reasonable probability that the outcome
of the [sentencing] would have been different if [Sewell] had
been impeached with [ the testimony of Johnson and Tynan]." Nixon,
888 F.2d at 117.

Armstrong, therefore, has met both prongs of the Strickland
test. Accordingly, his sentence should be vacated for resentencing
without the enhancement.

20

**Ground Four:** **Counsel was Ineffective for not Raising the Proper Money Laundering Issues Nor Arguing the Obstruction of Justice Enhancement Issue on Direct Appeal, as any Competent Attorney Would Have Done Given the Facts of This Case.**

As shown in his § 2255 Motion and reiterated in the facts and argument ante, it is undisputed that counsel never defended the money laundering charge under 18 U.S.C. § 1956(a)(1)(A)(i), as Armstrong was charged, but did so under § 1956(a)(1)(B)(i) & **(B)(ii)**. Counsel mounted same attack in the Court of Appeals, as he did in the District Court only to be admonished by the Eleventh Circuit, as did this Court, for attacking wrong elements of the statute. Nonetheless, counsel never changed his tack; he never replied to the government's brief--which states that counsel was making the same meritless attack on an offense that was not charged in this case and for which the district court had already admonished him from doing; and never informed Armstrong about any aspect of the appeal, despite his requests. (The latter is an ongoing event with the Texas Bar Association, a copy of the filing is attached here).

It is undeniable that counsel never contested Sewell's testimony concerning the obstruction of justice nor raise the issue on direct appeal, as shown ante. Counsel was therefore ineffective for not raising either claim on direct appeal.

The Eleventh Circuit has held that the same Strickland standard for examining the performance of counsel at the trial level applies on the appellate level. Eagle v. Linahan, 268 F.3d 1306, 1317 (11th Cir. 2001). "To demonstrate that his appellate counsel rendered deficient representation, [Armstrong] must

**21**

show that [his] performance 'fell below an objective standard
of reasonableness.' Strickland, 466 U.S. at 687, 104 S.Ct. at
2064." Eagle, 268 F.3d at 1318. In light of the foregoing issues
in Ground One and Two, and the lineup of circuits' precedent,
including this Circuit, reversing similar grounds, Armstrong re-
asserts that counsel was indeed ineffective for omitting these
issues on direct appeal. Distinguishing Johnson v. Alabama, 256
F.3d 1156, 1188 (11th Cir. 2001), counsel here has not carefully
considered the claims now raised in the § 2255, he chose to winnow
out claims which were most likely to prevail and pursue all the
arguments already shown to be inapposite to Armstrong's case.

    "To determine whether the failure to raise a claim on appeal
resulted in prejudice," Eagle, 268 F.3d at 1322, the court must
'review the merits of the omitted claims." Ibid. If the Court
conclude that the omitted claims would have a reasonable probability
of success, then counsel's performance was necessarily prejudicial
because it affected the outcome of the appeal. Id. (citing Cross
v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990). It is
clear that Armstrong's non-offense-violation under 18 U.S.C. §
1956(a)(1)(A)(i) and unreliable obstruction-of-justice evidence
under U.S.S.G. §§ 3C1.1, 6A1.3 claims would have succeeded on
appeal. "There can be no doubt, then, that counsel's decision
to omit [these claims from Armstrong's] brief undermines confidence
in the outcome of [his] direct appeal sufficient to satisfy the
prejudice prong of Strickland." Eagle, at 1322; see United States
v. Mannino, 212 F.3d 835, 845 (3rd Cir. 2000)(finding prejudice
because had issues been raised, court of appeals would have then

22

vacated sentences); <u>United States v. Phillips</u>, 210 F.3d 345, 351 (5th Cir. 2000)(finding prejudice because, had obstruction of justice enhancement issue been raised, "we would have vacated the district court's imposition of the enhancement and remanded for resentencing"); <u>Mason v. Hanks</u>, 97 F.3d 887, 894 (7th Cir. 1996)(counsel's failure to raise obvious and significant issues was ineffective assistance); Banks v. Reynolds, 54 F.3d 1508, 1515-16 (10th Cir. 1995)(finding prejudice because issues were "clearly meritorious" and defendant was prejudiced by counsel's error in not raising them).

Accordingly, Armstrong was clearly prejudiced in this case. Counsel's incompetent performance of mounting a defense under the wrong charge is tantamount to the circumstances presented in <u>United States v. Cronic</u>, 466 U.S. 648, 659-660, 80 L.Ed.2d 657, 104 S.Ct. 2039 (1984), which require a presumption of prejudice. Nevertheless, Armstrong cannot fail under <u>Strickland's</u> standard either. <u>See id.</u> at 692, 695-97. As to the sentencing issue, allegation that the District Court's erroneous sentencing determination unlawfully increased a defendant's prison sentence has been held to establish prejudice for purposes of the Sixth Amendment ineffective-assistance-of-counsel claim. <u>See Glover v. United States</u>, 531 U.S. 198, 203-04, 148 L.Ed.2d 604, 121 S.Ct. 696 (2001). Armstrong's conviction and sentence, therefore, must be reversed, vacated, or an evidentiary hearing held for the purposes of resentencing him excluding the enhancement.

## a. An Evidentiary Hearing is Warranted in This Case

Contrary to the United States Response, an evidentiary hearing is appropriate in this matter because Armstrong has pleaded facts and presented sufficient evidence and argument for which, if true, show that he is entitled to such a hearing. See Blackledge v. Allison, 431 U.S. 63, 82-83, 52 L.Ed.2d 136, 97 S.Ct. 1621 (1977)( holding that the defendant is "entitled to careful consideration and plenary processing of [his claim,] including full opportunity for presentation of the relevant facts"); Fontaine v. United States, 411 U.S. 213, 215, 36 L.Ed.2d 169, 93 S.Ct. 1461 (1973)(because "the motion and the files and records of the case [do not] conclusively show that the prisoner is entitled to no relief," the Court "vacate[d] the judgment of the Court of Appeals and remand[ed] to that court to the end that the petitioner be afforded a hearing on his petition in the District Court"); Anderson v. United States, 948 F.3d 704, 706 (11th Cir. 1991)("the district court must accord the movant an evidentiary hearing unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"); United States v. Jackson, 209 F.3d 1103, 1110 (9th Cir. 2000)("the motion, files and record in this case could not have shown conclusively that [Armstrong] is not entitled to relief"); Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995)(because [Armstrong] allegations were not "contradicted by the record, inherently incredible, or conclusions rather than statements of facts," he is entitled to habeas relief).

## IV.   CONCLUSION

24

For the foregoing reasons, authorities and arguments, Neal Armstrong respectfully requests this Honorable Court grant his § 2255 motion in toto.

Dated: 10/19/07                    Respectfully submitted,


                                   _Neal Roman Armstrong_
                                   Neal Roman Armstrong
                                   # 07406-094   (3BU)
                                   FCC Yazoo City Low
                                   P.O. Box 5000
                                   Yazoo City, MS  39194-5000


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed by first-class United States mail by delivering same, properly addressed and stamped to prison officials, for mailing to: Office of the United States Attorny, attn. SUSAN R. REDMOND, Assistant U.S. Attorney, P.O. Box 197, Montgomery, Alabama 36101-0197, on this 19th day of October, 2007.


                                   _Neal Roman Armstrong_
                                   Neal Roman Armstrong

                                   Petitioner, pro se


25

# STATE BAR OF TEXAS



*Office of the Chief Disciplinary Counsel*

October 8, 2007

Neal R. Armstrong, #07406-094
FCC Yazoo City – Low
P.O. Box 5000
Yazoo City, MS 39194-5000

**RE:**   **H0020723930 [Armstrong];** *Commission for Lawyer Discipline v. Joseph R. Willie*

Dear Mr. Armstrong:

Please be advised that Joseph R. Willie, Respondent, has elected to have the above-referenced case heard in district court. A Disciplinary Action will be brought against Respondent by the COMMISSION FOR LAWYER DISCIPLINE.

We will notify you of any further proceeding. In the meantime, if you have any questions or need additional information, please contact the undersigned at your earliest convenience.

Sincerely,

Pamela S. Halliburton
Assistant Disciplinary Counsel

PSH/pap

600 Jefferson, Suite 1000  Houston, Texas 77002
Phone: (713) 758-8200  Toll Free: (866) 224-5999  Fax: (713) 758-8292