IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

NEAL ROMAN ARMSTRONG,     )
       )
     Petitioner,      )
       )
v.       )     Civil Action No. 2:07cv689-WHA
       )     (WO)
UNITED STATES OF AMERICA,     )
       )
     Respondent.     )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Neal Roman Armstrong ("Armstrong") asks the court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  After due consideration of Armstrong's § 2255 motion, the supporting and opposing submissions, and the record in this case, the court concludes that an evidentiary hearing is not required and that, pursuant to Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, the motion should be denied.

**I.   PROCEDURAL HISTORY**

On May 5, 2004, a federal grand jury returned a four-count indictment against Armstrong, charging him with conspiracy to distribute and possession with intent to distribute cocaine (Count 1), distribution of cocaine (Count 2), mailing injurious materials (Count 3), and conspiracy to launder money instruments (Count 4).[1]  The charges stemmed from drug-distribution activities between Armstrong, a resident of the U.S. Virgin Islands,

---

[1]Prior to trial, the government voluntarily dismissed Count 3.

and individuals in Montgomery, Alabama, including Wallace Pickett and Roderick Perkins.

On November 3, 2004, the jury found Armstrong guilty of Count 4, conspiracy to launder money instruments, in violation of 18 U.S.C. § 1956(h).  The jury could not reach a unanimous decision as to Counts 1 and 2.  After trial, the district court granted the government's motion to dismiss Counts 1 and 2 with prejudice.

The United States Probation Office prepared a presentence investigation report ("PSI"), which determined that Armstrong was accountable for a total amount of 999.5 grams of cocaine.  As such, the PSI recommended a base offense level of 26.  *See* U.S.S.G. § 2S1.1(a)(1) and § 2D1.1(c)(7).  The PSI also recommended a specific offense enhancement of two levels, *see* U.S.S.G. § 2S1.1(b)(2)(B) (two-level enhancement for violation of 18 U.S.C. § 1956), and a two-level enhancement for obstruction of justice, see U.S.S.G. § 3C1.1, for an adjusted offense level of 30.  The PSI assigned Armstrong a criminal history category of I, resulting in a guidelines sentencing range of 97 to 121 months.

The district court conducted a sentencing hearing on February 23, 2005.  After hearing from witnesses, the district court found by a preponderance of the evidence that 999.5 grams of cocaine were attributable to Armstrong and that Armstrong had obstructed justice by attempting to solicit the murder of Wallace Pickett, a cooperating codefendant, prior to trial.  After considering the advisory guidelines range for an offense level of 30 and criminal history category of I, the district court sentenced Armstrong to 109 months in prison.

Armstrong appealed to the Eleventh Circuit Court of Appeals, and on January 31, 2006, that court affirmed his conviction and sentence.[2]  Armstrong then petitioned the United States Supreme Court for a writ of certiorari, which was denied on October 2, 2006.  *See Armstrong v. United States*, 549 U.S. 819 (2006).

On July 26, 2007, Armstrong filed this § 2255 motion, in which he asserts the following claims:

1.    The evidence was insufficient to sustain a guilty verdict as to money laundering, but instead the evidence established only that payments for cocaine were made to Armstrong.[3]

2.    The district court erred in enhancing Armstrong's sentence based on obstruction of justice.[4]

3.    Armstrong received ineffective assistance of counsel for the following reasons:

    a.    Counsel failed to properly attack the sufficiency of the evidence as to the money laundering charge.[5]

    b.    Counsel failed to properly attack the obstruction of justice enhancement.[6]

---

[2]*See United States v. Armstrong*, 165 Fed.Appx. 768 (11th Cir. 2006) (unpublished).  On direct appeal, Armstrong argued that (1) the evidence was insufficient to sustain a guilty verdict as to money laundering, and (2) his constitutional rights were violated because his sentence was enhanced based on facts not found by the jury, *see United States v. Booker*, 543 U.S. 220 (2005).

[3]This claim is raised in Ground One of the § 2255 motion at page 5.

[4]This claim is raised in Ground Two of the § 2255 motion at pages 6-7.

[5]This claim is raised in Grounds Three and Four of the § 2255 motion at pages 8-9

[6]This claim is raised in Grounds Three and Four of the § 2255 motion at pages 8-9

      c.     Counsel failed to communicate with him regarding the issues to be raised on appeal and failed to provide him with copies of the briefs filed in the case.[7]

The government answers that Armstrong's claims are either procedurally barred or meritless and that, therefore, they afford him no basis for relief. (Doc. No. 5.) Armstrong was allowed an opportunity to respond to the government's answer and has done so. (Doc. No. 9.)

## II.   DISCUSSION

### A.   *Substantive Claims*

### 1.   **Sufficiency of the Evidence**

Armstrong contends that the evidence was insufficient to sustain a guilty verdict as to money laundering, but instead the evidence established only that payments for cocaine were made to him. *See § 2255 Motion* (Doc No. 1), Ground One, p. 5. The government argues that this claim is procedurally barred because it was raised and disposed of in Armstrong's direct appeal. *See United States' Response to § 2255 Motion* (Doc. No. 5) at pp. 5-6.

The record reflects that Armstrong challenged the sufficiency of the evidence on direct appeal.[8] The Eleventh Circuit, however, found the claim to be meritless and decided

---

[7]This claim is raised in Ground Four of the § 2255 motion at pages 9-10.

[8]*See "Brief of Appellant"* (Doc. No. 5, Gov. Exh. A) at pp. 6-10.

the attendant issues adversely to Armstrong.[9]   The sufficiency of the evidence claim in Amstrong's appellate brief emphasized arguments that (a) the government presented no evidence that Armstrong concealed or disguised the nature or source of the money orders he cashed and (b) Armstrong could not be guilty of conspiracy to launder money when he was not convicted of the conspiracy to distribute cocaine that was also charged in the indictment. The argument that the evidence showed only that payments for cocaine were made to Armstrong was at least obliquely presented in Armstrong's appellate brief, where several cases were cited as standing for the proposition that "[t]he money laundering statutes cannot be converted into 'money spending statutes,' to impose criminal liability where none has been created by Congress."[10]   *See, e.g., United States v. Christo*, 129 F.3d 578 (11th Cir. 1997) (cited in Armstrong's appellate brief) ("Money laundering is an offense to be punished separately from an underlying criminal offense.  The main issue in a money laundering charge, therefore, is determining when the predicate crime becomes a 'completed offense' after which money laundering can occur.") (citations omitted).

In any event, by finding that the evidence was sufficient to sustain Armstrong's conviction for money laundering, the Eleventh Circuit necessarily determined that all elements of the offense were proved at trial and thus necessarily rejected Armstrong's current argument as to why the evidence was insufficient, i.e., his contention that the

---

[9]*See United States v. Armstrong*, 165 Fed.Appx. 768 (11th Cir. 2006) (unpublished) ( Doc. No. 5, Gov. Exh. C at pp. 6-7).

[10]*"Brief of Appellant"* (Doc. No. 5, Gov. Exh. A) at p. 7.

evidence showed only that he was paid for drugs and not that he received the "laundered" proceeds from drug sales. After noting that the money laundering statute, "makes it unlawful to conduct or attempt to conduct a financial transaction (2) that the defendant knows involves the proceeds of some form of unlawful activity (3) with 'the intent to promote the carrying on of [the] specified unlawful activity,'" the Eleventh Circuit stated that, at Armstrong's trial, "the government presented evidence that (1) Armstrong cashed or attempted to cash money orders mailed by [coconspirators] Pickett and Perkins; (2) Armstrong knew that the money orders represented the proceeds of the illegal sale of cocaine; and (3) Armstrong took the money in exchange for cocaine he shipped to Perkins with intent to facilitate the illegal sale of cocaine." *See United States v. Armstrong*, 165 Fed.Appx. 768 (11th Cir. 2006) (unpublished) ( Doc. No. 5, Gov. Exh. C at p. 6).

"The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *see also United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981). If a claim has previously been raised on direct appeal and decided adversely to a defendant, it cannot be relitigated in a collateral attack under § 2255. *See Nyhuis*, 211 F.3d at 1343. Furthermore, "[a] rejected claim does not merit rehearing on a different, but previously available, legal theory." *Id*. *See also United States v. Jordan*, 429 F.3d 1032, 1035 (11th Cir. 2005) ("The law of the case doctrine bars relitigation of issues that were decided, either explicitly or by necessary implication, in an earlier appeal of the same case."). Because Armstrong

challenged the sufficiency of the evidence to sustain his money laundering conviction on direct appeal and that claim was decided adversely to him by the Eleventh Circuit, this court will not consider the challenge to the sufficiency of the evidence presented in his § 2255 motion.[11]

### 2.    Obstruction of Justice Enhancement

Armstrong contends that the district court erred in enhancing his sentence for obstruction of justice because the court based its determination in this regard on "unreliable" evidence. *See § 2255 Motion* (Doc No. 1), Ground Two, pp. 6-7. While Armstrong did challenge the obstruction of justice enhancement on direct appeal, his claim there was that the enhancement was based on facts not found by the jury, in violation of his Sixth

---

[11]Armstrong also makes a cursory assertion that he is actually innocent of the money laundering offense. *See Reply to United States' Response* (Doc. No. 9) at p. 13. To establish actual innocence, a petitioner must demonstrate that, in light of all the evidence, "'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley v. United States*, 523 U.S. 614, 623 (1998), quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In this regard, "actual innocence" has been defined as "factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. The Supreme Court in *Schlup* observed:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.... To be credible, such a claim requires [a movant] to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

513 U.S. at 324.

Armstrong presents no facts, other than his own conclusory statements and argument, to support his claim of actual innocence. Mere conclusory allegations are insufficient to support a claim of actual innocence. A review of the record reveals that the evidence was substantial and convincing that Armstrong was guilty of the offenses charged in the indictment. Without any evidence to substantiate Armstrong's claim of actual innocence, from a factual standpoint, the court finds that Armstrong has failed to meet his burden of showing that he is actually innocent, i.e., that "no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623; *Schlup*, 513 U.S. at 327.

Amendment rights as set forth in *United States v. Booker*, 543 U.S. 220 (2005).[12]  In his § 2255 motion, Armstrong appears to argue that the district court should not have credited testimony presented at the sentencing hearing by Irvin Johnson, a onetime cellmate of Armstrong's who testified that Armstrong offered him $500 and ten kilograms of cocaine to kill cooperating codefendant Wallace Pickett prior to trial.  *See § 2255 Motion* (Doc No. 1) at  p. 6.

Ordinarily, if an available claim is not advanced on direct appeal, it is deemed procedurally barred in a § 2255 proceeding.  *See Mills v. United States*, 36 F.3d 1052, 1055-56 (11th Cir. 1994); *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989).  A petitioner can avoid this procedural bar only by showing both cause for the failure to raise the claim on direct appeal and actual prejudice arising from that failure.  *See United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Mills*, 36 F.3d at 1055.  Armstrong suggests that ineffective assistance of counsel is the cause for his failure to raise these claims on direct appeal.  *See § 2255 Motion* (Doc. No. 1) at p. 7.  Moreover, Armstrong also appears to present an independent claim of ineffective assistance of counsel based at least in part on his counsel's failure to argue on appeal that the district court erred in crediting the unreliable testimony of Johnson.  *See § 2255 Motion* (Doc No. 1), Grounds Three and Four, pp. 8-9.  Accordingly, this court will address Armstrong's underlying substantive claim in the context

---

[12]*See "Brief of Appellant"* (Doc. No. 5, Gov. Exh. A) at pp. 10-12.  The Eleventh Circuit rejected this claim, finding that the district court had properly applied the sentencing guidelines in an advisory fashion and that "Amstrong's sentence was consistent with *Booker* and did not violate his Sixth Amendment rights." *See United States v. Armstrong*, 165 Fed.Appx. 768 (11th Cir. 2006) (unpublished) ( Doc. No. 5, Gov. Exh. C at p. 8).

of his related allegations of ineffective assistance of counsel.[13]  This and all of Armstrong's

allegations of ineffective assistance of counsel are reviewed below.

**C.    *Ineffective Assistance of Counsel***

A claim of ineffective assistance of counsel is governed by the standards of *Strickland*

*v. Washington*, 466 U.S. 668 (1984).  *Grossman v. McDonough*, 466 F.3d 1325, 1344 (11th

Cir. 2006).   Under *Strickland*'s two-part test, a petitioner must demonstrate (1) that

"counsel's representation fell below an objective standard of reasonableness" and (2) that

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different."  *Darden v. Wainwright*, 477 U.S. 168, 184

(1986) (internal quotation marks omitted); *Chandler v. United States*, 218 F.3d 1305, 1313

(11th Cir. 2000).  A "reasonable probability is one "sufficient to undermine confidence in the

outcome."  *Strickland.*, 466 U.S. at 694.

Scrutiny of counsel's performance is "highly deferential," and the court indulges a

"strong presumption" that counsel's performance was reasonable.  *Chandler*, 218 F.3d at

1314 (internal quotation marks omitted).  The court will "avoid second-guessing counsel's

performance:  It does not follow that any counsel who takes an approach [the court] would

not have chosen is guilty of rendering ineffective assistance."  *Id*.  (internal quotation marks

and brackets omitted).  Thus, "[g]iven the strong presumption in favor of competence, the

---

[13]Certainly, to whatever extent Armstrong now intimates that the obstruction enhancement violated *Booker*, his claim is precluded from review for the same reason that the previously discussed claim is precluded; that is, the claim was raised on direct appeal and rejected by the appellate court.

petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id.*

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id.* at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong").

A criminal defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Ineffective assistance of appellate counsel may be shown if the movant can "establish ... that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.... Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2nd Cir. 1994).

**D.    *Ineffective Assistance Claims***

**1.    Failure to Properly Challenge Sufficiency of the Evidence**

Armstrong maintains that his counsel rendered ineffective assistance by failing to challenge the sufficiency of the evidence as to the money laundering charge by arguing that the evidence showed only that payments for cocaine were made to him and not that he

received the "laundered" proceeds from drug sales.  *See § 2255 Motion* (Doc. No. 1), Grounds Three and Four, pp. 8-9.[14]

   As noted above in this Recommendation, Armstrong's counsel challenged the sufficiency of the evidence to sustain the money laundering conviction on direct appeal, and that claim was decided adversely to Armstrong by the Eleventh Circuit.  As also noted above, by finding that the evidence was sufficient to sustain the money laundering conviction, the Eleventh Circuit determined that all elements of the offense were proved at trial, which necessarily refutes the argument regarding the sufficiency of the evidence presented by Armstrong in his § 2255 motion.  Further, the Eleventh Circuit specifically found that the evidence showed that Armstrong cashed or attempted to cash money orders mailed to him by his coconspirators knowing that the money orders represented the (laundered) proceeds of the illegal sale of cocaine.  *See United States v. Armstrong*, 165 Fed.Appx. 768 (11th Cir. 2006) (unpublished) (Doc. No. 5, Gov. Exh. C at p. 6).  Thus, Armstrong's substantive argument regarding the sufficiency of the evidence lacks merit.

    For these reasons, this court concludes that Armstrong has failed to show that his counsel's performance in this regard was deficient or that he was prejudiced by counsel's

---

[14]Armstrong also claims that counsel was ineffective because he argued at trial and on appeal that there was no evidence that Armstrong concealed the money.  Armstrong was convicted of conspiracy to commit the offense defined by 18 U.S.C. § 1956(a)(1)(A)(i) which does not require proof of concealment for conviction.  *See United States v. Williamson*, 339 F.3d 1295 (11th Cir. 2003).  Armstrong fails to show how counsel's legally incorrect argument resulted in prejudice to him.  At best, Armstrong argues that he might have prevailed on a correct legal argument.  But, the appellate court found the evidence sufficient for conviction.  Therefore, counsel's error, even if it rises to the level of deficit performance, does not constitute ineffective assistance of counsel.

performance.  *See Strickland*, *supra*, 466 U.S. at 687-89.  Therefore, Armstrong is not entitled to any relief based on this claim of ineffective assistance of counsel.

### 2.     Failure to Properly Challenge Obstruction of Justice Enhancement

Armstrong contends that his counsel failed to properly challenge the obstruction of justice enhancement.  *See § 2255 Motion* (Doc. No. 1), Grounds Three and Four, pp. 8-9; *see also* Ground Two, pp. 6-7.  In this regard, Armstrong argues that his counsel failed to challenge the reliability of Irvin Johnson's testimony at the sentencing hearing that, prior to trial and while the two were incarcerated in the Montgomery City Jail, Armstrong offered Johnson $500 and ten kilograms of cocaine to kill codefendant Wallace Pickett, who Armstrong believed to be a "snitch."[15]  In addition, Armstrong argues that his counsel rendered ineffective assistance by failing to cross-examine Timothy Sewell, who testified at the sentencing hearing that, while he was sharing a jail cell with Armstrong and Johnson, he overheard Amstrong offer Johnson money and drugs in exchange for agreeing to kill Pickett.

At the sentencing hearing, Johnson testified that, after making bond and being released from the city jail, he attempted to carry out the murder-for-hire deal with Armstrong by trying to locate Pickett at a "studio" where, he said, Armstrong told him Pickett could be found.  *See Sentencing Hearing* at pp. 22-23.  In the mean time, however, Pickett was also incarcerated, so Johnson was unable to carry out his part of the agreement.  *Id*. at p. 23.

---

[15]*See Sentencing Hearing* at p. 26.

Johnson, who was in jail on a pending gun charge, subsequently had his bond revoked for failing a drug test, and he was returned to jail, where he again shared a cell with Armstrong and Sewell. *Id*. at pp. 23-24. According to Johnson, Armstrong then called off the plan to kill Pickett, telling him he "didn't have to worry about it" because Pickett was in jail. *Id*. at p. 25. Johnson testified that Amstrong did, however, pay him in part, first by having a money order sent to him, and then by using his jail credit to buy him things. *Id*. On cross-examination, Johnson stated that he asked his lawyer to contact law enforcement officials about Armstrong's plan; however, Johnson insisted that the government had not promised him anything in exchange for his testimony against Armstrong. *Id*. at pp. 29-30.

Sewell provided testimony at the sentencing hearing that corroborated much of what Johnson had to say, particularly with regard to Armstrong's alleged offer to pay Johnson $500 and ten kilograms of cocaine to kill Pickett. *See Sentencing Hearing* at pp. 34-37. Sewell stated that he overheard such discussions between Armstrong and Johnson while incarcerated with the two men at the city jail. *Id*. He testified that he warned Armstrong not to talk to or deal with Johnson, because he was suspicious of Johnson and felt "like something [wasn't] right, once I started listening to him," and he believed Johnson might be trying position himself to provide information against Armstrong that could later help him with his own legal problems. *Id*. at pp. 34-36, 39 & 41. Sewell stated that when Johnson returned to the city jail after having his bond revoked, Johnson told Armstrong he had attempted to locate Pickett but that the government had placed Pickett "in some type of

witness protection program or something like that." *Id*. at p. 39.  According to Sewell, "[w]e knew it was a 100 percent lie; but he was trying to, I guess you'd say, extort Mr. Armstrong, okay?" *Id*. at p. 39.  Sewell testified that Johnson told Armstrong that because he had gone "on the street and looked for Mr. Pickett," Armstrong "owed him some type of money." *Id*. at p. 41.  Sewell stated that Armstrong then told Johnson that he would give him the $500; however, Sewell wasn't sure whether Armstrong really wanted to pay Johnson or whether he merely told Johnson this "just to get him out of his face." *Id*.  Sewell stated that Johnson began to threaten Armstrong when he didn't get his money.  *Id*. at pp. 41-42.  Although Johnson wanted Armstrong to give him all the money in one payment, Sewell said, Armstrong started sending Johnson money in "little small increments." *Id*.

James Tynan, a U.S. postal inspector involved in the investigation of the case against Armstrong, testified at the sentencing hearing that after talking to Johnson and Sewell about the alleged murder-for-hire deal between Armstrong and Johnson, he reviewed a copy of Johnson's jail account and found a receipt for a $35 postal money order from the Virgin Islands that was deposited into the account.[16]  *See Sentencing Hearing* at pp. 44-45.

At the conclusion of the testimony at the sentencing hearing, Armstrong's counsel argued as follows:

> Your Honor, there is no credibility, indicia of reliability, or anything else about this obstruction of justice charge.  When this is alleged to  – when the government is alleged this to have happened, Mr. Armstrong was already under counsel.  There were already things going on in this court here and

---

[16]Armstrong and his girlfriend were both residents of the U.S. Virgin Islands.

everything else.  It makes no sense to try to have somebody killed and then come up with a $35 payment.  It does not make any sense at all.

I think what happened is that some people that were in the jailhouse tried to make a deal, got in touch with Mr. Tynan, and they made their story. It's a he-said, she-said deal.  But there is one thing that is for certain.  Mr. Pickett was not killed.  Nobody tried to kill Mr. Pickett.  Mr. Pickett came here, testified in this court [at trial], and has since gone on about his business.

Mr. Armstrong has been locked up without bond since that day.  He didn't get to anybody, nor did he try to get to anybody.  And just because they come here and say it from the witness stand does not make it true.  And they do have a reason to say what they said on the stand, and that is to try to cut a deal with the government to lessen their charges.  We will take the Court – before the Court will take that into account and that there is going to be some obstruction of justice, we would like the Court to really look at the demeanor and the credibility of the witnesses that testified today and understand that it didn't happen like that.

*Sentencing Hearing* at pp. 48-49.

In the relevant part of its sentencing order, the district court found as follows:

Objection number two is to the enhancement for obstruction of justice.  I've heard the testimony of two witnesses on this, Irvin Johnson and Timothy Sewell.  The testimony of Johnson is challenged as being unreliable because of his hoping to gain favorable treatment himself for this and also on the basis that his testimony was not reliable because Pickett was incarcerated at the time of the offer or the alleged offer.  Timothy Sewell testified at some length in what I found to be a credible manner.  His testimony was not challenged on cross-examination or in any other way, and I find his testimony to be credible. When I make that determination, it corroborates a good bit of testimony by Mr. Johnson.

I also consider the evidence from Agent Tynan that a money order coming from the Virgin Island was deposited in the account of Mr. Johnson on October 13th.  This corroborates testimony by Mr. Johnson that the defendant told him that he could have money sent to him from the Virgin Islands in addition to transferring things to him from his own account or from the store.

15

Based on all of this testimony, I do find that the defendant attempted to – or made an offer to Irvin Johnson that he would pay him at some point $500 and ten kilograms of cocaine in exchange for killing Wallace Pickett, a key witness in the trial of this defendant; that that offer was made at a time before this trial; that if that witness had been killed, that the case against the defendant would have been decidedly weaker, if not impossible to prove; and because of that finding, it is my further finding that this comes within Section 3C1.1 of the guidelines for obstruction or impeding the administration of justice, warranting an increase in the offense level of two levels.  And I particularly rely on Application Note and Commentary Note 4(a) that provides for threatening, intimidating, or otherwise unlawfully influencing a codefendant, witness or juror directly or indirectly attempting to do so.

*Sentencing Hearing* at pp. 51-52.

What can be seen from the record is that Armstrong's counsel did in fact vigorously challenge the reliability of Irvin Johnson's testimony at the sentencing hearing, but that the district court found the substance of Johnson's testimony ultimately to be credible. Armstrong does not suggest how his counsel could have more effectively challenged Johnson's credibility at the sentencing hearing, nor does he suggest how cross-examination of Timothy Sewell at the sentencing hearing could have impeached Sewell and thereby undermined the portions of Sewell's testimony that corroborated Johnson's version of events.  In an affidavit filed with this court, Armstrong's counsel indicates that he chose not to cross-examine Sewell because his testimony "basically showed that Irvin Johnson was trying to extort money from the Petitioner and not for any alleged hit."  *See Affidavit of Joseph R. Willie II* (Doc. No. 4) at p. 2.  This is, arguably, true of Sewell's testimony to a degree, although, at bottom, Sewell did corroborate Johnson's claim that Armstrong offered to give Johnson money and drugs to kill Pickett.  However, under the circumstances, it was

16

not altogether unreasonable for Armstrong's counsel to consider the value of any favorable testimony by Sewell on direct examination[17] to outweigh the speculative value of impeaching Sewell (by whatever means) on cross-examination. The district court found parts of Johnson's testimony also to be corroborated by the testimony of postal inspector James Tynan. Thus, of the three witnesses who testified at the sentencing hearing, only Sewell provided testimony that could be remotely beneficial to Armstrong in any way. In any event, as previously noted, Armstrong fails to suggest any basis upon which Sewell should have, or could have been impeached. (The district court was made aware of Sewell's criminal record during direct examination.)

Armstrong's claim regarding his counsel's failure to properly challenge the reliability of Irvin Johnson's testimony really amounts to an objection to the district court's crediting of the testimony of Johnson and other government witnesses. It is well settled, however, that the weight and credibility given to witness testimony in its sentencing determinations is a matter within the trial court's discretion. *See Hawley v. Cement Indus., Inc.* (*In re Hawley*), 51 F.3d 246, 248 (11th Cir. 1995) (discussing witness credibility in civil context); *United States v. Zuleta-Alvarez*, 922 F.2d 33, 37 (1st Cir. 1990). *See also United States v. House*, 110 F.3d 1281, 2286 (7th Cir. 1997) ("[A]rguments which simply urge a reassessment of a district court's credibility determination 'are wasted on an appellate court.'") (quoting *United States v. Molinaro*, 877 F.2d 1341, 1347 (7th Cir. 1989)). "For sentencing purposes, a district

---

[17]During direct examination, Sewell made several statements indicating that he was generally sympathetic to Armstrong and that he disliked Johnson.

court's factual determinations need be supported by only a preponderance of the evidence." *United States v. Taylor*, 17 F.3d 333, 339 (11th Cir. 1994). Armstrong has not shown an abuse of discretion by the district court, and therefore he has failed to support his claim that his counsel was ineffective for failing to argue this issue more effectively in the trial court, or for failing to pursue it on direct appeal.[18]

Further, because Armstrong does not establish the likely value of cross-examining Timothy Sewell, he fails to show that his counsel was ineffective in this regard either. The decision as to whether to cross-examine a witness is "a tactical one well within the discretion of a defense attorney." *Messer v. Kemp*, 760 F.2d 1080, 1090 (11th Cir. 1985). Absent a showing that cross-examination of Sewell was reasonably likely to affect the outcome of the sentencing proceedings, Armstrong is unable to show prejudice necessary to satisfy the second prong of *Strickland*, 466 U.S. at 687. Armstrong is not entitled to any relief based on these claims of ineffective assistance of trial and appellate counsel.

### 3.    Failure to Communicate Regarding Appellate Issues and to Provide Appellate Briefs

Armstrong contends that his counsel rendered ineffective assistance by failing to communicate with him regarding the issues to be raised on appeal and by failing to provide him with copies of the appellate briefs filed in the case. *See § 2255 Motion* (Doc. No. 1), Ground Four, pp. 9-10.

Addressing this claim in his affidavit filed with this court, Armstrong's counsel states:

---

[18]Attorney Joseph R. Willie II represented Armstrong at trial, at sentencing, and on direct appeal.

> Contrary to Petitioner's allegations, he was informed as to the progress of his case and the status of his appeal.  Revisionist history on the part of the Petitioner does not equate to ineffective assistance of counsel.

*Affidavit of Joseph R. Willie II* (Doc. No. 4) at p. 2.

Armstrong has failed to make a threshold showing that had counsel performed differently, issues and arguments of merit on the appeal would have been revealed.  The only substantive issues that Armstrong suggests he was deprived of presenting on appeal due to counsel's allegedly deficient performance are the same issues Armstrong presents in his § 2255 motion.  Because, as this court finds, none of the above-presented issues are meritorious, Armstrong demonstrates absolutely no prejudice from counsel's alleged failure to consult with him or provide him with copies of the appellate briefs.  Therefore, Armstrong is not entitled to relief based on this claim of ineffective assistance of counsel.

## III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Armstrong be denied, as the claims therein entitle him to no relief.

It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before April 7, 2009.**   A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed

findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 25th day of March, 2009.


       /s/Charles S. Coody        
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE